UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., et al., Plaintiffs | ) | |
| v. | ) | C.A. No. 05-0106/ML |
| MIKOHN GAMING CORP., Defendant | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT**
**OF ITS MOTION FOR A PROTECTIVE ORDER**

Defendant Mikohn Gaming, Inc. ("Mikohn") submits this reply to plaintiffs Hasbro Inc. and Hasbro International, Inc.'s (collectively "Hasbro") objection to Mikohn's motion for a protective order. Mikohn seeks the order to postpone the depositions in Las Vegas, Nevada of four non-party witnesses -- Lawrence Rhue, Dennis Van Hook, John M. Garner and Tom Haas -- until 30 days after Hasbro provides responses to Mikohn's initial discovery requests. Hasbro offers four reasons why the depositions need to take place at such an early stage in the litigation. The reasons range from the wholly unsupported to the utterly absurd. Mikohn addresses each in the order in which Hasbro asserts them.

**A. Hasbro's Burden of Proof Does Not Justify Premature Depositions of Important Non-Party Witnesses**

Hasbro claims the shortness of time and its burden of proof as a basis for deposing the witnesses before the pretrial conference and providing initial discovery to Mikohn. It is difficult to credit Hasbro's argument that time constraints compel the depositions now. If time is such a short commodity, why did Hasbro wait until both its and Mikohn's time to provide documents and interrogatory answers was enlarged before noticing the depositions? Not until

the depositions were noticed to take place before initial discovery did Hasbro say anything about time being short. If Hasbro had disclosed that it would notice depositions before documents and interrogatories were exchanged, Mikohn would have gauged Hasbro's request for an enlargement differently.

Moreover, while Hasbro says it "simply seeks to get statements under oath of each of these non-party witnesses" ( Plfs' Obj. at 2), the depositions will be much more than mere sworn statements. All of the witnesses are Nevada residents and, as such, none can be subpoenaed to appear for trial. Therefore, if the testimony is as "important" as Hasbro expects, the depositions will surely be used as trial evidence, and Mikohn risks serious prejudice.

Hasbro does not dispute that without initial discovery Mikohn will be disadvantaged in questioning the witnesses next week. Instead, it offers two unacceptable options – "cross examine" the witnesses at a deposition next week, or "[i]n the alternative … cross examine the witnesses at some later date." Id. (emphasis added). By offering solutions "in the alternative," Hasbro appears to be positioning itself to object to a subsequent deposition if Mikohn questions the witnesses next week. This is the precise concern Mikohn raised in its initial memorandum, wherein it forecasted resistance to repeat depositions of the witnesses. (Mikohn Mem. at 4). Even if Hasbro's suggestion is not what it appears to be, "'repeat depositions are disfavored.'" Lobb v. United Air Lines, Inc., 2 F.3d 1157, 1993 WL 259470, *1 (9th Cir. 1993) (quoting Graebner v. James River Corp., 130 F.R.D. 440, 441 (N. D. Cal. 1989)). Hasbro's options do nothing to overcome that disfavor if repeat depositions must be taken.

Finally, Hasbro argues that it "should not be precluded from … [deposing the] witnesses, simply because the Defendant does not like the timing of the depositions." Objection at 2. The basis of Mikohn's objection is not timing. The basis of the objection is the inevitable

disadvantage of attending a trial deposition without the materials needed for meaningful cross-examination.

**B. Convenient Deposition Times Could Be Scheduled in the Future.**

Hasbro contends that the scheduled deposition times are convenient for the witnesses, but offers no documented support for its claim that witnesses might not be available a bit later in the season. Although Mikohn has not spoken with all the witnesses, we are advised that Mr. Garner has no vacation plans (he just returned from vacation) and Mr. Van Hook just started a new job and plans no vacation. While it may be true that the witnesses voiced no objection to Hasbro's deposition plans, it certainly is doing the witnesses no favors to ask them to appear to testify twice. At the same time, it is patently unfair to expect Mikohn to conduct important depositions before Hasbro has provided relevant and requested information.

**C. Mikohn's Position and Motion are Equitable and Sensible**

Next, Hasbro contends that it is unfair to request a protective order because Mikohn "knowingly and intentionally underpaid Hasbro." Objection at 2. To state the obvious, the fact that Hasbro has filed a claim against Mikohn does not mean it has been underpaid. It has not. Mikohn has paid, and continues to pay, Hasbro every penny owed under the contract.[1] Hasbro should not be allowed to make demands for money and needlessly expedite a case to the point where Mikohn's defense could be substantially prejudiced.

[1] For obvious reasons, Mikohn feels compelled to respond to Hasbro's arguments in this regard. In doing so, however, Mikohn acknowledges that the allegations of the parties should have no bearing on this motion for a protective order. Otherwise, the Court's authority to modify discovery sequences would be governed by the nature of the claims rather than the "convenience of the parties and witnesses and in the interest of justice." Fed. R. Civ. P. 26(d).

**D. Mikohn is Not in Jeapordy.**

Hasbro's "back story" is just that – a story, a fiction. Hasbro irresponsibly claims that Mikohn is presently under an ongoing investigation by the Michigan Gaming Control Board ("Michigan Board"). With a minimal amount of investigation Hasbro could have discovered that the Michigan Board deemed Mikohn to be "eligible, qualified and suitable for" a Michigan gaming license on April 13, 2004. At present, Mikohn is proceeding through the normal relicensing process in Michigan. (See Exhibits A and B -- June 8, 2005 Michigan Board letter; Townsend Affidavit.) Similarly, Hasbro contends three state gaming authorities "are considering" conducting an investigation of Mikohn, but fails to identify even a single state purportedly considering such action, or cite a single source for this contention.

Hasbro takes the unsupported position that it must rush to take the depositions because "Mikohn's financial prospects are in jeopardy." Mikohn's financial condition was disclosed in its most recent Form 10K filed with the Securities and Exchange Commission on March 15, 2005 (Page 28 attached as Exhibit C). Mikohn made a profit in 2004 and lost over thirty million dollars in 2003. See Exhibit C. As of the close of business on June 7, 2005, Mikohn's stock was selling at $13.75 per share – up from a 52-week low of $4.25 per share. See Yahoo! Finance PGIC: Basic Chart for Mikohn Gaming Corp., http://finance.yahoo.com/q?s=PGIC&d=t (last visited June 7, 2005), attached hereto as Exhibit D. This year, Mikohn's stock prices have been at over a ten-year high. Where is the proof that Mikohn's financial condition is in jeopardy? Certainly, the stock market does not think so.

**E. Conclusion**

Hasbro's objection is not much more than hyperbole unsupported by any document, attributed source, or demonstrated fact. The depositions it has noticed present an unacceptable and unnecessary risk of prejudice to Mikohn. Having granted and secured enlargements of time to respond to initial discovery, Hasbro should not be permitted to notice important trial depositions in the interval created by those enlargements. Mikohn respectfully requests that its motion for a protective order be granted.

Brooks R. Magratten, Esq., #3585
Gordon P. Cleary, Esq., #1948
Michael J. Daly, Esq., #6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

Dated: June 8, 2005

**CERTIFICATE OF SERVICE**

To:

Todd D. White, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza - 8th Floor
Providence, RI 02903

I hereby certify that I served on the above-named counsel of record a copy of the within reply memorandum by hand delivery on the 8th day of June, 2005.

Lisa A. Larivere