UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., et al., Plaintiffs | ) | |
| v. | ) | C.A. No. 05-0106/T |
| MIKOHN GAMING CORP., Defendant | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Defendant Mikohn Gaming Corp. ("Mikohn") submits this reply memorandum in support of its rule 12(b)(6) motion to dismiss the claims of plaintiffs Hasbro, Inc. and Hasbro International, Inc. (collectively "Hasbro").

## I. MIKOHN HAS NOT EXCEEDED THE BOUNDS OF RULE 12(b)(6).

The Court may decide a rule 12(b)(6) motion on "facts extractable from documentation annexed to or incorporated by reference in the complaint...." Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005). Hasbro contends, citing Jorge, that a court may consider un-appended documents only if the allegations of the complaint are "expressly linked to and admittedly dependent upon" such document. Jorge, however, cannot be so narrowly construed. It stresses that an unappended document "integral to or explicitly relied upon in a complaint" may be considered *in addition to* other documents incorporated by reference. Id.

While Hasbro may challenge the *significance* of the NGCB letter, there is no dispute over its *authenticity*. Yoonessi v. Albany Medical Center, 352 F. Supp. 2d 1096, 1098 (C.D. Cal. 2005) ("a court may consider documents that are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party

questions.'"). Mikohn's reference to the NGCB letter does not a motion for summary judgment make.

Hasbro is also displeased with Mikohn's reference to the size and sophistication of Hasbro. Nevertheless, the Court may consider matters subject to judicial notice. Jorge, 404 F.3d at 559. Within Rhode Island, itself littered with potato-shaped mannequins, the size and sophistication of Hasbro may be judicially noticed. See F.R.E. 201 (allowing judicial notice of facts "generally known within the territorial jurisdiction of the trial court").[1]

Moreover, a motion to dismiss is converted to a summary judgment motion only if the Court chooses to consider material beyond the scope of the complaint in making its decision. See Maleski v. DP Realty Trust, 162 F.R.D. 496, 498 (E.D. Pa. 1995). Here, the disputed royalty provisions and the Nevada laws they offend fall well within the parameters of a rule 12(b)(6) motion to dismiss and form a sufficient basis for dismissing Hasbro's complaint in its entirety.

## II. HASBRO CONFUSES ILLEGALITY AND DEFERENCE DEFENSES; ITS OPPOSITION IS UNAVAILING.

Notwithstanding its explicit reference to the NGCB letter in its complaint, Hasbro now attempts to discount that letter. Its arguments are misplaced, however, because Nevada law makes the original royalty provision illegal – not the NGCB letter. Nev. Rev. Stat. 463.162 prohibits unlicensed or unapproved entities such as Hasbro from receiving royalty payments tied directly to gambling profits. Hasbro does not even address this statute.[2] It retreats to the contention that "no competent authority has adjudicated the legality of the payment provision."

[1] Indeed, it is Hasbro, not Mikohn, that oversteps the parameters of rule 12(b)(6) with its unsupported allegations about Mikohn's conduct (see Hasbro memorandum pp. 18-19) that nowhere appear in the pleadings.

[2] Incredibly, despite 25 references to the NGCB letter in its memorandum, Hasbro does not even once address the very statute that renders the royalty provision illegal.

Putting aside that both the NGCB and Attorney General have deemed Hasbro's participation in the royalty scheme illegal, an illegality defense does not hinge on whether a contested contractual provision already has been judicially declared illegal. This Court is plainly able to interpret Nevada law in the first instance.

The NGCB letter nevertheless provides compelling justification for this Court to defer to the informed determination of the Nevada administrative body that directed Mikohn not to pay Hasbro. The NGCB, empowered to enforce Nevada gaming laws and capable of putting Mikohn out of business, expressly ordered Mikohn to stop "making any payments to Hasbro under the licensing agreement[s] until Hasbro is found suitable or the agreement[s are] amended to comply with NRS 463.162(2)(a)." Out of deference to the Nevada gaming authorities, this Court should decline Hasbro's back door request for money the NGCB says it cannot receive.

Hasbro complains the NGCB letter relies on "hearsay." Again, Mikohn does not rely on the NGCB or the Nevada Attorney General to establish illegality – Nevada law does that. The significance is that the NGCB in no uncertain terms ordered Mikohn not to pay Hasbro. Hasbro does not deny that the NGCB acted as it did. The letter is not hearsay because it is "used to prove an operative fact that gives rise to legal consequences," Bolen v. Paragon Plastics, Inc., 754 F. Supp. 221, 225 (D. Mass. 1990), and is subject to the "Public Records and Reports" exception. F.R.E. 803(8).

In a last gasp, Hasbro suggests the NGCB lacks power to form an opinion as to the legality of the agreements. Enforcement of Nevada gaming laws rests entirely with the NGCB, which is authorized to "initiate proceedings or actions" based on violations of Nevada law. N.R.S. § 463.141. To suggest the NGCB's interpretation of the contracts carries no force is incredulous.

Hasbro attempts to distinguish Providence Hosp. v. N.L.R.B., 93 F.3d 1012 (1st Cir. 1996), because the NGCB's decision did not follow "an entire administrative procedure … to establish the underlying facts." Hasbro overlooks, however (1) that the "sliding scale" royalty provisions and the Nevada laws declaring them illegal are well-established; and (2) Hasbro, like petitioners in Providence Hosp., has had its opportunity to challenge the administrative determination.

Contrary to Hasbro's assertions, Mikohn does not disagree, nor has it ever disagreed, with the NGCB's ruling on the legality of the agreements. A statement from Mikohn's former general counsel that the NGCB's "position represents a departure from past policy" is no indication that the NGCB was wrong. Moreover, the illegality defense cannot be waived; nor can a party be estopped from raising it. Nathan v. Tenna Corp., 560 F.2d 761, 763 (7th Cir. 1977). Whether an agreement is in violation of the law presents a question for the court to answer. Power v. City of Providence, 582 A.2d 895, 900 (R.I. 1990).

## III. NEITHER THE "SEVERANCE" PROVISION NOR MIKOHN'S ALLEGED PERFORMANCE JUSTIFY ILLEGAL ROYALTY PAYMENTS.

Hasbro points to various contractual provisions to avoid the consequences of its violations of Nevada law. Hasbro's reference to the "severance" provision is unavailing. Once the NGCB declared the original payment provision illegal, the parties amended the arrangement. Hasbro does not complain about the money it took under the amended royalty provision. Hasbro's beef lies entirely with the pre-amended agreements. The reformation provision and prospective amendments provide no basis for Hasbro to seek contract damages before the 2002 amendments.

Hasbro casts aspersions against Mikohn and its performance under the contracts. Although on a rule 12(b)(6) motion the court may consider well-pleaded allegations in the

complaint as true, one party's conduct does not allow another party to enforce clearly illegal contract provisions. See Part V, infra.

## IV. PARTIAL PERFORMANCE DOES NOT COMPEL ENFORCEMENT OF AN ILLEGALCONTRACT PROVISION.

Hasbro invites this Court to "sever the [offending] provision and modify the agreements accordingly." It relies on authorities allowing partial enforcement of contracts that, in some aspect, are illegal or against public policy. In none of these cases, however, were the illegal provisions "an essential part of the agreed exchange." Restatement (Second) of Contracts § 184; See Cosimini v. Atkinson Kiewit Joint Venture, 877 F. Supp. 68, 71 (D.R.I. 1995) (partial enforcement of indemnification clause of contract to construct Jamestown-Verrazano Bridge); Gormly v. I. Lazar & Sons, Inc., 926 F.2d 47, 50 (1st Cir. 1991) (partial enforcement of indemnification clause of contract to construct a building); Durapin, Inc. v. American Prods., Inc., 559 A.2d 1051, 1058 (R.I. 1989) (modifying an unreasonably restrictive non-compete provision contained in a long term distributorship agreement). Nor in any of those cases were the illegal provisions themselves enforced in violation of the law or public policy.

In contrast, here the royalty provisions – the very consideration paid for the licenses – are essential to the agreements. While modification may be appropriate to narrow an unreasonable noncompetition provision, Durapin, or to allow a party to seek partial contractual indemnification, Cosimini and Gormly, it cannot alter an otherwise explicit payment provision, Siner v. American General Finance, Inc., 2004 WL 2441185, *7 (E.D. Pa. 2004)("To strike the illegal aspect of the loan would require the Court to negotiate a thicket of speculation to rewrite the terms and conditions of the contract..."); Restatement (Second) of Contracts §184 cmt. a. If

the Court were to strike the payment provision, how then does the Court determine what payment is due?[3]

Hasbro suggests that, if the royalty provisions are illegal and unenforceable, it may obtain relief through unjust enrichment. For over 130 years, however, Rhode Island law has been "'that when a contract is illegal and prohibited by law no action can be maintained upon it in law or equity, either to enforce its obligations or to secure its fruits to either party...." Chambers Bros. v. Joseph Church & Co., 14 R.I. 398, 401 (1884) (emphasis added) (quoting Snell v. Dwight, 120 Mass. 9 (1874)). In this respect Rhode Island law clearly departs from the Maryland law upon which Hasbro relies. See Hasbro memo at 14 (citing Miller v. U.S. Foodservice, Inc., 361 F. Supp. 2d 470, 484 (D. Md. 2005)). To quantify an unjust enrichment claim based on Hasbro's interpretation of the royalty provisions would eviscerate the prohibition against enforcing illegal contract provisions. At the same time, any other method of quantifying an unjust enrichment claim is impossible "because [the court has] no standard by which to measure either justice or injustice ... apart from the" illegal royalty payment provisions. Andrew Kull, Rationalizing Restitution, 83 Cal. L. Rev. 1191, 1209 n.54 (1995); see also Mikohn's original memorandum at pp. 21-22.

## V. THE *IN PARI DELICTO* AND "UNCLEAN HANDS" DOCTRINES DO NOT REVIVE HASBRO'S CLAIMS.

Hasbro says it needs to develop the record more fully before the Court can address the *in pari delecto* doctrine. Yet, at the end of the day, no amount of discovery will get Hasbro past Nevada's prohibition against unlicensed entities participating in gaming profits. The

---

3 As the Uniform Commercial Code recognizes, where the parties intend not to be bound unless the price is fixed or agreed, and the price is neither fixed nor agreed, there is no enforceable contract. See G.L.R.I. §6A-2-305(c)(4).

*in pari delicto* doctrine applies where – as here – "the action of the plaintiff [is] directly prohibited by statute." Sheehan v. Richardson, 315 B.R. 226, 240 (D.R.I. 2004).

In a related, but similarly unimpressive argument, Hasbro claims that Mikohn cannot "avoid recompense to Hasbro by claiming 'illegality'" because Mikohn supposedly has "unclean hands." While a "defendant's unclean hands may preclude it from advancing equitable defenses," United Cities Gas Co. v. Brock Exploration Co., 995 F. Supp. 1284, 1296 (D. Kan. 1998), a defendant's conduct does not affect its ability to assert legal defenses. Regardless of Hasbro's unflattering (yet, untrue and misleading) portrayal of Mikohn, the unclean hands doctrine does not limit Mikohn's ability to assert the defense of illegality, which is legal in nature. See Prusky v. Aetna Life Ins. & Annuity Co., 2004 WL 2384967, *5 (E.D. Pa. 2004). ("Defendants…rested on their legal defenses of impracticality, violation of public policy, and possible illegality to justify their non-performance.")

## VI. HASBRO DOES NOT DENY THE INADEQUACY OF ITS FRAUD AND MISREPRESENTATION CLAIMS.

Hasbro does not and cannot deny that its conclusory and general allegations fail to meet rule 9(b)'s mandate that "the circumstances constituting fraud or mistake shall be stated with particularity …." Nowhere, does Hasbro provide the "who, what, where, and when of the allegedly false or fraudulent representation." See Alternative Sys. Concepts, Inc. v. Synopsis, Inc., 374 F.3d 23, 29 (1st Cir. 2004). Hasbro's fraud claim was tacked on without a whisper of supporting facts. It must be dismissed.

**CONCLUSION**

For the reasons set forth herein, as well as in Mikohn's original memorandum in support of its motion to dismiss, this Court should dismiss Hasbro's claims for failure to state a claim upon which relief may be granted.

Brooks R. Magratten, Esq., #3585
Gordon P. Cleary, Esq., #1948
Michael J. Daly, Esq., #6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

Dated: October 12, 2005

CERTIFICATE OF SERVICE

To:

Todd D. White, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

I hereby certify that I served on the above-named counsel of record a copy of the within Defendant's Reply Memorandum in Support of Its Motion to Dismiss Pursuant To Rule 12(b)(6) by hand delivery on the 12th day of October, 2005.