UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC. and HASBRO INTERNATIONAL, INC., Plaintiffs | ) | C.A. No. 05-0106/S |
| v. | ) | |
| MIKOHN GAMING CORP., Defendant | ) | |

**DEFENDANT'S MOTION TO COMPEL PLAINTIFFS TO PROVIDE A MORE RESPONSIVE INTERROGATORY ANSWER AND A FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

Defendant Mikohn Gaming Corp. ("Mikohn") moves pursuant to F.R.C.P. 37(a) for an order compelling plaintiffs Hasbro, Inc. and Hasbro International, Inc. (collectively "Hasbro") to provide a more responsive answer to Mikohn's interrogatory number 11 and a further response to Request No. 2 in Mikohn's Second Request for Production within ten days of entry of the order.

Mikohn certifies that it has in good faith conferred or attempted to confer with Hasbro in an effort to secure its responses without Court action.

Mikohn files herewith a supporting memorandum of law. If Hasbro objects to this motion, Mikohn requests a brief oral argument, which likely would require less than 30 minutes of the Court's time.

Brooks R. Magratten, No. 3585
Gordon P. Cleary, No. 1948
Michael J. Daly, No. 6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

Dated: February 21, 2006

**CERTIFICATE OF SERVICE**

To:

Todd D. White, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

I hereby certify that I served on the above-named counsel of record a copy of the within Defendant's Motion To Compel by first class mail on the 21st day of February, 2006.

Cynthia Dragon

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

HASBRO, INC. and HASBRO INTERNATIONAL, INC.,
Plaintiffs

v.

MIKOHN GAMING CORP.,
Defendant

C.A. No. 05-0106/S

**MEMORADUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL PLAINTIFFS TO PROVIDE A MORE RESPONSIVE ANSWER TO INTERROGATORY NUMBER 11**

Defendant Mikohn Gaming Corp. ("Mikohn") moves pursuant to Rule 37(a) of the Federal Rules of Civil Procedure for an order compelling plaintiffs Hasbro, Inc. and Hasbro International, Inc. (collectively "Hasbro") to provide a more responsive answer to Mikohn's interrogatory number 11 and a further response to request number 2 in Mokohn's Second Request for Production within ten days of entry of the order.

## I. FACTUAL BACKGROUND

This case primarily involves the interpretation of a royalty calculation provision appearing in two licensing agreements between Hasbro and Mikohn. Beginning in 1998, Hasbro and Mikohn entered into a series of agreements under which Mikohn would create slot machines bearing the names of Hasbro's trademarked games and place them in various casinos around the world. The first two agreements, which are at issue in this case, covered Mikohn's use of Hasbro's "Yahtzee" and "Battleship" names and concepts.

In return for licensing rights, Mikohn paid royalties to Hasbro. The original form of the agreements tied royalties to the earnings of the games. The agreements, as originally

drafted, contained a "sliding scale" royalty provision that increased royalty rates as game revenue increased.

In March 2002, the Nevada Gaming Control Board ("NGCB") wrote to Mikohn, a Nevada corporation, and directed it to stop making payments to Hasbro because it was illegal for Hasbro to participate in the sliding scale method of royalty calculation under Nevada law, Nev. Rev. Stat. 463.162. The parties therefore amended the agreements such that royalties would be calculated based on the number of machines placed in casinos, rather than revenue generated from the games.

Mikohn began paying royalties to Hasbro in 2000. For years, Mikohn paid, and Hasbro accepted, millions of dollars under the pre-amendment and post-amendment royalty provisions. With each payment Mikohn would provide Hasbro with a royalty statement detailing precisely how royalties were calculated. Hasbro's lead financial analyst within its royalty accounting department,[1] Kristie Lebreche, testified that she would input the data from Mikohn's reports into Hasbro's computer system to confirm that royalties were correctly calculated and paid. See Exhibit C.

In 2004, after accepting years of royalty payment without incident or question, Hasbro began to dispute the way in which Mikohn historically calculated and paid royalties under the pre-amendment royalty provisions. Hasbro's abrupt change of heart was prompted by an unsolicited contact by California lawyer Greg Venturi, Esq. Attorney Venturi claimed he represented an "undisclosed principal" who supposedly had information that one of Hasbro's licensees was improperly paying royalties under its licensing agreement. Unable to determine

---

[1] Ms. Lebreche has worked for Hasbro since 2000. In that time, her job titles and responsibilities have changed. For the time period most relevant to this dispute - 2000 to 2002 - Ms. Lebreche's most senior position was lead financial analyst.

which of its licensees the anonymous source could have been referring to, Hasbro entered an agreement to pay the source 7.5 percent of whatever royalties Hasbro could recover. With agreement in hand, and the prospect of payment of hundreds of thousands of dollars, the source claimed that Mikohn, under his interpretation of the pre-amendment royalty agreements, owed additional royalty payments to Hasbro.

Based on the new interpretation of the pre-amendment royalty provision, Hasbro wrote to Mikohn in February 2005 demanding that it pay an additional $6,000,000 in royalties, interest and auditing fees. Within weeks, Hasbro filed the instant action against Mikohn seeking damages for breach of contract, unjust enrichment and fraud.

Through discovery Mikohn seeks to determine the basis for Hasbro's claims. In light of the 2002 NGCB determination that Hasbro could not legally participate in the pre-amendment version of the contracts, Mikohn requested, among other things, information relative to the legality of Hasbro's demand for royalties attributable to that time period. Specifically, Mikohn asked "Do plaintiffs agree that the royalty rates in the original License Agreements did not comply with the Nevada Law? If not, state why." See Interrogatory No. 11, attached hereto as Exhibit A (hereafter "illegality interrogatory").

Hasbro responded:

> Objection. Plaintiffs object to this interrogatory as it seeks a conclusion of law which Plaintiffs are not obligated to provide. Plaintiffs agree that after March of 2002, Defendants indicated that the royalty rates in the original License Agreements may not have been in compliance with Nevada law. Because of defendant's expected familiarity with Nevada gaming law, Plaintiffs relied on Defendant's knowledge thereof. See Hasbro's response as at Exhibit A.

Mikohn also has sought to obtain Hasbro's royalty confirmation computer program, which Ms. Lebreche described. In its second request for production, Mikohn requested

that Hasbro produce "copies of all documents and records showing how Hasbro's royalty accounting system was set up for Mikohn royalty obligations or payments, as described [during] the Le[b]reche deposition, or as otherwise existing." See Request No. 1 in Mikohn's Second Request for Production ("Request No. 2") attached hereto as Exhibit B. Hasbro responded by simply producing printouts of the system's screen displays associated with Mikohn's payments. A sample printout is provided also at Exhibit B.

Hasbro's answer and response to the aforementioned discovery requests is inadequate. As is fully set forth below, because the illegality interrogatory requests an opinion regarding an issue central to the case, Hasbro must respond pursuant to Fed. R. Civ. P. 33(c). Additionally, Mikohn is entitled to inspect the computer program that Hasbro designed to calculate and confirm royalties under the agreements.

## II. HASBRO MUST DISCLOSE ITS OPINION REGARDING THE LEGALITY OF THE PRE AMENDMENT ROYALTIY PROVISIONS

The Federal Rules of Civil Procedure expressly require Hasbro to respond to Mikohn's illegality interrogatory. Pursuant to Fed. R. Civ. P. 33(c), "[a]n interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact…." "[R]equests for opinions or contentions that call for the application of law to fact … can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." Holland v. GMAC Mortg., 2005 WL 1285678, *3 (D. Kan. 2005). An interrogatory is appropriate under Rule 33(c) if it calls for "application of law to the central facts of the case." O'Brien v. International Broth. of Elec. Workers, 443 F. Supp. 1182, 1187 (D.C. Ga. 1977). A party may avoid answering only "interrogatories which 'extend to issues of 'pure law,' i. e., legal issues unrelated to the facts of the case.'" Id.

The legality of the pre-amendment royalty provisions is a central issue in this case. Indeed, plaintiffs' contract claim focuses exclusively on royalties that they allege accrued before the amendments – under the very provisions the NGCB declared were illegal from Hasbro's prospective.

Moreover, Mikohn already has filed a Rule 12(b)(6) motion to dismiss Hasbro's contract and unjust enrichment claims based on the illegality of the provisions. In its written objection to Hasbro's motion to dismiss, Hasbro avoids all substantive discussion of whether it can legally demand additional royalties under its interpretation of the pre-amendment royalty provisions. During oral argument on that motion, counsel for Hasbro did not clarify Hasbro's position on the issue. The Court has not yet ruled on the motion. If, however, the Court determines that the illegality issue cannot be resolved in the context of a Rule 12(b)(6) motion, Hasbro's response will "narrow[] and sharpen[] the issues" to be addressed in additional pre-trial motions and, if necessary, at trial. Holland, 2005 WL 1285678, *3.

It is not too early in the proceedings to require Hasbro to provide its opinion on the legality of the pre-amendment provisions. "There is no danger of tying [Hasbro] to a legal theory before [it] has had an opportunity to fully explore the case." Id. There are no additional discoverable facts that can affect its position on this issue. All that is required to provide an assessment is to compare the pre-amendment royalty provisions with Nevada law. Nevada law either prohibits Hasbro from recovering under its interpretation of the "sliding scale" royalty provisions, or it does not.

## III. HASBRO MUST PRODUCE THE COMPUTER PROGRAM IT USED TO CALCULATE AND CONFIRM ROYALTY PAYMENTS

A request for production is the appropriate vehicle for gaining access to a computer program in the custody of another party. See, e.g., In re Air Crash Disaster at Detroit

Metropolitan Airport on Aug. 16, 1987, 130 F.R.D. 634, 636 (E.D. Mich. 1989). Mikohn's Request No. 2 asks for documents and records pertaining to Hasbro's royalty accounting system and specifically contemplates production of electronic information. See Exhibit B. In defining the terms documents and records, Mikohn defined the terms to "include all things by which communication is transmitted or stored, including but not limited to computerized records, computerized data collections or compilations …." Id. Hasbro's program containing the electronic instructions for calculating and confirming royalties falls within this definition of "documents" and "records."

Hasbro's computer program could prove to be an integral piece of evidence at trial. Ms. Lebreche testified that the system is designed to confirm that royalty payments were correctly calculated and paid. See Exhibit C. The printouts of the system display provide no insight into the way in which Hasbro programmed the system to calculate royalties. Moreover, without inspecting the program, Mikohn cannot determine whether or not the program was even capable of calculating royalties in the way Hasbro now demands. Such information would provide additional evidence of Hasbro's knowledge of, and agreement with, Mikohn's method of calculating royalties. Hasbro's knowledge in this regard refutes its proffered contract interpretation, as well as its claim that it was defrauded. Hasbro would not be unreasonably burdened if it were required to produce an electronic copy of its royalty accounting program. Mikohn should be given the opportunity to inspect the program.

**CONCLUSION**

For the reasons set forth herein, Mikohn respectfully requests that this Court order Hasbro, within ten days of entry of the order:

1) to state whether it "agree[s] that the royalty rates in the original License Agreements did not comply with the Nevada law[, and i]f not, state why;" and

2) to produce electronic copies of all versions of the computer program that Hasbro used to calculate Mikohn's royalty obligations or payments.

Brooks R. Magratten, No. 3585
Gordon P. Cleary, No. 1948
Michael J. Daly, No. 6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

Dated: February 21, 2006

**CERTIFICATE OF SERVICE**

To:

Todd D. White, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

I hereby certify that I served on the above-named counsel of record a copy of the within Memorandum in Support of Defendant's Motion To Compel by first class mail, postage prepaid on the 21st day of February, 2006.