UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HASBRO, INC. and
HASBRO INTERNATIONAL, INC.,
Plaintiffs,

v.

MIKOHN GAMING CORPORATION,
Defendant.

Civil Action No.: 05-106S

FILED
FEB 16 2006
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

## AMENDED COMPLAINT

1. Plaintiff, Hasbro, Inc. ("Hasbro") is a corporation with a principal place of business in Pawtucket, Rhode Island.

2. Plaintiff, Hasbro International, Inc. ("International") is a corporation with a principal place of business in Pawtucket, Rhode Island.

3. Defendant, Mikohn Gaming Corporation ("Mikohn") (doing business as "Progressive Gaming International Corporation") is a corporation with a principal place of business in Las Vegas, Nevada.

4. Pursuant to 28 U.S.C.A. §1332, this Court has jurisdiction over the parties in the matter as they are citizens of different states and the amount in controversy exceeds the statutory minimum of $75,000.00.

## FACTUAL BACKGROUND

5. Between the fall of 1998 and 2000, Hasbro/International and Mikohn entered into several License Agreements.

6. Each of these License Agreements contained a summary entitled "World-Wide Merchandising License Agreement Summary."

7. Under the applicable License Agreements, Hasbro/International licensed Mikohn to lease and utilize certain Hasbro games.

8. The games under which License Agreements were entered into between the parties included: "Yahtzee," "Battleship," "Clue," "Monopoly" and "Trivial Pursuit".

9. Pursuant to each respective Licensing Agreement between the parties, Mikohn was granted a license by Hasbro/International for the use of each of the aforementioned games for "gaming goods" or products, including but not limited to slot machines.

10. The terms of the royalty rate payment to be made by Mikohn to Hasbro/International for the license of the aforementioned games is set forth in Section 2 of each respective License Agreement.

11. Pursuant to the License Agreement, Mikohn was to pay a royalty to Hasbro/International based upon the revenue Mikohn generated from the sale or lease of the licensed games on a per game, per day basis.

12. The rates set forth in the applicable License Agreements provided that Hasbro/International would receive a minimum royalty of $4.00 per game, per day under each respective License Agreement.

13. Additionally, pursuant to the License Agreement, Hasbro/International could receive a maximum of $46.66 in royalty per game, per day under each respective License Agreement.

14. Between the minimum and maximum royalty payment there existed a sliding scale as to what royalty would be paid to Hasbro/International from Mikohn, predicated on the sale or lease revenue obtained by Mikohn per game, per day.

15. Pursuant to Section 11 of the applicable License Agreement, in the event that Hasbro/International discovered a royalty payment discrepancy of five (5%) percent or more, pursuant to any examination of Mikohn's books and records, Mikohn is to pay Hasbro/International the fee for such examination, plus reasonable out-of-pocket costs, including an interest rate of 1.75% per month or the highest rate permitted by law, whichever is lower.

16. Pursuant to Section 22 of the applicable License Agreement, the Agreement is to be construed in accordance with the internal laws of the State of Rhode Island and any dispute arising thereunder is subject to the exclusive jurisdiction of the State of Rhode Island, including the United States District Court for the District of Rhode Island.

17. Subsequent to executing the applicable License Agreements and placing slot machines into casinos, Mikohn began to remit royalty payments to Hasbro on the "Battleship" and "Yahtzee" branded slot machines.

18. On or about March 20, 2002, Mikohn received a letter from the State of Nevada Gaming Control Board indicating that Mikohn was not to make any payments to Hasbro under the Clue Licensing Agreement until Hasbro was found suitable or the License Agreement was amended to comply with NRS 463.162(2)(A).

19. That same day, upon receipt of that letter, Mikohn's General Counsel, Charles H. McCrea, Jr., contacted Hasbro through its agent, Pat Schmidt, enclosing the letter and indicating "I am confident we can structure a royalty that places Hasbro in essentially the same position economically as it is in now."

20. On or about March 22, 2002, Charles H. McCrea, Jr., wrote to Pat Schmidt outlining a proposed amended royalty agreement.

21. The new royalty structure proposed by Mikohn would be "unit-based."

22. Under this proposal, Hasbro would receive an increased amount of revenue upon an increased number of units that were to be installed.

23. On or about August 5, 2002, Mikohn and Hasbro entered into a Second Amendment to License Agreement in which the royalty rate was calculated based on the number of game units in operation and generating recurring revenues to Licensee. Once again, the calculations were made on a royalty "per game, per day" basis.

24. The rates in the Second Amendment to License Agreement started at $3.50 "before costs recovered" or $4.02 "after costs recovered" for games 1 through 500. The rate proportionately increased until a top rate of $7.50 "before costs recovered" or $8.63 "after costs recovered" was to be applied if there were over 2,000 games.

25. In late 2004, Hasbro had reason to believe that Mikohn had been miscalculating the royalty rates owed to Hasbro/International under the original License Agreement which, therefore, would have directly affected the negotiated unit-based royalty rate under the Second Amendment to the License Agreement.

26. Hasbro learned that Mikohn had been miscalculating the royalty rate by aggregating and averaging all the machines governed by the applicable License Agreements, instead of paying royalties on a per game, per day basis.

27. Pursuant to its right, Hasbro completed an audit of Mikohn's books and records pertaining to the revenues Mikohn generated through the license and lease of Hasbro's "Yahtzee" "Battleship" and "Monopoly" games.

28. Hasbro's audit revealed that Mikohn had underpaid Hasbro in royalties and interest for the aforementioned first two games in excess of $6,000,000.

29. The aforementioned actions undertaken by Mikohn minimized the royalty rate payable to Hasbro/International which caused a significant underpayment to Hasbro/International in the original License Agreements and created an erroneously negotiated rate within the Second Amended License Agreements.

**(Count I)**
**(BREACH OF CONTRACT)**

30. Plaintiffs hereby re-allege paragraphs 1 through 29, as if fully set forth herein.

31. Mikohn has failed to pay Hasbro/International the full amount owed to Hasbro/International under the applicable royalty fee arrangement within the original License Agreements and Mikohn used that as a basis to negotiate an inequitable rate within the Second Amendment to License Agreements.

32. In failing to properly pay Hasbro/International under the royalty arrangement in each agreement, Mikohn breached a contractual obligation that it had with Hasbro/International, and owes Hasbro/International in excess of $6,000,000.00 in principal, interest and other contractual fees.

33. In failing to properly pay Hasbro/International under the royalty arrangement in each agreement, Mikohn breached its obligation of good faith and fair dealing it had with Hasbro/International, and owes Hasbro/International in excess of $6,000,000.00 in principal, interest and other contractual fees.

WHEREFORE, Hasbro/International prays for judgment on its own behalf, including attorneys' fees, costs and interest pursuant to the contractual obligation, and any and all other relief which this Court may deem just in this matter.

**(COUNT II)**
**(UNJUST ENRICHMENT)**

34. Plaintiffs hereby re-allege paragraphs 1 through 33 as if fully set forth herein.

35. Mikohn has miscalculated the royalty payments owed to Hasbro/International by knowingly utilizing an incorrect formula under the original applicable agreements and utilizing this improper formula as the basis upon which it created a revised rate within the Second Amendment to License Agreement.

36. At the time the subject agreements were executed and up until March 20, 2002, Mikohn never informed Hasbro that the "Terms of Payment" provision in the subject agreements might be interpreted as violative of Nevada regulation or statute.

37. As a result of Mikohn's course of conduct, it has been enriched in an amount in excess of $6,000,000 through royalty payments which it owes Hasbro/International.

WHEREFORE, Hasbro/International prays for judgment on its own behalf, and requests that this Court disgorge from Mikohn and order paid to Hasbro/International the unjust enrichment Mikohn has obtained through its action, as well as attorneys' fees, costs, interest and any and all other relief which this Court may deem just in this matter.

**(COUNT III)**
**(FRAUD AND MISREPRESENTATION)**

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL ON ALL COUNTS.**

HASBRO, INC. and HASBRO INTERNATIONAL, INC.

By their Attorney,

Todd D. White
Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607

Date: 2/16/06