UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., et al., Plaintiffs | ) | C.A. No. 05-0106/S |
| v. | ) | |
| MIKOHN GAMING CORP., Defendant | ) | |

## DEFENDANT'S MOTION TO TAKE SIX ADDITIONAL DEPOSITIONS

Defendant Progressive Gaming International Corporation, f/k/a Mikohn Gaming Corp. ("Progressive Gaming")[1] moves pursuant to Fed. R. Civ. P. 26(b)(2) for leave to conduct six depositions in addition to the ten allotted it under the Federal Rules of Civil Procedure.

Pursuant to LR Civ. 7(a), Progressive Gaming files herewith a supporting memorandum of law. Upon objection, Progressive Gaming respectfully requests oral argument on this motion and estimates that such argument would last less than 30 minutes.

Michael J. Daly
Brooks R. Magratten, Esq., #3585
Gordon P. Cleary, Esq., #1948
Michael J. Daly, Esq., #6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Dated: April 13, 2006

[1] Mikohn Gaming Corp. formally changed its name to Progressive Gaming International Corporation in March 2006.

CERTIFICATE OF SERVICE

To:

Todd D. White, Esq.
Adler Pollock & Sheehan, P.C.
One Citizen's Plaza -- 8th Floor
Providence, RI 02903

I hereby certify that I caused to be served on the above-named counsel of record a copy of the within Motion for Leave To Take Six Additional Depositions by mailing first-class mail, postage prepaid, on the 13th day of April, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HASBRO, INC., et al., | ) |
| Plaintiffs | ) C.A. No. 05-0106/S |
| | ) |
| v. | ) |
| | ) |
| MIKOHN GAMING CORP., | ) |
| Defendant | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION TO TAKE SIX ADDITIONAL DEPOSITIONS**

Defendant Progressive Gaming International Corporation, f/k/a Mikohn Gaming Corp. ("Progressive Gaming")[1] seeks leave to conduct six depositions in addition to the ten allotted it under the Federal Rules of Civil Procedure. The additional depositions are required and reasonable in light of the amount in controversy, the resources of the parties, and the needs of the case.

Rule 30(a)(2)(A) of the Federal Rules of Civil Procedure provides that leave of Court must be obtained before a party may notice a deposition that would result in more than ten depositions taken by that party. The Court may alter the ten-deposition rule pursuant to Fed. R. Civ. P. 26(b)(2) if the depositions sought:

1. are not unreasonably cumulative or duplicative;

2. are not discovery that the party has already had ample opportunity to obtain; and

3. are not so burdensome or expensive as to outweigh their likely benefit, taking into account the amount in controversy, the parties' resources, the importance of the issues at stake and the importance of the discovery in resolving issues.

---

[1] Mikohn Gaming Corp. formally changed its name to Progressive Gaming International Corporation in March 2006.

Based on these factors, Progressive Gaming should be allowed six additional depositions.

1. **<u>The Nature of the Case</u>**

Hasbro seeks to recover $6,000,000 in compensatory damages, and punitive damages of an unspecified amount. Hasbro's claim is based on an alleged breach of two trademark and copyright licenses for its Yahtzee and Battleship games, which Progressive Gaming utilized in slot machines it leased to casinos.

Progressive Gaming paid Hasbro royalties under the two agreements for more than five years. During that time Hasbro audited Progressive Gaming twice. Hasbro now alleges that Progressive Gaming purposely underpaid Hasbro by failing to interpret the royalty provisions in a way that maximized royalties to Hasbro.

The genesis of Hasbro's present claim is information it paid for under a Finder's Fee Agreement Hasbro signed with Greg Venturi, a California lawyer. In the summer of 2004, Venturi wrote Hasbro's general counsel, saying he had information about one of Hasbro's licensees worth "millions" to Hasbro. Venturi proffered that a Hasbro licensee, through "dubious accounting" practices, had underpaid Hasbro millions of dollars in royalties, and without Venturi's information, Hasbro would never uncover the loss itself. Hasbro bit, and signed a Finder's Fee Agreement with Venturi, as "agent for an undisclosed principal."

Under the Finder's Fee Agreement, Venturi provided information Hasbro could use to claim Progressive Gaming owed royalty payments; in exchange, Hasbro promised to pay Venturi and his client(s) 7.5% of Hasbro's recovery from Progressive Gaming. The existence of this Finder's Fee Agreement did not become known until after the litigation started and after four former Progressive Gaming employees (at least two of whom supplied information to Venturi) cooperated with Hasbro in providing depositions before even the pretrial conference and before

Hasbro responded to Progressive Gaming's initial discovery requests.

Progressive Gaming has a number of defenses to Hasbro's claim, each of which leads to a line of discovery Progressive Gaming wants to pursue. One of Progressive Gaming's defenses to Hasbro's claims is Hasbro's knowledge of the way Progressive Gaming computed royalties, and acceptance of royalties so computed over a period of three years. During that time, Hasbro audited Progressive Gaming's books and records twice. After the first audit, Hasbro wrote Progressive Gaming a letter saying Progressive Gaming's computation of royalties was proper. After the second audit, Hasbro did not question the royalty payments until after it entered the Finders Fee Agreement.

Another of Progressive Gaming's defenses is the illegality of Hasbro's demand for additional money under royalty provisions. In March, 2002 the Nevada Gaming Control Board wrote Progressive Gaming and instructed it to cease all royalty payments to Hasbro until Hasbro became licensed in Nevada to participate in gaming revenues, or until the Hasbro-Progressive Gaming contracts were amended to comply with Nev. Rev. Stat. 463.162. Progressive Gaming contends that Hasbro was well aware of the potential illegality of the royalty provisions because, among other reasons, Hasbro had contracted with another gaming company, WMS, and had to amend its WMS contracts because of problems with the same Nevada statute.

In addition to its defenses, Progressive Gaming has asserted trademark counterclaims arising out of its federal and Nevada state trademark rights in the names: CARIBBEAN STUD® and CARIBBEAN STUD POKER (with design)® (together "CARIBBEAN STUD"). The CARIBBEAN STUD names are used to identify a 5-card stud-style poker table game with an optional progressive jackpot wager. Progressive Gaming's predecessor in interest pioneered the development and marketing of this poker game. Now, for a

fee, Progressive Gaming allows casinos to use the trademarked CARIBBEAN STUD names to solicit patrons to play the game.

After Hasbro filed its complaint, Progressive Gaming learned that Hasbro has been using the CARIBBEAN STUD name to sell a computerized handheld device that allows its user to electronically play various poker games. According to its packaging, the device allows users to play "Caribbean Stud Poker." Progressive Gaming has not authorized Hasbro to use its CARIBBEAN STUD names to sell the device to the public, which – interestingly – falsely and confusingly depicts the play of CARIBBEAN STUD poker by omitting the progressive jackpot feature.

Progressive Gaming has asserted counterclaims against Hasbro for violations of state and federal trademark laws and for unfair competition under Nevada law. Hasbro's unauthorized use of Progressive Gaming's CARIBBEAN STUD names is likely to cause customer confusion regarding the origin or association of Hasbro's electronic game, and dilutes the distinctive quality of Progressive Gaming's marks.

Progressive Gaming has demanded treble damages based on Hasbro's profits from its infringing activities. Progressive Gaming also has requested that Hasbro be enjoined from making further use of the CARIBBEAN STUD name, as well as recall and destruction of all of Hasbro's infringing devices.

Discovery on the counterclaims has just begun. Hasbro has provided skeletal interrogatory answers, and some documents. A great deal more information will be needed to prepare Progressive Gaming's trademark counterclaim for settlement or trial.

2. **Depositions to Date**

Progressive Gaming has taken the following depositions in this case:

Kristy LeBreche – member of Hasbro's Royalty Accounting Department

Paul Kehoe – member of Hasbro's 2001 Audit Team

Stephen Finelli – member of Hasbro's 2004 Audit Team

Paul Alexander – Hasbro Vice President of Internal Audits

Patricia Schmidt – 30(b)(6) witness on Hasbro contracts with WMS gaming, Progressive Gaming account manager

Charles McCrea – former Progressive Gaming General Counsel

Bruce Kelly – Hasbro in-house counsel who negotiated the Finder's Fee Agreement and received "information" that spurred this lawsuit

Kenneth Venturi – California lawyer, Finder's Fee Agreement signatory

John Ferl – California client of Venturi, received information about Progressive Gaming from Progressive Gaming employees

3. **Depositions To Be Taken**

Progressive Gaming proposes to take the depositions of:

- Hasbro's Rule 30(b)(6) witness(es) with knowledge about i) contract negotiations; ii) Progressive Gaming's royalty payments; iii) Hasbro's audits; iv) Hasbro's demand for additional royalties; v) Hasbro's fraud claim; and vi) Hasbro's alleged damages

- Hasbro's Rule 30(b)(6) witness(es) with knowledge about product development, sales, marketing and profits from its Caribbean Stud Poker device

- Hasbro's experts[2]

The proposed depositions will not be duplicative or cumulative. Progressive Gaming seeks leave to conduct the Rule 30(b)(6) depositions on discrete topics. Hasbro has not yet been asked to produce any witness with respect to any of these issues.[3] Ms. Ritson-Parsons has not yet been deposed and her deposition would be designed primarily to elicit her knowledge and historical understanding of the agreements as Hasbro's senior executive responsible for the agreements. Hasbro has not yet identified experts and, accordingly, Progressive Gaming has not conduced any discovery targeted to Hasbro's experts' opinions.

Progressive Gaming has had no other opportunity to obtain the discovery sought by the depositions. Although Progressive Gaming has propounded written discovery in connection with this case, deposition testimony is necessary to augment Hasbro's responses to date. Deposition testimony in particular is important given the fact that Hasbro's current interpretation contradicts the parties' years of performance under the agreements and Hasbro's pre-suit confirmation that Progressive Gaming properly paid royalties. Given the inconsistencies between Hasbro's current claims and its prior conduct, the give and take discourse available only through live deposition testimony is essential. See Smith Frozen Foods of Idaho v. Merchants Refrigerating Co., 14 F.R.D. 33, 33 (S.D.N.Y. 1953) (recognizing that "issues of custom, practice, and the oral agreement, as alleged in the complaint, require that the deposition be taken by oral examination and that written interrogatories would be quite inadequate.").

---

[2] Progressive Gaming is currently requesting only six additional depositions. Additional depositions may be necessary.

[3] Progressive Gaming has, however, deposed individuals with knowledge about some of these topics, but not in the Rule 30(b)(6) context. For example, Mr. Alexander, Mr. Kehoe and Mr. Finelli have testified to Hasbro's audits of Progressive Gaming, but not as Rule 30(b)(6) witnesses.

The additional depositions are crucial to the case. Progressive Gaming has not conducted any depositions in connection with its counterclaims. Additionally, Hasbro's steadfast insistence that it had no knowledge of the way Progressive Gaming calculated and paid royalties prior to 2002 is inconceivable based on Hasbro's conduct (audits and acceptance of detailed royalty statements, for example) and the documents exchanged thus far.

Additional depositions will not create an undue burden or expense. Hasbro is a wealthy company demanding in excess of $6 million in damages. Progressive Gaming already has been forced to use three of its allotted ten depositions (Kelly, Venturi and Ferl) learning about the specifics of Hasbro's relationship with the individuals who initially concocted this contract claim and sold it to Hasbro. Against this backdrop, the added expense of additional depositions is imminently justified.

The fact that Progressive Gaming has asserted unrelated counterclaims further justifies the additional depositions. If the counterclaims were brought in a separate action, Progressive Gaming would be presumptively entitled to conduct 10 depositions in connection with these claims alone. Progressive Gaming should not be penalized for asserting its trademark and unfair competition claims in this action.

**CONCLUSION**

For the reasons set forth herein, Progressive Gaming respectfully requests that the Court grant Progressive Gaming leave to take six additional depositions beyond the ten presumptively allowed under Rule 30(a)(2)(A).

Michael J. Daly

Brooks R. Magratten, Esq., #3585
Gordon P. Cleary, Esq., #1948
Michael J. Daly, Esq., #6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Dated: April 13, 2006

CERTIFICATE OF SERVICE

To:

Todd D. White, Esq.
Adler Pollock & Sheehan, P.C.
One Citizen's Plaza -- 8th Floor
Providence, RI 02903

I hereby certify that I caused to be served on the above-named counsel of record a copy of the within Memorandum in Support of Defendant's Motion To Take Six Additional Depositions by mailing first-class mail, postage prepaid, on the 13th day of March, 2006

Melanie Scott