UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

RECEIVED
MAY 0 1 2006

| | | |
|---|---|---|
| HASBRO, INC., et al., Plaintiffs | ) | |
| v. | ) | C.A. No. 05-0106/S |
| MIKOHN GAMING CORP., Defendant. | ) | |

**PLAINTIFFS' EXPERT DISCLOSURE**

Pursuant to Rule 26(a)(2) of the Fed. R. Civ. P., the Plaintiffs, Hasbro, Inc. and Hasbro International, Inc. ("Hasbro") hereby make its disclosure of expert testimony.

**Michael T. Tousignant, CPA**

Mr. Tousignant is a Certified Public Accountant and Director of Accounting and Auditing with the accounting firm of Kahn, Litwin, Renza & Co., Ltd. located in Providence, RI.

Mr. Tousignant is a 1986 graduate of Bryant College with a Bachelor of Science degree in business administration/accounting. He is a member of the American Institute of Certified Public Accountants (AICPA) and the Rhode Island Society of Certified Public Accountants. He has been employed by Kahn, Litwin, Renza & Co., Ltd. since 1992 where he provides services including technical accounting, auditing, litigation support and financial reporting.

It is anticipated that Mr. Tousignant will testify concerning the accounting of the royalty payments owed under the Yahtzee and Battleship brands licensing agreements between Hasbro and Mikohn. Specifically, Mr. Tousignant will testify that the terms of payment which includes a payment methodology of "per game per day" required Mikohn to pay Hasbro on the basis of the total lease payment Mikohn received for each individual slot machine at each casino, as opposed to adding up all of the slot machines' lease revenue from all casinos and paying Hasbro

on an average basis per machine day.

It is expected that Mr. Tousignant will testify that the documents he reviewed from casinos leasing Yahtzee and/or Battleship slot machines reported monthly revenue for each machine. These reports appeared to have been provided to Mikohn. Mr. Tousignant will testify that these reports do not allow either Mikohn or Hasbro to actually analyze the performance of each slot machine on a true daily basis. Mr. Tousignant is expected to testify that without the aforementioned underlying data, the next best alternative available to Hasbro was to calculate the performance of each slot machine on a monthly basis and then divide the total by the days in each month.

Mr. Tousignant will testify that a calculation predicated on the revenue earned by each slot machine based on a true daily accounting - as opposed to revenues earned by each slot machine for every month, divided by the days of the month - would yield an even higher royalty payment owed to Hasbro than Hasbro previously demanded. However, Mr. Tousignant will testify to the practical considerations which sometimes constrain receipt of underlying data in accounting practice, and the applicable alternatives these considerations require.

It is anticipated Mr. Tousignant will also testify concerning the audit procedures undertaken by Hasbro in 2001 and 2004. It is anticipated he will testify about the procedures a company using internal auditors such as Hasbro undertakes to review the records and payments of licensees. Mr. Tousignant will testify that, in his experience in undertaking audits as a certified public accountant, which would sometimes include interaction with internal auditors, it is not unusual that an internal auditor may not initially recognize all the relevant issues in an accounting transaction or terms of a contract.

Mr. Tousignant has reviewed the calculations undertaken by the Hasbro Internal Audit

Department in formulating a demand for underpaid royalties subsequent to the 2004 Audit of Mikohn. It is further expected that Mr. Tousignant will testify he is prepared to undertake the calculation of revenue that would be due to Hasbro based solely on non-Nevada casinos which utilize a flat fee lease arrangement with Mikohn, predicated on the available underlying data to determine a per slot machine per day calculation.

Mr. Tousignant has come to these conclusions through his review of the Agreements in question, the relevant pleadings, documents, Hasbro 2001 and 2004 audit files of Mikohn, testimony of witnesses, as well as use of staff providing imputing services and assessment of relevant spreadsheets and documents received from Mikohn and/or Hasbro.

A copy of Mr. Tousignant's Report is attached.

HASBRO, INC. and HASBRO
INTERNATIONAL, INC.
By their Attorneys,

*Todd D. White*

Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607

Dated: *May 1*, 2006

CERTIFICATE OF SERVICE

I hereby certify that on this 1 day of May 2006, I caused a true copy of the within Plaintiffs' Expert Disclosure and Expert Report to be sent by regular mail, postage prepaid to the following counsel of record:

Brooks R. Magratten, Esq.
Gordon Cleary, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

Todd D. White

375657_1.doc

Kahn, Litwin, Renza & Co., Ltd.
Providence • Newport

KLR

951 North Main Street, Providence, Rhode Island 02904
Phone: 401-274-2001 • Fax: 401-831-4018
Email: TrustedAdvisors@KahnLitwin.com • www.KahnLitwin.com

*Certified Public Accountants and Business Consultants*

April 28, 2006

HASBRO, Inc. vs. Mikohn Gaming Corp.
c/o Todd D. White
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

**Opinions**

My opinions on matters relevant to this case and the basis and reasons for those opinions are described in Attachment A.

**Information Considered**

In preparing this report and forming the opinions expressed in Attachment A, I have considered the items of information disclosed in Attachment A-1. I have also considered my knowledge, training and professional experience as a professional accountant.

**Qualifications**

A summary of my qualifications is presented in Attachment B.

**Compensation**

I am being compensated at my normal hourly rates for this type of work, ranging from $100 to $300 per hour. My compensation is not contingent on the outcome of this litigation.

**Other Testimony**

The cases in which I have testified as an expert at trial or by deposition within the preceding four years are listed below:

Paul Arpin Van Line, Inc. vs. White Star Movers, Inc.
W. Daly vs. Window Concepts
B. Morris vs. Insurance Co.
Local 254 vs. Intercity Maintenance

Very truly yours,

Michael T. Tousignant, CPA
Shareholder

MTT:mar

**Attachment A-1**

1. August 18, 1998 License Agreement between Hasbro International, Inc. and Mikohn Gaming Corporation.
2. Hasbro, Inc. royalty audit of Mikohn Gaming Corporation IAD# 04026 for the audit period Q3 2001 to Q4 2004 issued February 1, 2005.
3. Hasbro, Inc. royalty audit of Mikohn Gaming Corporation IAD# 01035 for the audit period Q4 1999 to Q2 2001 issued February 14, 2002.
4. Transcript of the deposition of Paul Alexander
5. Transcript of the deposition of Steven Finelli
6. Transcript of the deposition of John Garner

**Attachment A**

**HASBRO, Inc. vs. Mikohn Gaming Corp.**

1. Based on review of the contract between Hasbro International, Inc. and Mikohn Gaming Corporation, the terms of payment indicate a payment methodology of "per game per day" which Mikohn was required to pay Hasbro. On that basis, Mikohn would be required to calculate the amount owed to Hasbro, based upon the revenue generated per game, per day and then applying the graduated table per the contract.

2. Based on the preliminary review of the documents from casinos leasing Yahtzee and/or Battleship slot machines provided by Mikohn, the documents reported monthly revenue for each machine. These reports do not allow either Mikohn or Hasbro to actually analyze the performance of each slot machine on a daily basis. If Mikohn had available revenue information on an actual per game, per day basis the calculated payout to Hasbro would have yielded a higher payout than the average monthly per game, per day calculation that Hasbro, Inc. internal auditors had to use.

3. Based on the preliminary review of the information made available by Mikohn a calculation predicated on the revenue earned by each slot machine based on a true daily accounting - as opposed to revenues earned by each slot machine for every month, divided by the days of the month - would have yielded an even higher royalty payment owed to Hasbro than Hasbro previously demanded. However, given the limitations of the information that was made available, the next practical alternative was to use the per game, per day monthly average as was used by the Hasbro internal auditors. In

**Attachment A**

accounting practice and in particular audit practice, it is common to use the best available information to evaluate transactions.

4. Based on the review of the internal audit procedures undertaken by Hasbro in 2001 and 2004 and experience in undertaking audits as a certified public accountant, which would sometimes include interaction with internal auditors, it is not unusual that an internal or external auditor may not initially recognize all the relevant issues in an accounting transaction or terms of a contract.

5. Based on the review of the calculations undertaken by the Hasbro Internal Audit Department in formulating a demand for underpaid royalties subsequent to the 2004 Audit of Mikohn, we are prepared to undertake the calculation of revenue that would be due to Hasbro based solely on non-Nevada casinos which utilize a flat fee lease arrangement with Mikohn, predicated on the available underlying data to determine a per slot machine per day calculation. (The use of the average per game, per day based upon monthly information as used by Hasbro internal auditors may be necessary).

**Attachment B**

# MICHAEL T. TOUSIGNANT, CPA
## DIRECTOR OF ACCOUNTING AND AUDITING SERVICES

**EXPERIENCE**

Mr. Tousignant began his public accounting career with the Providence office of a national accounting firm in 1986 before joining Kahn, Litwin, Renza & Co., Ltd. in 1992. He has been the Director of Accounting & Auditing Services since 1993 and has overall responsibility for the operations of the accounting and auditing department of the firm, as well as providing auditing and consulting services for a variety of clients. In addition, he is the Director of Strategic Placement Services and performs executive searches for clients who are in need of financial executives within their organizations.

Mr. Tousignant has had extensive experience in assisting clients within such industries as manufacturing and distributing, retail, construction, hospitality, not-for-profit, financial services and real estate. He has also provided litigation support to several attorneys throughout New England.

**PROFESSIONAL AND COMMUNITY ACTIVITIES**

Mr. Tousignant is the past Chairman of the Board of Directors for the American Red Cross Rhode Island Chapter and has been a member of various boards of directors for other not-for-profit organizations throughout his career.

He completed the Leadership Rhode Island program through the Greater Providence Chamber of Commerce.

He is a member of the American Institute of Certified Public Accountants (AICPA) and the Rhode Island Society of Certified Public Accountants.

**EDUCATION**

Bryant College, B.S. in Business Administration, *summa cum laude*, 1986