UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., et al., Plaintiffs | ) | C.A. No. 05-106/S |
| v. | ) | |
| MIKOHN GAMING CORP., Defendant | ) | NOTICE TO TAKE DEPOSITION |

PLEASE TAKE NOTICE THAT pursuant to F.R.C.P. 30(b)(6), defendant Mikohn Gaming Corp. will take the deposition upon oral examination of plaintiffs Hasbro, Inc. and Hasbro International, Inc. on the 9th day of June, 2006, at 9:00 a.m. before a notary public or other qualified officer at the offices of Vetter & White, 20 Washington Place, Providence, Rhode Island, and the deposition shall continue until completed as the taking thereof may be from time to time adjourned.

Pursuant to F.R.C.P. 30(b)(6), plaintiffs shall designate one or more officers, directors or managing agents or other persons who consent to testify on their behalf. **The persons so designated shall testify as to matters known or reasonably available to Hasbro, Inc. and Hasbro International, Inc.** The designated person or persons shall be prepared to be examined on and testify to the matters stated in Schedule A attached hereto.

Brooks R. Magratten, Esq., #3585
Gordon P. Cleary, Esq., #1948
Michael J. Daly, Esq., #6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Dated: May 12, 2006

CERTIFICATE OF SERVICE

To:

Todd D. White, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza - 8th Floor
Providence, RI 02903

I hereby certify that I served on the above-named counsel of record a copy of the within Notice To Take Deposition by mailing first class mail, postage prepaid, on the 12th day of May, 2006.

Lisa A. Lariviere
____________________________

# SCHEDULE A

For the purposes of this Schedule A, the term "Hasbro" shall mean Hasbro, Inc. and Hasbro International, Inc., and their divisions, departments, and affiliates, singly or in combination.

1. What Hasbro and Mikohn said and did in negotiating the royalty provisions in each of the original license agreements between Hasbro and Mikohn.

2. Why Hasbro contends that the royalty provisions in the original license agreements require Mikohn to pay a royalty based on the actual earnings on each day, for each machine, covered under the original license agreements.

3. The calculations of, and source documents used to compute, the damages Hasbro claims.

4. The factual basis for Hasbro's allegation that Mikohn intentionally miscalculated the royalty payments owed to Hasbro/International by utilizing a formula it knew was not set forth or contemplated in any of the respective agreements governing the royalty payments and then utilizing that as a basis upon which it negotiated an amended rate in the Second Amendment to License Agreements.

5. The factual basis for Hasbro's allegation that Mikohn engaged in fraudulent conduct relative to the contractual obligations that it had with Hasbro/International in minimizing the royalty payments owed to Hasbro/International and utilizing that as a basis for an Amended Agreement.

6. All circumstances surrounding Hasbro's understanding that Mikohn held (and holds) the CARIBBEAN STUD mark, including without limitation the knowledge of Hasbro's Legal Department in or around January 2001, and any discussions or communications related thereto.

7. The following financial information regarding the use of the CARIBBEAN STUD mark on any product: gross revenue, gross profit defined as profit before overhead, the direct costs associated with the manufacture and sale of said product, and the net profit.

8. Hasbro's practice(s) since 1996 for determining whether an article or item to be sold complies with, is exempt from or otherwise requires licenses or permission from third-party holders of intellectual property rights (e.g., copyright, trademark or service mark, whether or not formally registered), and the steps taken by Hasbro to honor such rights, including without limitation, such rights in the case of its "Poker Casino Game" handheld devices.

9. Hasbro's practice(s) since 1996 for determining whether an article or item to be sold by a third party was confusingly similar to or copied Hasbro's intellectual property (e.g., copyright, trademark or service mark, whether or not formally registered) or was compliant with, exempt from or otherwise required licenses or permissions from Hasbro, and the steps taken to enforce and to value such rights, including the details and outcomes of all such potential infringements in the area of games and game devices.

10. All circumstances surrounding Hasbro's use of the phrase LET IT RIDE and/or the accompanying 3-playing-card montage logo, and any discussions or communications related thereto with Shuffle Master.