Kahn, Litwin, Renza & Co., Ltd.
Providence • Newport

951 North Main Street, Providence, Rhode Island 02904
Phone: 401-274-2001 • Fax: 401-831-4018
Email: TrustedAdvisors@KahnLitwin.com • www.KahnLitwin.com

KLR

*Certified Public Accountants and Business Consultants*

May 12, 2006

HASBRO, Inc. vs. Mikohn Gaming Corp.
c/o Todd D. White
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

**Opinions**

My opinions on matters relevant to this case and the basis and reasons for those opinions are described in Attachment A.

**Information Considered**

In preparing this report and forming the opinions expressed in Attachment A, I have considered the items of information disclosed in Attachment A-1. I have also considered my knowledge, training and professional experience as a professional accountant.

**Qualifications**

A summary of my qualifications is presented in Attachment B.

**Compensation**

I am being compensated at my normal hourly rates for this type of work, ranging from $100 to $300 per hour. My compensation is not contingent on the outcome of this litigation. My rate to testify is $300 per hour.

**Other Testimony**

The cases in which I have testified as an expert at trial or by deposition within the preceding four years are listed below:

Paul Arpin Van Line, Inc. vs. White Star Movers, Inc. - Rhode Island Federal Court Trial Testimony
W. Daly vs. Window Concepts - AAA Arbitration Testimony
B. Morris vs. Insurance Co. - In deposition
Local 254 vs. Intercity Maintenance – Greater than 4 years ago deposition only, no court testimony

Very truly yours,

Michael T. Tousignant, CPA
Shareholder

MTT:mar
Encl

KLR

**Attachment A**

**HASBRO, Inc. vs. Mikohn Gaming Corp.**

1. Based on review of the contracts between Hasbro International, Inc. and Mikohn Gaming Corporation, the terms of payment indicate a payment methodology of "per game per day" which Mikohn was required to pay Hasbro. The contract language under the "Terms of Payment" expressly states "royalty per game per day". On that basis, Mikohn would be required to calculate the amount owed to Hasbro, based upon the revenue generated per game, per day and then applying the graduated table per the contract.

2. Based on the preliminary review of the documents from casinos leasing Yahtzee and/or Battleship slot machines provided by Mikohn, the documents reported monthly revenue for each machine. These reports do not allow either Mikohn or Hasbro to actually analyze the performance of each slot machine on a daily basis. If Mikohn had available revenue information on an actual per game, per day basis the calculated payout to Hasbro would have yielded a higher payout than the average monthly per game, per day calculation that Hasbro, Inc. internal auditors had to use. I have direct experience with Video Lottery Terminal providers (VLT) and through that experience I have learned that certain days of the week have higher per game, per day revenues (the drop) than that of others. Based on the aforementioned statement, the drop can be significantly higher on the weekends and other high volume days (i.e. holidays, vacation season, etc.) versus a normal weekday. Therefore, by using the monthly average, Hasbro is receiving a royalty payment based on a much lower calculation which is not indicative of actual activity had the higher volume periods been factored in as was required per the contacts.

KLR

**Attachment A**

3. Based on the preliminary review of the information made available by Mikohn a calculation predicated on the revenue earned by each slot machine based on a true daily accounting - as opposed to revenues earned by each slot machine for every month, divided by the days of the month - would have yielded an even higher royalty payment owed to Hasbro than Hasbro previously demanded. However, given the limitations of the information that was made available, the next practical alternative was to use the per game, per day monthly average as was used by the Hasbro internal auditors. In accounting practice and in particular audit practice, it is common to use the best available information to evaluate transactions. Based on my experience and review of the Hasbro internal audit workpapers, along with a review of a sampling of monthly reports, would indicate the drop rate per game, per day had it been available would have resulted in a higher payout to Hasbro under the contract.

4. Based on the review of the internal audit procedures undertaken by Hasbro in 2001 and 2004 and 20 years of experience in undertaking in excess of 1,000 audits as a certified public accountant, which would sometimes include interaction with internal auditors, it is not unusual that an internal or external auditor may not initially recognize all the relevant issues in an accounting transaction or terms of a contract.

5. Based on the review of the calculations undertaken by the Hasbro Internal Audit Department in formulating a demand for underpaid royalties subsequent to the 2004 Audit of Mikohn, we are prepared to undertake the calculation of revenue that would be due to Hasbro based solely on non-Nevada casinos which utilize a flat fee lease

KLR

**Attachment A**

arrangement with Mikohn, predicated on the available underlying data to determine a per slot machine per day calculation. (The use of the average per game, per day based upon monthly information as used by Hasbro internal auditors may be necessary). If this calculation is undertaken the results will be provided to all parties in a timely manner at the conclusion of the analysis.

KLR

**Attachment A-1**

1. August 18, 1998 License Agreements (Yahtzee and Battleship) between Hasbro International, Inc. and Mikohn Gaming Corporation.
2. Hasbro, Inc. royalty audit of Mikohn Gaming Corporation IAD# 04026 for the audit period Q3 2001 to Q4 2004 issued February 1, 2005.
3. Hasbro, Inc. royalty audit of Mikohn Gaming Corporation IAD# 01035 for the audit period Q4 1999 to Q2 2001 issued February 14, 2002.
4. Transcript of the deposition of Paul Alexander
5. Transcript of the deposition of Steven Finelli
6. Transcript of the deposition of John Garner
7. Transcript of the deposition of Larry Ruhe
8. Pleadings including complaint, answer, amended complaint and amended answer.