UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., et al., Plaintiffs | ) | |
| v. | ) | C.A. No. 05-0106/S |
| MIKOHN GAMING CORP., Defendant | ) | |

**DEFENDANT MIKOHN GAMING CORP.'S MOTION TO DEEM ADMITTED CERTAIN REQUESTS TO ADMIT AND TO COMPEL PRODUCTION OF DOCUMENTS**

Defendant Mikohn Gaming Corp. ("Mikohn") moves pursuant to Fed. R. Civ. P. 36 and 37 for an order:

1) Deeming admitted request 20 of Mikohn's First Requests to Admit;

2) Deeming admitted subsection (c) of requests 1-9 and 12-16 of Mikohn's Fourth Requests to Admit; and

3) Compelling plaintiffs Hasbro, Inc. and Hasbro International, Inc. (together "Hasbro") to produce, within 20 days of hearing on this motion, personnel files and other documents describing the job responsibilities of Hasbro employees who "may have been aware" of the way in which Mikohn paid royalties to Hasbro.

Mikohn certifies that its counsel have in good faith conferred with counsel for Hasbro in an effort to resolve this dispute without Court action.

Mikohn files herewith a supporting memorandum of law. An Appendix of Exhibits is filed contemporaneously with this motion and memorandum. Mikohn requests oral argument on this motion. It is anticipated that argument would require approximately 30 minutes of the Court's time.

Respectfully submitted,

/s/ Michael J. Daly
Brooks R. Magratten, No. 3585
Gordon P. Cleary, No. 1948

Michael J. Daly, No. 6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Dated: August 7, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., et al., | ) | |
| Plaintiffs | ) | |
| | ) | C.A. No. 05-0106/S |
| v. | ) | |
| | ) | |
| MIKOHN GAMING CORP., | ) | |
| Defendant | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT MIKOHN GAMING CORP.'S MOTION TO DEEM ADMITTED CERTAIN REQUESTS TO ADMIT AND TO COMPEL PRODUCTION OF DOCUMENTS**

In this $6 million contract dispute over the proper interpretation of royalty provisions appearing in multiple licensing agreements, plaintiffs Hasbro Inc. and Hasbro International, Inc. ("Hasbro") improperly refuse to admit or deny, or even make a reasonable inquiry to confirm, several key facts in response to defendant Mikohn Gaming Corp.'s ("Mikohn") requests to admit. Hasbro's only justification for this position is that, contrary to the "reasonable inquiry" requirement of Fed. R. Civ. P. 36(a), it would have to speak with its employees and review documents in its possession in order to admit that: 1) several statements made by its own employees "concern a matter or matters within the scope of the employment" of these individuals;[1] and 2) that that Mikohn consistently applied the disputed royalty provisions.[2]

Hasbro also has failed to produce employment related documents that may show the scope of authority of its employees who Hasbro previously admitted "may have been aware" of

[1] See Plaintiffs' Responses to Defendant's Fourth Requests for Admissions, subsection (c) of responses 1-9 and 12-17, attached as Exhibit A. Hasbro's response is mislabeled as a response to "Request for Production of Documents." Mikohn hereafter refers to this document as a response to requests for admissions.

[2] See Plaintiff's Responses to Defendant's Request for Admissions, response 20, attached as Exhibit E.

the way in which Mikohn paid royalties to Hasbro. See Plaintiff's Responses to Defendant's Fifth Request for Production, responses 6 and 7, attached as Exhibit B.

For the reasons set forth below, Mikohn moves to deem admitted the above referenced requests to admit and to compel Hasbro to produce personnel files and other documents describing job responsibilities of the "accounting personnel and/or auditors from Hasbro [who] may have been aware" of the way in which Mikohn paid royalties to Hasbro.

## FACTS

This dispute centers on the proper interpretation of royalty provisions appearing in slot machine licensing agreements between Hasbro and Mikohn. In general terms, the royalty provisions in effect from 1999 until mid-2002 required Mikohn to pay royalties to Hasbro based on a sliding scale royalty rate schedule. Under the sliding scale, the royalty rate increased as the profitability of the slot machines increased. At all relevant times, Mikohn calculated the proper royalty rate by determining the average earnings for the slot machines during the reporting period, and used the average earnings to determine the royalty rate specified in the rate schedule. The dollar amount royalty rate was then multiplied by games per day in operation. The resulting sum was Hasbro's royalty for the machines during the reporting period. With every royalty payment, Mikohn provided Hasbro with a detailed royalty statement showing precisely how royalties were calculated and paid.

During the life of the royalty agreements, Hasbro, on two occasions, exercised its contractual right to audit Mikohn. In 2001 and again in 2004, Hasbro's auditors performed full-scale audits of Mikohn's books to confirm that Mikohn was paying royalties in the proper amounts. Documents created by Hasbro employees in connection with these audits confirm that Hasbro agreed with Mikohn's interpretation of the royalty provisions. For example, in

preparation for the 2001 audit, a Hasbro auditor described precisely how Hasbro agreed to calculate royalties under the agreements:

> Hasbro is entitled to a share of slot machine profits based on the cash received by Mikohn for each licensed product. For example, if the **average** cash receipts for "Yahtzee Video" machines is between $0 and $40 per machine day (number of machines times the number of days in use) Hasbro receives a share of $4 per machine day for that licensed product. Mikohn sends a separate royalty statement each period for each Hasbro licensed product, which includes both participation contracts and lease contracts.

<u>See</u> Hasbro's 2001 <u>Audit Strategy Memo</u>, attached as Exhibit C (emphasis added).

This is precisely how Mikohn paid royalties to Hasbro. Indeed, after concluding the 2001 audit of Mikohn, the Final Audit Report from Hasbro's Internal Audit Department, Exhibit D, concludes as follows:

> Based on the audit procedures performed, we conclude, except for the comments noted herein, it appears the Licensee [Mikohn] has complied with the terms and conditions of the License Agreements and royalties have been property reported and remitted to Hasbro.

Hasbro subsequently adopted a different interpretation of the royalty provisions.[3] In contrast to the 2001 audit process, in which Hasbro clearly confirmed royalties due based on the average income of the slot machines, Hasbro now contends that Mikohn was required to ascertain and pay a separate daily royalty rate for every individual machine in existence. Moreover, despite its own documentation, Hasbro claims that it had no knowledge of the way in which Mikohn calculated royalties. <u>See</u> Exhibit E, response 21.

---

[3] Hasbro adopted its new interpretation after being contacted by an attorney representing an "undisclosed principal" who offered Hasbro an alternate interpretation of the agreement that could yield millions of dollars in additional royalties for Hasbro. In return for his interpretation of the agreements, Hasbro promised to pay the "undisclosed principal" a finder's fee of 7.5% of any recovery from Mikohn.

During discovery, Mikohn asked Hasbro to admit that Mikohn calculated every royalty payment during the relevant time period in a consistent manner. Hasbro refused to make even this simple concession. Instead, Hasbro stated that "it can neither admit nor deny this request because it would require a review of every royalty report in question." Id., response 20.

Mikohn also asked Hasbro to admit that it had prior knowledge of Mikohn's interpretation of the agreements. Notwithstanding the documents it produced, Hasbro denied this fact, admitting only that its "accounting personnel and/or auditors may have been aware" of the way in which Mikohn paid royalties to Hasbro. Id., response 21. In response to a follow up series of requests to admit, Hasbro took an apparent about face and denied that its auditors and accounting personnel knew how Mikohn was paying royalties. See Plaintiff's Responses to Defendant's Third Request for Admissions, response 3-6, attached as Exhibit F.

Thereafter, Mikohn propounded its Fourth Request for Admissions, which asked Hasbro to admit that several documents that Hasbro produced, including the report quoted supra, pertaining to Hasbro's audits of Mikohn and the royalty agreements in general:

(a) contain statements by one or more Hasbro employees;

(b) made while such person or persons worked for Hasbro; and

(c) the statements concern a matter or matters within the scope of the employment of such person or persons.

See Exhibit A. The documents that are the subject of these requests and Hasbro's responses are summarized as follows:

| Request No. | Document No. | Document Summary | Hasbro's Response |
|---|---|---|---|
| 1 | HA 6659-HA 6735 | Audit Report created by Hasbro's Internal Audit Department pertaining to the 2004 audit of Mikohn | Admit (a) and (b); No admission or denial of (c) because Hasbro would have to confer with its employees |

| Request No. | Document No. | Document Summary | Hasbro's Response |
|---|---|---|---|
| 2 | HA 6740-HA 6843 | Draft Audit Report created by Hasbro's Internal Audit Department pertaining to the 2004 audit of Mikohn | Admit (a) and (b); No admission or denial of (c) because Hasbro would have to confer with its employees |
| 3 | HA 06845-HA 6847 | "Exit Conference Memo" by Hasbro auditors pertaining to the 2004 audit of Mikohn | Admit (a) and (b); No admission or denial of (c) because Hasbro would have to confer with its employees |
| 4 | HA 06850-HA 06878 | 2004 Audit Planning documents created by Hasbro employees | Admit (a) and (b); No admission or denial of (c) because Hasbro would have to confer with its employees |
| 5 | HA 06941-HA 06947 | Various documents and correspondence pertaining to Hasbro employees' planning of 2004 audit of Mikohn | Admit (a) and (b); No admission or denial of (c) because Hasbro would have to confer with its employees |
| 6 | HA 06973-HA 06984 | Hasbro's "Summary of Licensing Agreements" | Admit (a) and (b); No admission or denial of (c) because Hasbro would have to confer with its employees |
| 7 | HA 06985-HA 07006 | Hasbro's "Late Payment Analysis" | Admit (a) and (b); No admission or denial of (c) because Hasbro would have to confer with its employees |
| 8 | HA 07044-07047 | Hasbro's "Machine Tie-Out" notes in connection with 2004 audit | Admit (a) and (b); No admission or denial of (c) because Hasbro would have to confer with its employees |
| 9 | HA 07134-HA 07137 | Hasbro's "Lease Revenue Tie-Out" notes in connection with 2004 audit | Admit (a) and (b); No admission or denial of (c) because Hasbro would have to confer with its employees |
| 10 | HA 06360-HA 06450 | Notes pertaining to licensing agreements and audit documents pertaining to 2004 audit of Mikohn | Denied (a), (b) and (c)[4] |

[4] Hasbro's blanket denial of this request is curious in light of the fact that Documents HA 06360-63 are "Licensing Contract" forms describing business considerations pertaining to the agreements, which are signed by Hasbro's former Director of Domestic Corporate Licensing, Lloyd Mintz. Mr. Mintz also was the primary Hasbro executive responsible for negotiating the agreements.

| Request No. | Document No. | Document Summary | Hasbro's Response |
|---|---|---|---|
| 11 | HA 06658 | "Final Report" of Hasbro's Internal Auditing Department concerning the 2004 audit of Mikohn | Admitted (a), (b) and (c) |
| 12 | HA 07996-08006[5] | Final Report of Hasbro's Internal Auditing Department concerning the 2001 audit of Mikohn | Admit (a) and (b);<br>No admission or denial of (c) because Hasbro would have to confer with its employees |
| 13 | HA 08039-HA 08108 and HA 08111-HA 08117[6] | Hasbro's audit documents and program notes concerning the 2001 audit of Mikohn | Admit (a) and (b);<br>No admission or denial of (c) because Hasbro would have to confer with its employees |
| 14 | HA 08155-HA 08167 | Correspondence regarding licensing agreements | Partial admission for (a) and (b); as to statements admittedly made by its employees, no admission or denial of (c) because Hasbro would have to confer with its employees |
| 15 | HA 08169-HA 08171 | Hasbro's "System Documents / General Ledger" concerning the 2001 audit of Mikohn | Admit (a) and (b);<br>No admission or denial of (c) because Hasbro would have to confer with its employees. |
| 16 | HA 08331-HA 08333 | Hasbro's Audit testing plan / notes concerning the 2001 audit of Mikohn | Admit (a) and (b);<br>No admission or denial of (c) because Hasbro would have to confer with its employees. |
| 17 | HA 08432-HA 08445 | Hasbro's summary and findings concerning the 2001 audit of Mikohn | Admit (a) and (b);<br>No admission or denial of (c) because Hasbro would have to confer with its employees. |

[5] The Final Report quoted in part supra, is contained in this group of documents. See Exhibit D.

[6] The Audit Strategy Memo quoted in part supra, is contained in this group of documents. See Exhibit C.

As indicated above, in response to requests 1-9 and 12-17,[7] Hasbro admitted that the identified documents "contain statements by one or more of [its] employees" … "made while such person or persons worked for Hasbro." See Exhibit A. For all of these statements, however, Hasbro refused to admit or deny that they "concern a matter or matters within the scope of the employment of such person or persons" making the statement. Id. Rather, Hasbro simply said that it "can neither admit nor deny this Request as each statement would need to be reviewed with each person who made it to make such a determination." Id.

In a related pair of document requests, Mikohn sought documents to discern independently the scope of authority and the job responsibilities had by the Hasbro employees who Hasbro admitted "may have been aware" of the way in which Mikohn calculated royalties. Specifically, in its Fifth Request for Production, Exhibit B, Mikohn requested that Hasbro produce:

> REQUEST NO. 6:
>
> All documents pertaining to the job responsibilities and descriptions of the "accounting personnel and/or auditors from Hasbro who may have been aware of this method of calculation" as alleged in Hasbro's Response to Request No. 21 of Mikohn's First Request to Admit.
>
> [and]
>
> REQUEST NO. 7:
>
> Personnel files for all "accounting personnel and/or auditors from Hasbro who may have been aware of this method of calculation" as alleged in Hasbro's Response to Request No. 21 of Mikohn's First Request to Admit.

[7] In response to request 14, Hasbro admitted that its employees made only some of the statements while working for Hasbro.

Hasbro refused to produce the personnel files, claiming that Mikohn's request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. See Exhibit B, response 7. As for Mikohn's request for other documents containing job descriptions and identifying job responsibilities of such employees, Hasbro claimed that it has no documents "other than documents provided as part of the weekly time sheet entries for internal auditors." Id., response 6.[8]

The end result of Hasbro's discovery tact is that it has refused to admit basic facts because it does not want the burden of speaking with its own employees or reviewing documents it created, which are in its possession. Hasbro also has attempted to thwart Mikohn's independent inquiry into the scope of employment of Hasbro's employees by refusing to produce appropriate employment related documents.

**A. HASBRO'S RESPONSES TO REQUESTS TO ADMIT ARE IMPROPER**

Hasbro's responses to Mikohn's requests to admit fall well short of what is required under Fed. R. Civ. P. 36. Rule 36(a) "states straightforwardly with rather steep specificity the rules regarding Requests for Admissions." Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 76-77 (N.D.N.Y. 2003).

> An answering party may not give lack of information or knowledge as a reason for failure to admit or deny **unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.**

Fed. R. Civ. P. 36(a) (emphasis added). If an answer does not comply with this simple mandate, the Court "may direct that the matter be deemed admitted or [order] that an amended answer be served. Henry, 212 F.R.D. at 78 (citing Fed. R. Civ. P. 36(a)).

[8] It appears Hasbro already has produced these time sheets.

"Reasonable inquiry" under Rule 36 requires the responding party to make "a reasonable effort[] to secure information that is readily obtainable from persons and documents within the responding party's relative control and to state fully those efforts." Id. This "includes an investigation and inquiry of employees, agents, and others, 'who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response.'… The inquiry may require venturing beyond the parties to the litigation and include, under certain limited circumstances, non-parties, but surely not strangers." Id. (quoting T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer, 174 F.R.D. 38, 43-44 (S.D.N.Y.1997)); see also Diederich v. Department of Army, 132 F.R.D. 614, 620 (S.D.N.Y. 1990).

Hasbro's answers to Mikohn's requests to admit are both implausible and improper. In its responses to Mikohn's Fourth Requests for Production Hasbro admits that its employees made the vast majority of statements identified in the requests. Hasbro, however, denies knowledge of whether the statements concurred matters within the scope of the employees' jobs. See Exhibit A, responses to subsection (c) of requests 1-9 and 12-17. Hasbro cannot credibly claim that it does not know whether its employees' statements "concern a matter or matters within the scope of the employment of such person or persons." Indeed, Hasbro's managers are in an ideal position to comment on the scope of employment and authority of the Hasbro employees who worked for them.

A comparison of Hasbro's answers to requests 10 and 11 in Mikohn's Fourth Request to Admit shows how earnestly Hasbro tries to have it both ways when responding to Mikohn's requests. The document identified in Request 10 is the Final Audit report created by Hasbro's Internal Audit Department in connection with the 2004 audit of Mikohn. This document recites Hasbro's current interpretation of the royalty provisions (different than the Audit Department's

interpretation in 2001) and formally accuses Mikohn of improperly calculating royalties. It is in connection with this document that Hasbro gives its **only** admission that the statements were made by employees acting within the scope of their employment. See Exhibit A, response 10. Therefore, it is clear that Hasbro is capable of responding to Mikohn's requests of this nature.

Incredibly, when the same Internal Audit Department created the equivalent Final Report after the 2001 audit (concluding that Mikohn properly paid all royalties), which Hasbro's Internal Audit Vice President signed, Hasbro retreats to its standard response that it is unable to determine whether the statements were made within the employees' scope of employment. See id., response 11. It is patent that Hasbro is willing to admit facts that appear helpful to it, but refuses to concede obvious[9] and reasonably determinable facts when doing so may be against its interest.

Moreover, Hasbro has made no attempt to comply with its obligation to conduct a "reasonable inquiry" before failing to admit or deny because of lack of knowledge. See Fed. R. Civ. P. 36(a). Indeed, Hasbro's responses show it has not even tried to conduct any inquiry. Hasbro claims that it cannot provide definitive answer to the request because "each statement would need to be reviewed with each person who made it to make such a determination." This is precisely what Rule 36 requires. See Henry, 212 F.R.D. at 78. Further, the task of identifying the scope of each employee's authority would not be as onerous as Hasbro apparently makes it out to be. An appropriate Hasbro manager should be able to confirm whether an undisputed statement by an employee he or she supervised "concerns a matter or matters within the scope of the employment of" the employee.

[9] Even obvious or undisputable facts are the proper subject of requests to admit. See First of America Trust Co. v. First Illini Bancorp, Inc., 685 N.E.2d 351, 361 (Ill. App. 1997) (imposing sanctions against a party who failed to "conced[e] the obvious").

Equally improper is Hasbro's response to request 20 in Mikohn's First Requests to Admit. Hasbro flatly refused to concede that Mikohn, during the relevant time period, made every payment under the royalty provisions using a consistent interpretation of the royalty provisions. Hasbro's explanation for its failure to admit or deny is that it would have to review all of Mikohn's royalty reports submitted to Hasbro to make that determination. Exhibit D, response 20. Rule 36 does not permit a party to avoid answering an elemental fact simply because it will have to review documents already in its possession. This is particularly true here because Mikohn's consistent course of performance under the agreements may be an important factor in this case. Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 115 F. Supp.2d 367, 375 n.40 (S.D.N.Y. 2000) ("The parties' practical construction of the agreement, as demonstrated by their consistent course of performance, is relevant to a determination of the meaning of the agreement.")

Because Hasbro has declined even to make a superficial attempt to respond properly to Mikohn's requests to admit without a Court order, Mikohn has been forced to expend time and money to press this motion. An appropriate remedy for Hasbro's improper conduct would be to deem admitted request 20 of Mikohn's First Request to Admit and subsection (c) of requests 1-9 and 12-16 of Mikohn's Fourth Requests to Admit.

**B. MIKOHN'S REQUEST FOR EMPLOYEE RELATED DOCUMENTS IS PROPER AND HASBRO'S RESPONSE IS INADEQUATE**

More than just refusing to admit the obvious authority of its employees, Hasbro also takes the position that Mikohn cannot inquire into this area. Although it interposes no objection to Mikohn's request for documents identifying job responsibilities of its employees who knew how Mikohn calculated royalties, Hasbro represents that it has no responsive documents other than time sheets. See Exhibit B, response 6. It is, however, implausible that Hasbro would not

have documents describing job responsibilities of its internal auditors and accounting personnel. At a minimum, job advertisements and performance evaluations would provide such information.

As for Mikohn's request for employee files for Hasbro personnel, Hasbro contends that Mikohn's request is "overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." See id., response 8. To the contrary; Mikohn's request is for a limited and highly relevant universe of documents.

Although Hasbro has denied institutional knowledge of Mikohn's royalty calculation method, there can be no serious dispute that Hasbro's 2001 auditing team was aware of Mikohn's interpretation, and in fact applied the royalty provisions consistently with Mikohn. See Exhibit C. The only question, then, is whether this knowledge may be imputed to Hasbro. "Under Rhode Island law 'notice to an agent is notice to his principal as to matters within the actual or apparent scope of the agent's authority.'" Paul Revere Life Ins. Co. v. Fish, 910 F. Supp. 58, 63 (D. R.I. 1996) (quoting American Underwriting Corp. v. Rhode Island Hosp. Trust Co., 303 A.2d 121, 125 (R.I. 1973)). Personnel files and documents describing job responsibilities of all individuals on Hasbro's auditing team and other employees who knew how Mikohn calculated royalties is a logical starting point for determining whether those individuals obtained their "knowledge in the course of the engagement with [Hasbro] and within the scope of [their] authority." U.S. v. Josleyn, 206 F.3d 144, 159 (1st Cir. 2000) (imputing employee's knowledge to company because "he had authority to act for the company and … he was acting in that capacity with the interests of the corporation in mind").

Hasbro's knowledge of Mikohn's performance under the agreements is an important issue in this case. Without a single objection from Hasbro until 2005, Mikohn made, and

Hasbro accepted, royalty payments under the royalty calculation method that Hasbro now contends is improper. Hasbro's auditors reviewed these payments and concluded they were correct. "Where an agreement involves repeated occasions of performance by either party with **knowledge** of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." Elena Carcieri Trust-1988 v. Enterprise Rent-A-Car Co., 2004 WL 603498, *2 (R.I. Super. 2004) (emphasis added) (quoting Restatement (Second) Contracts § 202). Because Hasbro has denied knowledge, Mikohn must be given the opportunity to obtain discovery in order to impute the knowledge of Hasbro's employees to Hasbro. Accordingly, Mikohn's requests for production are proper.

## CONCLUSION

For the foregoing reasons, Mikohn respectfully requests that the Court:

4) Deem admitted request 20 of Mikohn's First Requests to Admit;

5) Deem admitted subsection (c) of requests 1-9 and 12-16 of Mikohn's Fourth Requests to Admit; and

6) Order Hasbro to produce, within 20 days of hearing on this motion, all documents describing the job responsibilities and personnel files of Hasbro employees who knew how Mikohn paid royalties to Hasbro.

Respectfully submitted,

/s/ Michael J. Daly

Brooks R. Magratten, No. 3585
Gordon P. Cleary, No. 1948
Michael J. Daly, No. 6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Dated: August 7, 2006

CERTIFICATE OF SERVICE

To:

Todd D. White, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza - 8th Floor
Providence, RI 02903

I hereby certify that I electronically filed this motion and memorandum on August 7, 2006. The motion and memorandum are available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-identified counsel of record has been effectuated by electronic means.

__/s/ Michael J. Daly____________