UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., et al., Plaintiffs | ) | |
| v. | ) | C.A. No. 05-0106/S |
| MIKOHN GAMING CORP., Defendant. | ) | |

**PLAINTIFFS' PRE-TRIAL MEMORANDUM**

**1(a). Plaintiffs' Claim and Supporting Witnesses.**

**Plaintiffs' Direct Claim**

Plaintiffs' expect to prove that the defendant breached two license agreements (for Yahtzee and Battleship, respectively). As a result of those breached agreements, plaintiffs contest that (with contractual interest accruing) at the time of trial they will be entitled to in excess of $8 million.

Plaintiffs contend that the methodology utilized by the defendant in making royalty payments for the use of the Yahtzee brand and the Battleship brand in conjunction with defendants' slot machines was incorrect pursuant to the contracts. Plaintiffs contend that defendants' determination to aggregate all of the particular branded slot machines and pay plaintiffs on an average basis is a breach of the respective contracts. Plaintiffs contend that the contract required the defendant to pay plaintiffs on a "per game per day" basis – an amount based upon the slot machine's daily leased revenue at a particular casino.

Because defendant has contended that it is not provided the daily slot machine performance information necessary to pay the plaintiffs on a "per game per day" basis,

plaintiffs will accept, in the alternative, payment on each slot machine on a monthly basis, divided by the number of days in that particular month.

Plaintiffs anticipate calling the following witnesses in an effort to establish their breach of contract claims:

**Charles McCrea** (by deposition or live testimony). Mr. McCrea will testify about his position as the general counsel of Mikohn; his negotiations of the two agreements in question; his understanding of Mikohn's payment obligations pursuant to those agreements; his conversations with members of Mikohn's management team about those payment obligations and his understanding of certain terms within the agreements, themselves.

**Donald Stevens** (by deposition or live testimony). Mr. Stevens will testify about his former role as the Vice President of Finance and Chief Financial Officer for Mikohn. Mr. Stevens is expected to testify about his understanding of the agreements in question; the payment methodology required in those agreements; and his conversations with various members of Mikohn's management team concerning Mikohn's obligations under those agreements.

**Kristie LeBreche** (by deposition or live testimony). Ms. LeBreche will testify about her accounting experience and the calculations she undertook concerning the licensing agreements in question.

**Michael Kehoe** (by deposition or live testimony). Mr. Kehoe will testify about his auditing experience and the auditing he did concerning the license agreements in question.

**Michael Tousignant**. Mr. Tousignant is expected to testify as an expert. He will testify about the accounting methodologies employed in determining the royalty payments in this dispute; the contract terms; as well as standards utilized in auditing in the industry.

**Bruce Kelly** (by deposition or live testimony). Mr. Kelly will testify about standard licensing agreements utilized by Hasbro. He will testify about the methodology utilized in the legal department to draft and review those agreements and the relationship between the legal department, the auditing department and the licensing department with regard to contract interpretation pertaining to those license agreements.

**John Ferl** (by deposition or live testimony). Mr. Ferl will testify about his communications with Hasbro personally and through counsel concerning the Mikohn payment methodology and about the finder's fee agreement entered into with Hasbro.

**John Garner** (by deposition or live testimony). Mr. Garner will testify about his former position as the Chief Financial Officer at Mikohn; his understanding of the payment methodology utilized by Mikohn; his understanding of Mikohn's general accounting procedures; his understanding of the appropriate payment methodology pursuant to the agreements in question; as well as his communication with members of Mikohn's Management Board and Board of Directors about payment obligations Mikohn had to Hasbro.

**Larry Ruhe** (by deposition or live testimony). Mr. Ruhe will testify about his former position of the Director of Gaming at Mikohn; his understanding of the licensing agreement in question; his understanding of the appropriate payment methodology

pursuant to those agreements; and the conversations that he had with various members of Mikohn's management team about the payment methodology required.

**Dennis Van Hook** (by deposition or live testimony). Mr. Van Hook will testify about his former role in Mikohn's financial department and in particular his role as Mikohn's corporate controller. He will testify about his understanding of the contractual payment methodology; Mikohn's accounting practices; and his interpretation of Mikohn's obligation under those agreements.

**Thomas Haa**s (by deposition or live testimony). Mr. Haas will testify about his role as Mikohn's former Director of Finance and as a consultant for Mikohn. He will testify about this knowledge of the licensing agreement in question; Mikohn's accounting practices; and his interpretation of the methodology of payment.

**Paul Alexander** (by deposition or live testimony). Mr. Alexander is not designated as an expert per se, but because he is the Vice President of Auditing at Hasbro he has expertise in the auditing field, as well as certain aspects of product finances. He will testify about what the Hasbro auditing department did with regard to the two audits pertaining to licensing agreements with Mikohn. Mr. Alexander will testify about the auditing procedures undertaken by Hasbro and about the interpretation of licensing agreements and language in those licensing agreements. Mr. Alexander will further testify about the audit procedures, expectations and result of the 2001 and 2004 audits of Mikohn.

**Pat Schmidt** (by deposition or live testimony). Ms. Schmidt will testify about the specific licensing agreements at issue in this case, as well as her negotiations and discussions with various personnel from Mikohn on related licensing issues. Ms.

Schmidt will testify about the underlying assumptions of the licensing agreements and the reasons why Hasbro was willing to agree to the terms of those agreements.

**John McCann**. Mr. McCann will testify about Hasbro's licensing agreements; the methodology utilized in the legal department to draft and review those agreements; the relationship between the legal department, the auditing department and the licensing department with regard to contract interpretation pertaining to those license agreements; and his work on and understanding of the Mikohn licensing agreements.

**Barbara J. Finigan**. Ms. Finigan will testify about Hasbro's licensing agreements; the methodology utilized in the legal department to draft and review those agreements; and the relationship between the legal department, the auditing department and licensing department with regard to contract interpretation pertaining to those license agreements.

**Defendants' Counterclaim**

Defendants have a counterclaim for a trademark infringement of the casino game Caribbean Stud Poker. Plaintiffs are not contesting the trademark infringement. The issue before the Court is the valuation of that trademark infringement. Hasbro and Hasbro, Inc. will put on evidence as to the gross profits or losses from the game in question (a handheld electronic game that plays certain casino games). With respect to the defense of this counterclaim, plaintiffs expect to put on Paul Alexander as a witness. As previously indicated, Mr. Alexander is Vice President in charge of auditing and will testify as to the sales and profit of the handheld game in question. It is expected that Mr. Alexander will testify as a fact witness but in light of his auditing/accounting expertise particularly in the toy industry, as well as his understanding of product costing and

product profits in the toy industry, Mr. Alexander is also identified as an "expert" with respect to Defendant's counterclaim. Hasbro may also designate a member of its licensing group if the question of reasonable royalty becomes an issue.

**2. Memorandum of Supporting Law**

The Direct claim before the Court is whether or not the defendant breached two Licensing Agreements (for Yahtzee and Battleship, respectively). Because Plaintiffs have conce4ded to liability in defendant's counterclaim for Trademark Infringement, the only issue in contention is damages. The supporting law on the direct claim is the common law concerning breach of contract. The law cited in the jury instructions would be the applicable law with regard to this matter.

Ultimately, determining if a term of a contract is ambiguous is a question of law for the Court. If such an ambiguity is found, then the Court may determine that a question of fact exists requiring extrinsic or parol evidence in order to clarify the "ambiguous" term or clause. See, Mana v. J.R.C. Realty Corp., 424 A.2d 1052 (RI 1981).

**3. List of All Exhibits**

See attached Plaintiffs Exhibit List.

**4. Jury Instructions**

See Plaintiffs' attached Proposed Jury Instructions.

**5. Statement is to Length of Trial**

Plaintiffs estimate this case can be tried in eight to ten days.

For the Plaintiffs
Defendants-in-Counterclaim,
HASBRO, INC. and HASBRO
INTERNATIONAL, INC.
By their Attorneys,

*/s/ Todd D. White*
Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of August 2007, I electronically filed the attached Plaintiffs' Pre-Trial Memorandum with the Court using the ECF system. The following counsel of record are registered with the Court and will be served electronically through the ECF system:

Brooks R. Magratten, Esq.
Gordon Cleary, Esq.
Michael Daly, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

*/s/ Todd D. White*

*424944_1.doc*