UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., et al., | ) | |
| Plaintiffs | ) | C.A. No. 05-0106/S |
| | ) | |
| v. | ) | |
| | ) | |
| MIKOHN GAMING CORP., | ) | |
| Defendant | ) | |

DEFENDANT-COUNTERCLAIMANT'S JURY INSTRUCTIONS

Mikohn Gaming Corporation respectfully requests that the jury be instructed in accordance with the attached jury instructions.

/s/ Gordon P. Cleary

Brooks R. Magratten, Esq., No. 3585
Gordon P. Cleary, Esq., No. 1948
Michael J. Daly, Esq., No. 6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Dated: August 13, 2007

CERTIFICATE OF SERVICE

To:

Todd D. White, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza - 8th Floor
Providence, RI 02903

I hereby certify that I electronically filed Defendant-Counterclaimant's Jury Instructions on August 13, 2007. Defendant-Counterclaimant's Jury Instructions are available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-identified counsel of record will be effectuated by electronic means and by mailing first class mail, postage prepaid, to non-registered parties.

/s/ Gordon P. Cleary

Page(s)

I. Summary Of The Case: .......... 5-6

II. General Instructions:

A. General Instructions .......... 7-14
1. Duty of Court/Jurors .......... 7
2. Juror's Duty to Apply the Law .......... 8
3. Consider Instructions as a Whole .......... 9
4. Bias or Prejudice or Sympathy .......... 10
5. Judge's Opinion .......... 11
6. Speculation and Conjecture .......... 12
7. Cautionary on Number of Witnesses, Volume of Evidence .......... 13
8. Written Instructions .......... 14

B. Burdens and Standards of Proof .......... 15-20
1. Burden on Plaintiff .......... 15
2. Preponderance of the Evidence .......... 16
3. Cautionary Instructions .......... 17-19
a. Consider all of the Evidence .......... 17
b. Weight of Evidence .......... 18
c. "If you find" .......... 19
4. Burden on Counterclaimant .......... 20

C. Miscellaneous .......... 21-22
1. Inferences Explained .......... 21
2. Cautionary: Unsupported Theories of the Case .......... 22

III. Contract Instructions:

A. Contract .......... 23-47
1. Interpretation .......... 23-34
a. Jury's Role in Interpreting Ambiguous Contracts .......... 23
b. Objective Manifestations Govern, Subjective Irrelevant .......... 24
c. Contract Should Be Interpreted As A Whole .......... 25
d. Impossible Interpretations Should Be Disregarded .......... 26
e. Nonsensical Interpretations Should Be Disregarded .......... 27
f. Extrinsic Evidence Relevant to Contract .......... 28
g. Interpretation .......... 29-31
i. Statements Made During Negotiations .......... 29
ii. Performance Under the Contract .......... 30
iii. Trade Usage .......... 31
h. Meaning of "Gross Revenue" .......... 32
i. Cautionary .......... 33-34
i. Must Relate to Formation of Contract .......... 33
ii. Jury Interprets Contract, Witness' Interpretations Irrelevant .......... 34

2. Illegality ........ 35-36
a. Illegal Contracts Are Unenforceable ........ 35
b. Illegal if Agreements Hide a Percentage Scheme ........ 36
3. Waiver ........ 37-39
a. Waiver defined ........ 37
b. Waiver Determined by Objective Evidence ........ 38
c. Waiver of a non-waiver clause ........ 39
4. Estoppel ........ 40-44
a. Estoppel defined ........ 40
b. Estoppel distinguished from Waiver ........ 41
c. Destruction of Evidence is Injury ........ 42
d. Non-Waiver Provision Has No Effect On Estoppel ........ 43
e. Partial Estoppel ........ 44
B. Damages for Breach of Contract ........ 45-47
1. Plaintiff has burden of proving damages ........ 45
2. Speculative damages are unrecoverable ........ 46
3. Mitigation – Doctrine of Avoidable Consequences ........ 47

IV. Trademark Instructions:

A. Trademark Infringement and Unfair Competition Generally: Liability Established and Remedies Requested ........ 48
B. Defendant's Profits (15 U.S.C. §1117(A) and Unfair Competition)
1. ENTITLEMENT – WILLFUL or INTENTIONAL ........ 49-50
2. Amount ........ 51
C. Trademark Infringement – Reasonable Royalty ........ 52

**MIKOHN INSTRUCTION NO. 1**

Summary of the Case

There are two distinct disputes here. First, Hasbro, Inc. and Hasbro International (which I will refer to jointly as "Hasbro") claim that Mikohn breached two identical royalty provisions in a pair of license agreements. Second, Mikohn has made a counterclaim against Hasbro and claims that Hasbro infringed on Mikohn's Caribbean Stud Poker trademark.

Hasbro's breach of contract claim asserts that Hasbro was underpaid royalties under a pair of licensing agreements between Hasbro and Mikohn. The licensing agreements were executed in 1998. They permitted Mikohn to use Hasbro's "Yahtzee" and "Battleship" trademarks on slot machines in exchange for royalty payments made to Hasbro on a monthly or quarterly basis.

Mikohn began paying royalties under the agreements in 2000. In pertinent part, the royalty provisions of the agreements read:

> (a) Royalty Rate. Licensee [Mikohn] will pay a royalty to Licensor [Hasbro] calculated as a percentage of gross revenue to Mikohn generated from the sale or lease of the games as follows:
> …
>
> | Lease Revenue to [Mikohn] | Royalty Per Game Per Day |
> |---|---|
>
> **[Here quote the royalty schedule]**

Mikohn calculated its payments to Hasbro by taking its gross revenue from all of the games governed by an agreement in a pay period, determining the average lease revenue to Mikohn on each game-day, then paying Hasbro a royalty for each game-day at that rate. In 2002, Mikohn and Hasbro amended the agreements and eliminated the royalty provision above.

In 2005, Hasbro demanded a recalculation of all royalties before the 2002 amendments. Hasbro claims that Mikohn improperly calculated the amount of royalties that it owed to Hasbro. Hasbro claims that royalties should have been calculated separately on each individual slot machine on each individual day. The meaning of the royalty provision in the Battleship and Yahtzee contracts is the fact that is in dispute.

Mikohn has counter-claimed for trademark infringement. This is the second dispute. This dispute does not involve the "Yahtzee" or "Battleship" licensing agreements. In 2003, Hasbro began selling a handheld video poker game. The video poker game permitted the player to choose between two casino-style card games: Caribbean Stud

Poker and Let It Ride. Caribbean Stud Poker is a trademarked brand of Mikohn. Hasbro did not request or receive permission to use the Caribbean Stud Poker trademark before selling its video poker game. Hasbro's use of Caribbean Stud Poker in its video poker game infringed upon Mikohn's trademark.

**MIKOHN INSTRUCTION NO. 2**

General Instructions: Duty of the Court/ Jurors

Now that you have heard the evidence and the arguments, it is my duty to instruct you on the law applicable to this case. My job is to know the law and to explain it to you. Your duty is to decide the facts of the case based on the evidence, and then apply the law to those facts.

SOURCE: §201, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003).

**MIKOHN INSTRUCTION NO. 3**

General Instructions: Juror's Duty to Apply the Law

As jurors, it is your duty to follow the law as I instruct you, and to apply the rules of law to the facts as you find them from the evidence. You are not to be concerned with the wisdom of any rule of law, regardless of any opinion you may have as to what the law ought to be. It is a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the court; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence in the case. Justice through trial by jury depends upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors, and to arrive at a verdict by applying the same rules of law given to you in the instructions of the court. Your job is to accept the law as I explain it to you regardless of what you think the law is or ought to be.

SOURCE: §202, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003).

**MIKOHN INSTRUCTION NO. 4**

General Instructions: Consider Instructions as a Whole

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. And, unless I otherwise instruct, you should consider each instruction to apply to both the plaintiffs and the defendant.

SOURCE: §203, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003).

**MIKOHN INSTRUCTION NO. 5**

General Instructions: Bias or Prejudice or Sympathy

You have been sworn as jurors in this case to try the issues of fact presented by the allegations stated in plaintiff's complaint and defendant's answer. You are to perform this duty without bias toward or prejudice to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the court, and reach a just verdict, regardless of the consequences. The race, gender, color, social standing or wealth of the parties, the witnesses or the attorneys should not influence you.

SOURCE: §204, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003).

**MIKOHN INSTRUCTION NO. 6**

General Instructions: Judge's Opinion

Nothing I say in these instructions is to be taken as a suggestion that I have an opinion about the facts. It is your view of the facts that should determine your verdict. If, during the course of this trial, or in giving you these instructions, I have said or done anything that has caused you to believe that I was indicating an opinion about the evidence or the facts of the case, I instruct you that I intended to indicate no such opinion. You should not permit my conduct to have any influence whatsoever on your determination of what the facts are. It is the function of the jury exclusively to resolve questions of fact, and it is your duty to guard zealously against any usurpation of that function, however unintentional it may have been.

SOURCE: §205, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003).

**MIKOHN INSTRUCTION NO. 7**

General Instructions: Speculation and Conjecture

It will often happen in a case that the evidence does not answer all of the questions that the jury might have about it. Sometimes the evidence will invite the jury to speculate about things that are not in the evidence. For example, sometimes witnesses are not asked all of the questions that the jury might wonder about or sometimes the judge's rulings prevent the witness from answering a question that the jury would like answered. It is very important that you not speculate about the evidence or even what you might perceive to be a lack of evidence. In deciding the facts of this case you may rely only upon the evidence and not your own conjecture about, say, what a witness might have said or what a particular document might have shown.

SOURCE: §206, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003).

**MIKOHN INSTRUCTION NO. 8**

General Instructions: Cautionary on Number of Witnesses, Volume of Evidence

I must caution you that you should not make your decision about any disputed point based purely upon the number of witnesses that testified one way or the other about that issue or the volume of the evidence offered on it. Your determinations concerning which facts you will accept as true should not be contingent upon the number of witnesses that testified for or against those facts or the amount of evidence offered by one side or the other. In other words, the test is not one of which side brings the greater number of witnesses or presents the greater quantity of evidence to prove a disputed point.

The test is which witnesses and which evidence appeals to your minds as being most accurate and trustworthy and which produces in your minds a belief in the likelihood of the truth.

SOURCE: §207, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003) (citing Bossian v. United Electric Railways Co., 128 A.2d 843 (1957)).

**MIKOHN INSTRUCTION NO. 9**

General Instructions: Written Instructions

Shortly after you retire to the jury room to begin your deliberations, I will direct the sheriff to take the exhibits to you so that you will have them to consider during your deliberations. The sheriff will also bring to you a jury verdict summary sheet and written copy of a portion of my instructions. You are free to refer to that copy of my instructions in your deliberations.

I must caution you, though, there may be some minor discrepancies between the written text and the instructions that I have given you verbally. Those discrepancies, however, have no substantive import and, should you notice any such discrepancies, you should not be overly concerned with them. If you would like me to repeat a portion of these instructions or those that I gave you at the beginning of or during the trial, simply let me know and I will do so.

Keep in mind that you are to follow all of the instructions that I have given you today, at the beginning of the trial and during the trial. You must not assume that the written instructions are any more important that the other instructions that I have given you but which have not been reduced to written text.

SOURCE: §209, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003).

**MIKOHN INSTRUCTION NO. 10**

Burdens and Standards of Proof: Burden on Plaintiff

I will now instruct you on the law as it applies to the first dispute: Hasbro's breach of contract claim and the meaning of the royalty provision.

In this case, like most, the law places the burden of proof on the plaintiffs. All this means is that the law imposes upon Hasbro the obligation or responsibility of proving their claims. The law requires that one who advances a proposition has the burden of sustaining its validity. Because Hasbro is advancing the proposition that Mikohn should be held responsible for some harm it caused Hasbro, it is Hasbro who has the responsibility of producing evidence which leads you to believe that what Hasbro claims is more likely true than not.

Mikohn, on the other hand, has no obligation to produce evidence concerning Hasbro's claim. Mikohn does not have to disprove what Hasbro claims is true. The burden is on the Hasbro to prove each of the elements of its breach of contract claim to you.

Remember, though, that Hasbro's burden only applies to its claim for breach of contract. As I will instruct you again later, Mikohn carries the burden on the second dispute: its counterclaim for trademark infringement.

SOURCE: §301.1, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003) (citing DiLibero v. Swenson, 593 A.2d 42 (R.I. 1991); Paramount Office Supply Co. Inc. v. D.A. MacIsaac, Inc., 524 A.2d 1099 (R.I. 1987); Barbieri v. E.M. Young Co., 82 R.I. 382, 110 A.2d 263 (1954)).

**MIKOHN INSTRUCTION NO. 11**

Burdens and Standards of Proof: Preponderance of the Evidence

In addition to imposing the burden of proof on a plaintiff, the law also requires that the proof and support of any given claim reach a certain level or standard. In this case the level of proof required is proof by a preponderance of the evidence. To prove something by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered with that opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. Where the evidence adduced either for or against a given proposition outweighs opposing evidence, that evidence is said to preponderate. So, proof by the preponderance of the evidence means proof by the greater weight of the evidence. In other words, a claim must be proved by evidence that weighs more persuasively in the minds of jurors. In proving its claim, a plaintiff must prove each and every element of that claim by a preponderance of the evidence.

SOURCE: §302.1, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003).

**MIKOHN INSTRUCTION NO. 12**

Burdens and Standards of Proof: Cautionary Instructions: Consider all of the Evidence

I must caution you, though, that in determining whether Hasbro has met the burden of proof imposed upon it by law, you should consider all of the evidence and not just the evidence which Hasbro has produced. The jury's obligation is to decide the facts of the case based on its consideration of all of the evidence regardless of which party presented any given item of evidence during the trial.

Similarly, this is true for Mikohn with respect to its trademark counterclaim. In determining whether Mikohn has proved its trademark claim against Hasbro, you should consider all of the evidence that is relevant to trademark and not just the evidence that Mikohn has produced.

SOURCE: §303.1, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003).

**MIKOHN INSTRUCTION NO. 13**

Burdens and Standards of Proof: Cautionary Instructions: Weight of Evidence

If, as a result of your deliberations, you find, that the evidence on the issue of liability weighs more on the side of Hasbro then Hasbro has sustained the burden of proving the case by a preponderance of the evidence and your verdict must be for the Hasbro.

However, if you find that the evidence on the issue of liability weighs more on the side of Mikohn then your verdict must be Mikohn.

If you find that the evidence is so equally matched or equally balanced that you cannot say whether it weighs in favor of Hasbro or Mikohn, then Hasbro has failed to meet the burden and standards of proof imposed upon it by law and your verdict must be for the Mikohn.

Once again, the same is true for Mikohn regarding its trademark claim. If you find that there is more evidence that the evidence weighs more heavily on Mikohn's side, then you should find for Mikohn. If you find that the evidence weighs more heavily for Hasbro you should find for Hasbro. If you find that the evidence is equally balanced, then you should find for Hasbro.

SOURCE: §303.2, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003).

**MIKOHN INSTRUCTION NO. 14**

Burdens and Standards of Proof: Cautionary Instructions: "If you find"

As you listen to these instructions, you may hear me use the expression "if you find", or "if you decide" when I refer to the facts of the case or the evidence. When I do this I will be assuming that you will find certain facts to be proved. I make these assumptions only for the purpose of explaining the law to you and not to suggest how you should decide the case or the facts of the case. My assumptions are for purposes of discussion, in other words. Remember, before you can find something to be true, you must be persuaded, considering all of the evidence in the case, that the proposition at issue has been proved to be more probably true than not.

SOURCE: §303.5, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003) (citing Parker v. Parker, 103 R.I. 435, 238 A.2d 57 (1968); Uncas Manufacturing Co. v. McGrath-Hamin, Inc., 265 F.Supp. 1008 (D.R.I. 1967); Barbieri v. E.M. Young Co., 82 R.I. 382, 110 A.2d 263 (1954)).

**MIKOHN INSTRUCTION NO. 15**

Burdens and Standards of Proof: Burden on Counterclaimant

In this case we have not only Hasbro's claim against Mikohn, but we also have Mikohn's claim against the Hasbro. That claim is for violating Mikohn's trademark rights to CARIBBEAN STUD and CARIBBEAN STUD POKER. For purposes of determining that claim, the burden of proof is on Mikohn. Since the law places the burden of proving the validity of a claim upon the one making the claim, then it is logical that the burden of proof must be on anyone making a claim whether it is the original claim in the case or whether it is a counterclaim. The burden is on Mikohn to prove each of the elements of its claim.

Since we call the one making a claim a "plaintiff," any person making a counterclaim becomes the plaintiff in the counterclaim even though it remains the defendant in the original claim in the case. So, whenever I refer to the plaintiff as having the burden of proof, I am referring to the person that is asserting a claim - whether it is the original claim or the counterclaim.

SOURCE: §301.3, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003).

**MIKOHN INSTRUCTION NO. 16**

Presumptions and Inferences: Inferences Explained

An inference is a deduction of fact that may be logically and reasonably drawn from other facts that have been proved at trial. As jurors you are permitted to make inferences of fact from those facts that you find have been proved in the case. In order for you to properly draw an inference, however, you must first find that the underlying facts from which the inference flows have been proved by a preponderance of the evidence and you must find that the facts to be inferred are, indeed, reasonably inferred. An inference is reasonable when the facts proved in the case point to one conclusion of fact as being more natural and plausible than other conclusions that might be drawn. It is not required that all other possible conclusions inferable from the same basic facts be completely excluded but the conclusion of fact which the jury draws must be the more natural and plausible conclusion and must be founded in the trial evidence. On the other hand, an inference may be negated where other facts or conclusions are of such probability and degree as to render the proposed conclusion of fact no more natural and plausible than another.

SOURCE: §402.1, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003) (citing R.I. Rule Evid. 301; Labbe v. Hill Brothers, Inc., 97 R.I. 269, 197 A.2d 305 (1964)).

**MIKOHN INSTRUCTION NO. 17**

Miscellaneous: Cautionary: Unsupported Theories of the Case

From time to time during this case, it has been implied or suggested by Hasbro that the intended meaning of the royalty provision was that royalties should be calculated on a "Per Individual Game Per Average Day in a Month" basis. This so called interpretation is not substantiated by the evidence and has been place before you only through the statements of counsel. Hasbro's position is that royalties were intended to be calculated on a "Royalty Per Individual Game Per Individual Day" basis. The average-day-in-a-month formula is how Hasbro is asking you to calculate damages (I will discuss damages later). The average-day-in-a-month formula is not what Hasbro is saying the parties meant when the agreements were formed.

I must remind you that the statements of counsel are not evidence and you must not permit those statements to raise a suggestion in your mind that the event must have happened differently from what was shown by the evidence. I am instructing you that there is insufficient evidence in this case to lend credence to this unsupported theory and you must resist any temptation to speculate about whether such an interpretation was intended or not.

SOURCE: §504, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003) (citing State v. Ordway, 619 A.2d. 819 (R.I. 1992); See generally 75A Am. Jur. 2d Trial §§449-500, 639 (1988)).

**MIKOHN INSTRUCTION NO. 18**

Contract: Interpretation: Jury's Role in Interpreting Ambiguous Contracts

The Court has determined that the meaning of the royalty provision in these contracts is ambiguous. The meaning of an ambiguous contract term is a question of fact. It is the role of the jury to determine the meaning of the ambiguous provision of these contracts. The jury's goal in interpreting ambiguous contract terms and provisions is to determine the parties' intent at the time an agreement was made.

SOURCE: Casco Indem. Co. v. Gonsalves, 839 A.2d 546, 549 (R.I. 2004).

**MIKOHN INSTRUCTION NO. 19**

Contract: Interpretation: Objective Manifestations Govern, Subjective Irrelevant

When determining the intent of the parties at the time the agreement was made, it is the objective manifestations (the things that the parties said to each other and the way the parties acted toward one another) that matters. The subjective thoughts and feelings of one party that were not disclosed to the other party are irrelevant.

SOURCE: Retirement Bd. of Employee's Retirement Sys v. DiPrete, 845 A.2d 270, 284 (R.I. 2004) (citing Corbin on Contracts § 538 (1960 and Supp. 1992); Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 17 (1st Cir. 1996); D.T.P., Inc. v. Red Bridge Properties, Inc., 576 A.2d 1377, 1381 (R.I. 1990).

**MIKOHN INSTRUCTION NO. 20**

Contract: Interpretation: Contract Should Be Interpreted As A Whole

When interpreting an ambiguous contract, it is important that you do not focus on one word or phrase. Rather, you must look at the contract in its entirety and determine what the parties intent was based on the contract as a whole. You should reject any interpretation that makes any language in the contract meaningless or unnecessary.

SOURCE: Andrukiewicz v. Andrukiewicz, 860 A.2d 235, 239 (R.I. 2004) ("When ascertaining the usual and ordinary meaning of contractual language, every word of the contract should be given meaning and effect; an interpretation that reduces certain words to the status of surplusage should be rejected."); Woonsocket Teachers' Guild, Local 951 v. School Committee of City of Woonsocket, 367 A.2d 203, 205 (R.I. 1976).

**MIKOHN INSTRUCTION NO. 21**

Contract: Interpretation: Impossible Interpretations Should Be Disregarded

If you find that performance under one interpretation of the contract would have been impossible or economically senseless when the contract was formed, then that interpretation should be disregarded. The law presumes that parties to a contract intended that the contract actually could be performed when they drafted the contract.

SOURCE: Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 468-69 (1992); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 475, 587 (1986).

**MIKOHN INSTRUCTION NO. 22**

Contract: Interpretation: Nonsensical Interpretations Should Be Disregarded

You should disregard any absurd or nonsensical interpretations, even if the language of the agreements appears to support them. A contract should be given a practical and reasonable interpretation rather than a strained or forced interpretation that renders the contract nonsensical or ineffective.

SOURCE: Employers Ins. of Wausau v. Titan Int'l, Inc., 400 F.3d 486, 489 (7th Cir. 2005) (citing Clinton v. City of New York, 524 U.S. 417, 428-29 and n. 14 (1998); United States v. X-Citement Video, Inc., 513 U.S. 64, 68-70 (1994); Treadway v. Gateway Chevrolet Oldsmobile Inc., 362 F.3d 971, 976 (7th Cir.2004); FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 284-85 (7th Cir.2002); Hughey v. JMS Development Corp., 78 F.3d 1523, 1529-30 (11th Cir.1996)); Technical Aid Corp. v. Allen, 591 A.2d 262, 268 (N.H. 1991) (disregarding interpretation where "[t]he result would be restrictions of almost random application, without reference to the interests of the parties to the contract."); Munro v. Swanson, 137 Wash. App. 1015 (Wash. Ct. App. Feb. 20, 2007) *available at* 2007 WL 512533, *7 (citing Morgan v. Prudential Ins. Co., 545 P.2d 1193 (Wash. 1976)).

**MIKOHN INSTRUCTION NO. 23**

Contract: Interpretation: Extrinsic Evidence Relevant to Contract Interpretation

When a contract is ambiguous, you may look to the words and actions of the parties to the contract to determine what the parties' intent was when the contract was formed. Actions and statements that shed light on the parties' intent include: 1) statements made during negotiations, 2) the parties' performance under the contract, and 3) special definitions that people in an industry give to certain terms, which are sometimes called "trade usage".

SOURCE: Ritter v. Mantissa In. Corp., 864 A.2d 601, 607 (R.I. 2005); Lanier Professional Svcs, Inc. v. Ricci, 192 F.3d 1, 4 (1st Cir. 1999); DiBattista v. Butera, 244 A.2d 857, 859 (R.I. 1968) (contract negotiations); In re Dissolution of Anderson, Zangari & Bossian, 888 A.2d 973, 977 n. 3 (R.I. 2006) (subsequent course of performance); Superior Boiler Works, Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 636 (R.I. 1998) (trade usage).

**MIKOHN INSTRUCTION NO. 24**

Contract: Interpretation: Extrinsic Evidence: Statements Made During Negotiations

Sometimes parties will agree on the meaning of certain terms and provisions while they are negotiating a contract, but will not put that agreed-upon meaning in writing in the final contract. In these circumstances, the statements that the parties to the contract made while negotiating the contract can shed light on what the parties actually intended when they executed the contract.

SOURCE: DiBattista v. Butera, 244 A.2d 857, 468-69 (R.I. 1968) ("As oral negotiations or agreements which preceded or accompanied the execution of a written contract may be employed to explain its uncertain expressions but, except where reformation is sought, not be contradict and nullify its express terms [] we think the parol evidence rule was not violated here.")

**MIKOHN INSTRUCTION NO. 25**

Contract: Interpretation: Extrinsic Evidence: Performance Under the Contract

Sometimes parties will enter into a contract without expressly agreeing on the meaning of certain terms and provisions. In these circumstances, the way that the parties performed their obligations under the contract are strong evidence of what the parties intended when they formed the contract. Where a term or provision is ambiguous, a party can communicate its intended meaning either 1) by performing in a way consistent with that meaning, or 2) by acquiescing when the other party performs in a way consistent with that meaning. When looking to parties' performance under a contract, it is the objective manifestations of intent (the way the parties interact with each other) that matter, not the undisclosed subjective thoughts and feeling of the parties.

SOURCE: Elena Carcieri Trust-1988 v. Enterprise Rent-A-Car Co., 2004 WL 603498, *2 (R.I. Super. 2004); see also Navarro-Ayala v. Hernandez-Colon, 951 F.2d 1325, 1354 (1st Cir. 1991) (Cyr, J. concurring in part, dissenting in part) ("Through the performance rendered by the parties, the court gains invaluable insight into the practical interpretation mutually intended by the contract language."); 3 Arthur L. Corbin, Corbin on Contracts § 558, 249-53 (1960).

**MIKOHN INSTRUCTION NO. 26**

Contract: Interpretation: Extrinsic Evidence: Trade Usage

Sometimes certain words or phrases will have a specialized meaning in certain trades. If both of the parties to a contract are engaged in that trade and the contract uses a term or phrase that has a specialized meaning, then it is reasonable to infer that the parties intended the specialized meaning.

As an example, a contract might call for one party to provide "1,000 nuts" to another party. In this situation "nuts" could mean hardware, like nuts and bolts, or "nuts" could mean food, like walnuts.

If both of the parties to the contract are in the hardware business, then it is reasonable to assume that the hardware meaning was intended. On the other hand, if both of the parties are in the grocery business, then it is reasonable to assume that the food meaning was intended.

However, if one party to the contract is in the hardware business and the other party to the contract is in the grocery business, it is not reasonable to assume that either definition was intended by both parties; so trade usage is not helpful.

SOURCE: See, generally, Superior Boiler Works, Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 636 (R.I. 1998) (trade usage).

**MIKOHN INSTRUCTION NO. 27**

Contract: Interpretation: The Meaning of "Gross Revenue"

Terms in a contract must be given their commonly accepted meaning unless there is evidence that the parties intended to attribute a specific or different meaning to the term. One of the terms at issue here is "gross revenue." The commonly accepted meaning of "gross revenue" means all amounts received from operation of a business, without deduction.

SOURCE: Garden City Treatment Centers, Inc., v. Coordinated Health Partners, Inc., 852 A.2d 535, 542 (R.I. 2004); City of Dallas, Texas v. Federal Comm. Comm'n, 118 F.3d 393, 395 (5th Cir. 1997); Veterans Rehabilitation Center, Inc. v. Birrer, 551 P.2d 1001, 1003 (Mont. 1976) ("Generally the term 'gross revenue' means gross receipts of a business before deduction for any purpose except those items specifically exempted"); Public Service Co. v. City and County of Denver, 387 P.2d 33, 36 (Colo. 1963) (same).

**MIKOHN INSTRUCTION NO. 28**

Contract: Interpretation: Cautionary: Formation of Contract

For extrinsic evidence to be relevant it must relate to the formation of the contract.

Course of performance is relevant to the formation of the contract because the way that the parties act under the contract shows what they were thinking, but perhaps did not say, when the contract was formed.

SOURCE: Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 373 (6th Cir. 1998); Elena Carcieri Trust-1988 v. Enterprise Rent-A-Car Co., 2004 WL 603498, *2 (R.I. Super. 2004); see also Navarro-Ayala v. Hernandez-Colon, 951 F.2d 1325, 1354 (1st Cir. 1991).

**MIKOHN INSTRUCTION NO. 29**

Contract: Interpretation: Cautionary: Jury Interprets Contract, Witness' Interpretations Irrelevant

Because it is solely the job of the jurors to interpret the meaning of the contract, the interpretations of the witnesses and the lawyers are irrelevant. Witnesses may properly testify to facts, such as the commonly accepted meaning of certain terms in the industry, the things the parties said and did around each other while performing under the contract, and the circumstances and situations surrounding the formation and execution of the contract, but the jury must interpret the meaning that the parties intended the contract to have.

SOURCE: Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 373 (6th Cir. 1998); Portland Body Works v. McCullough Motor Supply Co., 119 N.E. 180, 184 (Ind. App. 1918); TCP Indus., Inc. v. Uniroyal, Inc., 661 F.2d 542, 549 (6th Cir. 1981); Energy Oils, Inc. v. Montana Power Co., 626 F.2d 731, 737 (9th Cir. 1980).

**MIKOHN INSTRUCTION NO. 30**

Contract: Illegality: Illegal Contracts Are Unenforceable

Mikohn has alleged that the royalty provisions of these contracts violate Nevada law. When a contract calls for one party to do something that would violate the law, the contract is unenforceable and the law will not aid either party. Instead, the Court will leave the parties where they stand.

When a contract is illegal, the aid of the Court is not denied for the benefit of the defendant, but because public policy demands that it should be denied without regard to the interests of the parties. Whether or not the plaintiff or the defendant knew of the illegality is also irrelevant. The Court will simply not aid any party in violating the law.

If you find that these contracts do violate Nevada law, then you should leave the parties where they stand.

SOURCE: Sheehan v. Richardson, 315 B.R. 226, 240 (D.R.I. 2004); Sullivan v. Horgan, 20 A. 232, 233 (R.I. 1890); G.W. McNear v. American British Mfg., Co., 107 A. 242, 248 (R.I. 1919); McMullen v. Hoffman, 174 U.S. 639 (1899); Chambers v. Church, 14 R.I. 422 (1886).

**MIKOHN INSTRUCTION NO. 31**

Contract: Illegality: Hidden Percentage Scheme is Illegal

If you find that the royalty provision of these contracts mimic a percentage compensation scheme, then you should find that the royalty provisions violated Nevada law and you should leave the parties as they stand.

SOURCE: Hasbro, Inc. v. Mikohn Gaming Corp., No. 05-106-S, slip op. at 20, n. 16 (D.R.I. July 18, 2007).

**MIKOHN INSTRUCTION NO. 32**

Contract: Waiver: Waiver Defined

Mikohn has alleged that Hasbro has waived any of the contract rights that it may have under its interpretation of the contract.

Waiver is the intentional relinquishment of a known right. It can happen when a party expressly says that it will not enforce a right that it has. It can also happen when a party acts in a way that sufficiently demonstrates that it intends to waive its right or when a party's conduct is inconsistent with any other intention than to waive its right.

SOURCE: Sheehan v. Richardson, 315 B.R. 226, 239 (D.R.I. 2004); Sturbridge Home Builders, Inc. v. Downing Seaport, Inc., 890 A.2d 58 (R.I. 2005) (quoting Ryder v. Bank of Hickory Hills, 585 N.E.2d 46, 49 (Ill. 1991)).

**MIKOHN INSTRUCTION NO. 33**

Contract: Waiver: Waiver Determined by Objective Evidence

Whether or not a party waived a right must be determined by an objective assessment of a party's conduct.

SOURCE: DFS Investors, LLC v. Lyme Timber Co., 2004 WL 3414427 at *12 (Mass. Super. 2004).

**MIKOHN INSTRUCTION NO. 34**

Contract: Waiver: A Non-waiver Clause Can Be Waived

Hasbro has suggested that the non-waiver clause in the contracts preclude a finding of waiver.

A non-waiver clause can be waived in the same way any other clause can be waived. This is because, just as Hasbro has the right to demand payment of royalties, Mikohn has the right to have the demand for payment made at a time when royalties could be properly calculated and before penalties accrue.

SOURCE: Fontaine v. Industrial Nat'l Bank of Rhode Island, 298 A.2d 521, 523 (R.I. 1973); Wireless Distributors, Inc. v. Sprintcom, Inc., 2003 WL 2215607 at *5 (N.D. Ill. 2003); Guzman v. Ugly Duckling Car Sales of Texas, 63 S.W.3 522, 528 (Tex. App. Ct. 2001)); Lone Mountain Prod. Co. v. Natural Gas Pipeline Co. of Am., 984 F.2d 1551, 1557 (10th Cir. 1992); Chicago College of Osteopathic Medicine v. George A. Fuller Co., 776 F.2d 198, 202 (7th Cir. 1985); Woods v. Monticello Development Co., 656 P.2d 1324, 1327 (Colo. App. 1982).

**MIKOHN INSTRUCTION NO. 35**

Contract: Estoppel: Estoppel Defined

Estoppel is a legal doctrine that prevents one party from taking unfair advantage of another when, through false language or conduct, the party to be estopped has induced the other party to act in a certain way, with the result that the other party has been injured or change its position to its detriment in some way.

Estoppel requires the following elements:

> 1) Hasbro must have made an affirmative representation or equivalent conduct which was directed to Mikohn for the purpose of inducing Mikohn to act or fail to act in reliance thereon; and
>
> 2) Hasbro's representation or conduct in fact did induce Mikohn to act or fail to act to its injury.

The key element of an estoppel is intentionally induced prejudicial reliance.

SOURCE: Black's Law Dictionary 247 (2d Pocket Ed. 2001); El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1234 (R.I., 2000); Providence Teachers Union v. Providence School Board, 689 A.2d 388, 391-92 (R.I.1997) (quoting Lichtenstein v. Parness, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953)); East Greenwich Yacht Club v. Coastal Resources Management Council, 118 R.I. 559, 568, 376 A.2d 682, 686 (1977) (citing Raymond v. B.I.F. Industries, Inc., 112 R.I. 192, 198-99, 308 A.2d 820, 823 (1973)).

**MIKOHN INSTRUCTION NO. 36**

Contract: Estoppel: Estoppel Distinguished from Waiver

Although estoppel and waiver may appear to be very similar there is a difference. Waiver focuses on the conduct of the party who is alleged to have waived a right, here Hasbro. Estoppel, on the other hand, focuses on the effect of Hasbro's conduct on Mikohn's behavior and whether or not Mikohn has been harmed as a result of relying on Hasbro's behavior.

SOURCE: J.H. Cohn & Co. v. American Appraisal Associates, Inc., 628 F.2d 994, 1000 (7th Cir. 1980).

**MIKOHN INSTRUCTION NO. 37**

Contract: Estoppel: Destruction of Evidence Can Be Injury

For the purposes of estoppel, many things can constitute injury. One of the things that can constitute injury is the lack of availability of evidence that would assist the other party in defending itself.

Here, Mikohn claims that it is no longer able to obtain data necessary to calculate royalties in the way that Hasbro says is correct. If you find that this is true, you may find that the fact that Mikohn cannot obtain this information constitutes the type of injury that would estop Hasbro.

SOURCE: Encomp, Inc. v. L-com, Inc., 999 F.Supp. 264, 267 (D. Conn. 1998).

**MIKOHN INSTRUCTION NO. 38**

Contract: Estoppel: Non-waiver Provisions Have No Effect

Because the focus of estoppel is different from the focus of waiver, non-waiver provisions have no effect on estoppel.

SOURCE: Entrepreneur, Ltd. v. Yasuna, 498 A.2d 1151, 1163 (D.C. 1985).

**MIKOHN INSTRUCTION NO. 39**

Contract: Estoppel: Partial Estoppel

You may find that a party is estopped from receiving some, but not all, of their damages. This simply means that it would be unfair for a party collect some portion of their claimed damages because their actions induced the other party to unnecessarily incur additional expenses.

Here, Mikohn claims that, at a minimum, Hasbro should be estopped from receiving the 21 percent interest for non-payment provided for in the contract because it did not make a demand for payment at a time when Mikohn could have avoided that interest.

SOURCE: Hatton v. Howard Braiding Co., 47 R.I. 47, --, 129 A. 805, 807 (R.I. 1925)("It does not appear that the complainant, as executrix, has, by reason of the conduct or representations of the braiding company, been prejudiced except as to the dividends which she has been permitted to receive and distribute. This prejudice may be urged in defense of the crossbill to recover the dividends, but not in support of the main bill to obtain the stock.")

**MIKOHN INSTRUCTION NO. 40**

Damages: Plaintiff's Burden of Proving Damages

The burden is on Hasbro as plaintiff to prove by a fair preponderance of the evidence that it has suffered damages as a proximate result of Mikohn's breach of contract. The burden is also on Hasbro to prove by a preponderance of the evidence the extent or amount to which it has suffered damages. A plaintiff must prove by a fair preponderance of the evidence the particular element of damage that it suffered and the extent of such damage.

SOURCE: § 301.2, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003) (citing Tom Shaw, Inc. v. Derecktor, 639 F.Supp. 1064 (D.R.I. 1986); Jackson v. Choquette & Co., 78 R.I. 164, 80 A.2d 172 (1951); Bruno v. Caianiello, 121 R.I. 913, 404 A.2d 62 (1979); Worsley v. Corcelli, 119 R.I. 260, 377 A.2d 215 (1977)).

**MIKOHN INSTRUCTION NO. 41**

Damages: Plaintiff's Burden of Proving Damages: Speculative Damages Unrecoverable

In calculating damages, Hasbro must establish reasonably precise figures and cannot rely on speculation. Although mathematical exactitude is not required, the damages must be based on reasonable and probable estimates.

SOURCE: Encomp, Inc. v. L-com, Inc., 999 F.Supp. 264, 267 (D. Conn. 1998).

**MIKOHN INSTRUCTION NO. 42**

Damages: Mitigation – Doctrine of Avoidable Consequences

Hasbro was required to exercise reasonable diligence in avoiding the consequences of the alleged breach of the contract. While Hasbro did not have an affirmative duty to *reduce* the harm caused by the breach and does not incur liability for failing to do so, Hasbro was required to do more than sit idly by and allow further damages to accumulate. The law does not permit one in Hasbro's position to maximize the harm caused by a breach of contract nor does the law permit one in Hasbro's position to act carelessly in curtailing the harm done. The law requires that one in Hasbro's position use efforts that are reasonable under the circumstances. If Hasbro failed to mitigate damages in this way, it is prohibited from recovering that portion of its damages that it could reasonably have avoided.

SOURCE: § 10104.1, Model Civil Jury Instructions for Rhode Island (RIBA, Superior Court Bench/Bar Comm., 2003) (citing R.I.G.L. §6A-2-712 (2001 Reenactment); Clifford McFarland, Read & Lundy, Inc. v. Brier, 769 A.2d 605 (R.I. 2001); Bibby's Refrigeration v. Salisbury, 603 A.2d 726 (R.I. 1992); See generally, 22 Am. Jur. 2d Damages §§895-901 (1988)).

**MIKOHN INSTRUCTION NO. 43**

Trademark Infringement and Unfair Competition Generally: Liability Established and Remedies Requested

I turn now to the counterclaims brought by Mikohn against Hasbro for infringement of Mikohn's registered trademark, CARIBBEAN STUD®, as applied to gaming devices or products. You are advised that Mikohn's registration of this mark at the federal level and in Nevada has been established as valid, and Mikohn has the exclusive right to use this mark in the United States.

The parties have also agreed, and you must find, that from 2003 until a point in 2005, Hasbro, through its authorized affiliate Tiger Games, made and sold a number of hand-held poker devices that carried that registered trademark. Hasbro did not have a license from Mikohn for this use. Hasbro concedes, and I direct you to find, that Hasbro thereby committed trademark infringement likely to cause confusion in the pertinent consumer market. I also direct you to find that, by virtue of this trademark infringement, Hasbro engaged in unfair competition.

The parties dispute, however, the extent to which Mikohn should be compensated for this injury. Applicable trademark and unfair competition laws provide for at least two potential forms of recovery for Mikohn, each with its own requirements that must be met before you can make that award. These awards include turning over Hasbro's profits on the infringing devices, and an appropriate royalty for the unauthorized sales.[1]

I instruct you that you may make an award only for a period in which you find that (1) Hasbro, through its agents, had actual knowledge of Mikohn's CARIBBEAN STUD® mark, or (2) in which Mikohn applied the circle R sign ® to any of its products or marketing materials in public circulation. In doing this, you should choose whichever period is longer.[2]

---

1 5 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION, §30.62-85 (4th ed. 2001) (discussing remedies)

2 Id. at §30.70 (describing accounting period) (citing to W.E. Bassett Co. v. Revlon, Inc., 435 F.2d 656 (2d Cir. 1970)).

**MIKOHN INSTRUCTION NO. 44**

Defendant's Profits (15 U.S.C. §1117(A) and Unfair Competition) – ENTITLEMENT - WILLFUL or INTENTIONAL

To recover Hasbro's profits,3 Mikohn has the burden of showing that Hasbro's infringement was either willful or in bad faith.4
Infringement is willful if it is done either voluntarily and intentionally,5 or if it is done with indifference to another party's trademark rights.6 In considering whether Hasbro acted in bad faith, you may consider whether Hasbro used the CARIBBEAN STUD® mark with actual knowledge of Mikohn's rights in the trademark. Alternatively, you may

---

[3] 15 U.S.C. § 1117(a) (authorizing an award of profits for federal trademark infringement); NRS 600.430(2)(b) (authorizing an award of "the infringer's profits" for infringement of a trademark registered in Nevada). Bostitch, Inc. v. King Fastener Co., 140 A.2d 274, 283 (R.I. 1958) (recognizing that the remedies for unfair competition "include … the ordering of an accounting to the injured party by the offending party for all profits arising out of the imitation"). For First Circuit authority on submitting willfulness to jury and for willfulness standard, *see* Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F.3d 23, 31 (1st Cir. 2002) (affirming jury verdict of willfulness and trial judge's award of attorneys' fees). Additional authority for submitting the issue of willfulness to the jury in intellectual property cases: *See, e.g.,* Shiley, Inc. v. Bentley Lab., 794 F.2d 1561, 1568 (Fed. Cir. 1986)(patent), *cert. denied*, 479 U.S. 1087 (1987).

[4] Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23, 36 (1st Cir. 2002).

[5] Int.'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 753-54 (2nd Cir. 1996) (failure to follow advice of counsel must be considered when evaluating bad faith). *See also* Tamko Roofing, 282 F.3d at 32 (defendant company told its advertising agency not to conduct a trademark search, which was usually done; neither the company nor its patent attorney did a trademark search).

Regarding willful blindness, see Hard Rock Café Licensing Corp. v. Concession Servs., 955 F.2d 1143, 1149 (7th Cir. 1992) (to be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate); Chanel, Inc. v. Italian Activewear of Florida, 931 F.2d 1472, 1476 (11th Cir. 1991) (willful blindness could provide requisite intent or bad faith; determination of willful blindness depends on the circumstances and will generally be a question of fact for the factfinder after trial).

A court may enter judgment for a damage award under 15 U.S.C. §1117(a) upon a finding of willfulness as well. *See* Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1384 (9th Cir. 1984) (district court found that conduct constituted willful and deliberate bad faith infringement of plaintiff's trademarks that was intended to and in fact did result in deception of the public); Friend v. H.A. Friend & Co., 416 F.2d 526, 534 (9th Cir. 1969) (defendant's acts must be willful and calculated to trade upon the plaintiff's goodwill). *See also* Gorenstein Enterprises v. Quality Care BUSA, 874 F.2d 432, 436 (7th Cir. 1989)(15 U.S.C. §1117(a) provisions regarding treble damages and reasonable attorneys' fees are properly invoked when infringement is deliberate); Quaker State Oil Ref. Corp. v. Kooltone, Inc., 649 F.2d 94, 95 (2nd Cir. 1981)(jury finding that infringement was deliberate and willful); Sun Prods. Group v. B & E Sales Co., 700 F.Supp. 366, 388 (E.D. Mich. 1988) (the court, in "exceptional cases," may award attorney fees to the prevailing party under 15 U.S.C. §1117(a); legislative history clearly suggests that "exceptional cases" would involve cases in which the infringement is malicious, fraudulent, willful, or deliberate).

[6] W. E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 662 (2nd Cir. 1970).

consider if Hasbro unreasonably failed to confirm whether its use of the CARIBBEAN STUD® mark would infringe on Mikohn's rights.

**MIKOHN INSTRUCTION NO. 45**

Defendant's Profits (15 U.S.C. §1117(A) and Unfair Competition) – Amount

If you find that Hasbro's infringement was willful or in bad faith, Mikohn is entitled to any profits earned by Hasbro that are attributable to the infringement, which Mikohn proves by a preponderance of the evidence.

To recover the amount of Hasbro's profits, Mikohn need only prove Hasbro's gross sales. Hasbro has the burden to prove any costs or deductions from its gross sales.

Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Hasbro's receipts from using the trademark in question in the sale of infringing product. Expenses are all operating, overhead, and production costs incurred in producing the gross revenue. Hasbro has the burden of proving these expenses by a preponderance of the evidence. You should also presume that all sales revenue Hasbro made from the infringing devices was attributable to the use of the CARIBBEAN STUD® mark; it is Hasbro's burden then to prove to you that some portion of those profits are attributable to factors other than using Mikohn's mark.

If the actual sales by Hasbro cannot be precisely determined, you should resolve any doubts against Hasbro in calculating profits, particularly if you find that the uncertainty is due to Hasbro's inadequate record keeping, commingling of records, or failure to produce documentary evidence. So too with regard to any deductions asserted by Hasbro, or to any argued apportionment. When a party frustrates proof of damages, either by withholding facts or through inaccurate record keeping, any doubts about the actual assessment of damages should be resolved against that party.7

[7] In the First Circuit, "there may be infringement, as well as an accounting of defendant's profits, even when most of the products are not in competition. . . ." Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F.3d 23, 35 (1st Cir. 2002). Defendant has burden of showing "that not all profits should be awarded" and "the amount of costs to be deducted from profits." *Id.* at 36. *See also* Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2nd Cir. 1985) (defendant's own statements as to profits provided sufficient basis for calculation of defendant's profits under 15 U.S.C. §1117(a)). *See also* American Honda Motor Co. v. Two Wheel Corp., 918 F.2d 1060, 1063 (2nd Cir. 1990) (plaintiff entitled to amount of gross sales unless defendant adequately proves amount of costs to be deducted from it); Polo Fashions, Inc. v. Dick Bruhn, *Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) (court awarded receipts from sales pursuant to 15 U.S.C. §1117(a)); 5 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION §30.65 (4th ed. 2001) (discussing computation of defendant's profits from infringing sales); id. (presumption is that all revenues are derived from the infringing use and that defendant bears the burden of apportionment, citing Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203 (1942); especially where records are commingled, citing Wynn Oil Co. v. American Way Serv. Corp., 943 F.2d 595 (6th Cir. 1991)).

**MIKOHN INSTRUCTION NO. 46**

Trademark Infringement - Reasonable Royalty

If you decide that Hasbro did not act in bad faith, or if you determine that Hasbro did not in fact make any profits (or suffered a loss), you should award a reasonable royalty on all revenues from the infringing sales.

In calculating the reasonable royalty you may consider:

(1) royalty rates received in prior licenses by Mikohn;

(2) prior rates paid by Hasbro;

(3) Mikohn's licensing policies;

(4) the nature and scope of Hasbro's infringing use;

(5) the special value of the mark to Hasbro;

(6) the profitability of the Hasbro's use;

(7) the lack of viable alternatives available to Hasbro;

(8) the opinion of expert witnesses; and

(9) the amount that the Mikohn and Hasbro likely would have agreed upon in voluntary negotiations before the infringement occurred.

You need not have evidence of all of these factors in order to award a royalty.8 For this assessment, Mikohn is not required to show that Hasbro acted in bad faith but it does need to prove its royalty figure by a preponderance of the evidence.

Let me add one thing: going back to any lost profits award you may make, you should not deduct as an expense any royalty award you may reach; the Court will make an appropriate adjustment in its final order to ensure that there are no double awards, or double deductions.

---

[8] A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc., 967 F. Supp. 1457, 479 (E.D. Pa. 1997) (holding that a reasonable royalty may be awarded even if "plaintiffs have presented no evidence of lost profits or sales" and setting forth factors to be considered when setting the royalty); Chesapeake & O. Ry. Co. v. Kaltenbach, 124 F.2d 375, 376 (4th Cir. 1941) (holding that a royalty was recoverable even when infringer operated at a loss). Profits and damages may be awarded and trebled if bad faith trademark infringement.