UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., et al., Plaintiffs | ) | |
| v. | ) | C.A. No. 05-0106/S |
| MIKOHN GAMING CORP., Defendant. | ) | |

**PLAINTIFFS' MOTION FOR RECONSIDERATION**

Plaintiffs Hasbro International, Inc. and Hasbro, Inc. ("Hasbro") hereby move for reconsideration of this Court's earlier decision granting summary judgment to Defendant Mikohn Gaming Corp. ("Mikohn") on Hasbro's claim for unjust enrichment. The grounds for this motion are set forth in the accompanying Memorandum of Law.

For the Plaintiffs
Defendants-in-Counterclaim,
HASBRO, INC. and HASBRO
INTERNATIONAL, INC.
By their Attorneys,

/s/ Jeffrey K. Techentin

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., et al., Plaintiffs | ) | |
| v. | ) | C.A. No. 05-0106/S |
| MIKOHN GAMING CORP., Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR RECONSIDERATION**

Plaintiffs Hasbro International, Inc. and Hasbro, Inc. ("Hasbro") respectfully submit this Memorandum of Law in support of their motion for reconsideration of this Court's earlier decision granting summary judgment to Defendant Mikohn Gaming Corp. ("Mikohn") on Hasbro's claim for unjust enrichment. Summary judgment on Hasbro's quasi-contractual claim was inappropriate in light of Mikohn's continued arguments that the contract at issue was illegal and therefore unenforceable. As explained below, under circumstances such as these the law is clear that a party is not precluded from obtaining equitable relief where the party against whom the contract terms are sought to be enforced induced the other party (here, Hasbro) to enter into the agreement.

**INTRODUCTION AND PROCEDURAL BACKGROUND**

The facts pertinent to this motion are well known to the court and need not be restated in detail. *See generally Hasbro v. Mikohn*, 491 F. Supp. 2d 256 (D.R.I. 2007); *Hasbro v. Mikohn*, 2006 WL 2035501 (D.R.I. July 18, 2006). At issue is the Court's grant of summary judgment on Hasbro's unjust enrichment claim. In granting summary judgment on that point, the Court reasoned that Hasbro's unjust enrichment claim was

"unavoidably a contract claim" because it was premised on a "dispute over the terms of a contract" and on "Mikohn's miscalculation of royalty rates under the contract." *Hasbro*, 491 F. Supp. 2d at 264. Hasbro urged that its quasi-contract claim was necessary in light of Mikohn's stated position that the contract, and in particular its royalty provisions, was illegal and unenforceable. *Id.* Rejecting that argument, the Court stated that under Rhode Island law, "a party to an illegal contract cannot avoid the illegality simply by seeking relief in equity." *Id.* at 264 n. 12.

Despite the Court having "held that the royalty payments were *not* illegal" (*id.* at 261 (citing *Hasbro v. Mikohn*, 2006 WL 2035501 at *8)) and therefore having "dispatched" Mikohn's illegality argument (*id.*), Mikohn has in its pretrial submissions and at the final pretrial conference stated its intention to put on evidence at trial in support of its illegality argument and, possibly, to move again for relief on that basis. Under these circumstances, Mikohn should not have been granted summary judgment on Hasbro's unjust enrichment claim. There can be no doubt but that the precise terms that Mikohn now claims render the contracts illegal were, in fact, proposed and drafted by Mikohn itself and that the negotiations that led to the adoption of the final language were spurred by Mikohn and its representations about the royalty clauses. *See*, *e.g.*, Mikohn's Statement of Undisputed Facts at proposed facts nos. 10 – 14.

The situation that Mikohn presents boils down to this: it presented a percentage-based royalty structure to Hasbro, told Hasbro that the structure it had proposed would not comport with Nevada law, and therefore suggested a fixed-sum alternative. Hasbro agreed to the fixed-sum alternative. Now, without any finding by anyone, anywhere, that the contracts are actually illegal, Mikohn attempts to avoid payments under the fixed-sum

alternative that it had proposed and further to avoid any accounting to Hasbro in equity because the structure is "illegal." Contrary to Mikohn's position, and the earlier decision of this Court, equity does not require that Mikohn be permitted to retain the millions of dollars in royalties that it had promised Hasbro.

**ARGUMENT**

"Courts continue to make blanket statements that contracts contrary to public policy always are unenforceable, but case law often proves the statement incorrect." 15 Corbin on Contracts § 89.16 (footnote omitted). Modern equity practice, guided by the Restatement (Second) Contracts § 178, provides a balancing analysis. Rather than reaching a black-or-white determination of "illegality" of a contract, the Second Restatement calls upon courts to inquire into the "enforceability" of the contract, examining a variety of factors. In full, Section 178 provides:

> (1) A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.
> (2) In weighing the interest in the enforcement of a term, account is taken of
> (a) the parties' justified expectations,
> (b) any forfeiture that would result if enforcement were denied, and
> (c) any special public interest in the enforcement of the particular term.
> (3) In weighing a public policy against enforcement of a term, account is taken of
> (a) the strength of that policy as manifested by legislation or judicial decisions,
> (b) the likelihood that a refusal to enforce the term will further that policy,
> (c) the seriousness of any misconduct involved and the extent to which it was deliberate, and
> (d) the directness of the connection between that misconduct and the term.

In other words, an agreement is not rendered unenforceable merely because by its terms it contravenes some law or regulation. Rather, the agreement is only presumed to be unenforceable if the law in question affirmatively provides that agreements to the contrary will be unenforceable. The Nevada statute in question has no such provision. *See* N.R.S. 463.162. Without any statutory basis for unenforceability, the court must balance the public policies involved, including the parties' justified expectations under the agreements. For present purposes, the Court need not consider exhaustively whether, in fact, public policy warrants enforcement of the Hasbro / Mikohn agreements or not. This motion raises the single issue of whether Hasbro's equitable claims should survive in the event that the Court is persuaded that the Hasbro / Mikohn agreements actually contravene N.R.S. 463.162. For two independent reasons, those claims should stand.

### A. Rhode Island Law Permits Equitable Relief Under Appropriate Circumstances

There is little doubt that Rhode Island would permit an innocent party like Hasbro to recover in equity on the contracts at issue, given Mikohn's central role in drafting the royalty provisions that it now contends to be illegal. Rejecting the blanket argument that contracts contrary to public policy not be enforced, in 1984 the Supreme Court noted that "a party who has received the benefit of the performance of a contract will not be permitted to deny his or her obligations unless paramount public interest requires it." *City of Warwick v. Boeing Corp.*, 472 A.2d 1214, 1218 (R.I. 1984). The Rhode Island Supreme Court has not yet been called upon to determine whether Rhode Island will explicitly follow Section 178 of the Restatement (Second) Contracts. It has, however, affirmatively considered and followed the Restatement (Second)'s description of the scope of equitable authority under analogous circumstances. *See Lavoie v. North East*

*Knitting, Inc.*, 918 A.2d 225, 229 (R.I. 2007) (construing available remedies in cases of duress and undue influence). It is unnecessary to forecast Rhode Island's consideration of the issue, however, given the longstanding equitable principles that support permitting Hasbro to recover equitably for its performance of the Mikohn agreements regardless of whether they are found to comport with Nevada statutes. Even the First Restatement of Contracts provided relief to innocent (or even comparatively innocent) signatories to contracts ultimately deemed illegal:

> Where the parties to an illegal bargain, though both blameworthy, are not *in pari delicto*, and one of them has not been guilty of serious moral turpitude, he can repudiate the bargain, and if he has rendered any performance thereunder, recover it or its value.

Restatement (First) Contracts § 604. Under the First Restatement analysis, because the purported illegality of the arrangement – and Hasbro denies that there is - lies squarely at the feet of Mikohn, and because Hasbro is not guilty of "serious moral turpitude," Hasbro would be permitted to recover the value of its performance under the contracts.[1]

Turning to the authority underpinning the Court's original grant of summary judgment on the equitable claims, the general rule that one may not bring suit to enforce an illegal contract derives from the maxim "*ex turpi causa non oritur actio*" (roughly, "a dishonorable cause does not give rise to action"). *See Chambers v. Church*, 14 R.I. 398, 401 (1884) (cited in *Hasbro v. Mikohn*, 491 F. Supp. 2d at 264 n. 12). That maxim, however, is limited and inapplicable to Hasbro's claims. As the Court noted in

[1] The precise contours of what constitutes "serious moral turpitude" are, as one might guess, difficult to establish with certainty. Courts are often guided as much by the state of mind of the participants as the seriousness of the unlawful activity. *See, e.g.*, *Liebman v. Rosenthal*, 57 N.Y.S.2d 875 (N.Y. Sup. Ct. 1945) (plaintiff, a refugee in France during World War II, gave jewels to defendant to use as a bribe to obtain travel visa for plaintiff and his family; defendant kept the jewels for himself; court granted the refugee a remedy). Hasbro is unaware of any case in which a party was found to have acted with "serious moral turpitude" for entering into a contract without knowing that the performance was prohibited.

*Chambers*, "equity may compel the division of a fund or other products originally created by an illegal transaction." *Id.* at 402. Moreover, the Rhode Island Supreme Court elucidated the doctrine in more detail soon after *Chambers*, explaining that "***where both parties are equally in the wrong,***" the law will not "look to the relative rights of the parties growing out of such illegal transactions, but simply leave[] them where it finds them." *Teoli v. Nardolillo*, 23 R.I. 87, 93-94 (1901) (emphasis added).

The doctrine is rooted in the concept of unclean hands. Because, under many circumstances, parties to an illegal contract "come as [participants] in a violation of the law by the making of an illegal contract," courts will give them "no relief from the consequences of his participation in an illegal act." *Gaynor v. Wax,* 50 R.I. 194, 196 (1929) (internal citations and quotations omitted). But where one party to the contract has clean hands with respect to the legality of the arrangement, equity will not turn that party away. *See*, *e.g.*, *Moncrief v. Palmer*, 44 R.I. 37, 42 (1921) (permitting suit in equity to recover excess interest paid under usurious contract).

That is precisely the situation here. Mikohn, as its very name suggests, is a gaming corporation, headquartered in Nevada. It has extensive experience with the laws, rules, and regulations concerning the gaming industry under Nevada law. Hasbro, by contrast, is a Rhode Island toy company. Its previous experience offered no insight whatsoever into whether the royalty provisions proposed by Mikohn did, or did not, constitute payments of "fixed sum[s] determined in advance on a bona fide basis for the furnishing of services or property other than a slot machine." *See* N.R.S. 463.162(2)(a). In that inquiry it was guided entirely by Mikohn, which first identified a potential issue with the percentage royalty it had originally proposed, and which then claimed to avoid

that issue with the tiered fixed-sum royalty structure ultimately embodied in the Hasbro-Mikohn contracts. Hasbro relied on Mikohn, and did not in any manner knowingly enter into an illegal contractual relationship. Its hands were clean.

But under any of the First Restatement, Second Restatement, or general equitable analyses, Hasbro's hands need not be entirely clean in order to find refuge in equity. As noted, the Second Restatement provides a balancing test with no single factor fully determinative of the outcome; the First Restatement merely required that the parties not be "*in pari delicto*." The same is true in the prevailing application of the common law in courts across the country. In determining whether to provide equitable relief to parties who, unwittingly, find themselves having performed contracts that are contrary to public policy, courts generally assess the relative culpability of the parties. If they are not *in pari delicto*, the party whose fault is lesser with respect to the illegality of the arrangement may generally be afforded equitable remedies. *See* 15 Corbin on Contracts §§ 89.17; 89.18.

Here, the comparatively more "guilty" party is clearly Mikohn. This contract was to be perfomed in Mikohn's *milieu*, the gaming industry, on its home turf, Las Vegas. Mikohn, its personnel, and its attorneys were steeped in the Nevada gaming laws and regulations. If it was possible to know that this arrangement was illegal, Mikohn surely would have known it.[2] Hasbro, by contrast, was in no position to know the law. Without holding ignorance of the law up as an excuse, under these circumstances it is simply unreasonable to hold Hasbro to a presumed knowledge of the minutiae of Nevada gaming laws and regulations. The question of what is or is not a "fixed sum determined in

---

[2] While Mikohn is ***comparatively*** at fault, it should be noted that no one could have determined that the Hasbro / Mikohn contracts were "illegal" at the time because they were not in fact illegal, nor was there any precedent whatsoever that would lead one to the conclusion that the contracts were illegal.

advance on a bona fide basis for the furnishing of services or property other than a slot machine" has been subtle enough to require the solicitation of significant expert testimony and two rulings from this Court. Equity takes situations like this one into account, allowing one who reasonably is mistaken about the legality of his or her actions to recover in equity despite the contract being unenforceable. As one commentator explained, "One who makes a bargain, knowing all the facts but in ignorance of a law that prohibits or penalizes its making or performance, is not necessarily deprived of all remedy against the other party. This is especially true with respect to restitutionary remedies." 15 Corbin on Contracts § 89.22. "The comparatively innocent party may have a right to damages for the other party's breach, just as if there had been no improper contract." *Id.*

### B. Even If Part of The Performance of The Contracts Would Contravene Nevada Law, The Contract is Enforceable Because Part of The Performance Takes Place Outside Nevada

Mikohn's arguments regarding the impact of a finding of illegality presume that if the contracts are violative of Nevada gaming laws and regulations, they disappear entirely. That is not the case. The contracts were not performed exclusively in Nevada. In the words of the applicable statute, where slot machines or other games were installed at locations outside Nevada, Hasbro cannot be said to have "[f]urnish[ed] services or property, real or personal, on the basis of a contract, lease or license, pursuant to which that person receives payments based on earnings or profits from any gambling game, including any slot machine" in the State of Nevada, which is the only trigger for the application of that statute. Because the performance of the Hasbro / Mikohn contracts outside of Nevada violated no statute, regulation, ordinance, rule, or other requirement, Hasbro's performance was ***entirely legal***. There exist no grounds on which to refuse

enforcement of the contracts to the extent they called for legal performance by the parties. More importantly for present purposes, because a meaningful portion of the performance of the contracts was not illegal, they should be enforced under Rhode Island law.

The *Chambers v. Church* court would agree. *Chambers* required the court to pass on the enforceability of a contract between Rhode Island residents and New York residents concerning the lease of fish oil works located in Virginia and which contravened a Virginia statute restricting out-of-state participation in the Virginia fish oil industry. Finding the contract unenforceable, it concluded:

> In this opinion we, of course, assume that the whole contract was to be executed in Virginia, including the catching of fish, as set up in the answer. If upon proof such is not the fact ***the statute of Virginia will have no application***.

14 R.I. at 402 (emphasis added). In other words, unless the entire contract is prohibited by law, the Rhode Island Supreme Court found that the law proscribing a portion of the performance to be of no effect whatsoever.

Even if this Court is unpersuaded that it can enforce the contracts where a portion of their performance was contrary to the law of one of the jurisdictions in which performance was to take place, equity permits the court to divide the contracts accordingly and to enforce the contracts, as written, for those jurisdictions in which the public policy defect is not present. *See generally* Corbin on Contracts § 89.4. The Hasbro / Mikohn contracts are clearly divisible. Mikohn installed machines in various jurisdictions. Mikohn's obligation to Hasbro to pay royalties may be clearly discerned for each such jurisdiction. In effect, this situation is even easier than the typical "divisible contract" because the parties, in effect, rendered complete performance of their

contractual obligations with respect to each individual jurisdiction (except that Mikohn underpaid its royalties to Hasbro); there are no concerns about the fairness of segregating one part of a party's performance from another. There exist no technical or other problems in enforcing the contracts for royalties earned in California or Rhode Island or New York, nor is there any legal or equitable bar to Hasbro collecting those royalties that Mikohn promised to pay.

## CONCLUSION

For the foregoing reasons, Hasbro respectfully requests that the Court reconsider its grant of summary judgment on Hasbro's claim for unjust enrichment and permit the presentation of that claim at trial.

For the Plaintiffs
Defendants-in-Counterclaim,
HASBRO, INC. and HASBRO
INTERNATIONAL, INC.
By their Attorneys,

/s/ Jeffrey K. Techentin

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of September 2007, I electronically filed the attached Plaintiffs' Motion for Reconsideration and the accompanying Memorandum of Law with the Court using the ECF system. The following counsel of record are registered with the Court and will be served electronically through the ECF system:

Brooks R. Magratten, Esq.
Gordon Cleary, Esq.
Michael Daly, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

/s/ Jeffrey K. Techentin

*427459_1*