could be -- what their profit margin might be in a given area?

A. By a particular type of game or device.

Q. Okay. In your assessment of those matters, have you ever assessed a case involving a licensor, not a casino, a licensor such as Hasbro -- a licensor's interpretation of per game per day?

MR. MAGRATTEN: Object to form.

THE WITNESS: Precisely, probably not. As something that's very close, I've looked at a number of different revenue-sharing arrangements within the gaming industry. And typically, they're based on an average results for some period of time.

BY MR. WHITE:

Q. In the gaming industry in Nevada, is there a standard number of slot machines that casinos feel they need to have in order to generate acceptable revenue?

A. That decision is really based upon a lot of other factors. For example, the location of the casino, its customer mix, it's seasonality, the size and composition of the rest of the facilities and amenities, you know, the demographics of the geographical area. It's a decision that's particular and individual to each property.

how they were compensated.

Q. Are you aware of being retained as an expert in any matter in which prior to this matter you were asked to analyze a per game per day provision?

A. Not as the primary focus of the engagement.

Q. Are there matters in which you have analyzed a per game per day provision as an adjunct focus of your engagement?

A. Probably hundreds.

Q. Where -- give me some examples of where you have seen and worked with provisions that speak about per game per day?

A. Okay. In addition to being a licensed C.P.A., I'm also a licensed general real estate appraiser. And in the gaming industry, I've done a number of feasibility market studies, appraisals of casino hotels, and using revenue per day calculations is a standard kind of metric in the industry that's used frequently to evaluate the results and to project future results.

Q. So if I understand you correctly, the metric per game per day is something that casinos often use to better understand whether or not they

A. Yeah. It looks like this is the -- I guess preface to the Yahtzee licensing agreement.

Q. Okay.

A. There's a similar one that I reviewed for Battleship.

Q. Okay. Just take a look.

In reviewing contracts, your role as a C.P.A. and anything you've done as a licensed real estate appraiser, are you familiar with the term plain language as it applies to analyzing contracts?

MR. MAGRATTEN: Objection.

THE WITNESS: The context that I would be familiar with plain language is more on an SEC basis. In that context it means, you know, simplify your description of things.

BY MR. WHITE:

Q. Okay. Are you familiar with what plain language means in analyzing contractual interpretations by courts?

A. I don't have specific information on what a court might think.

Q. Let me just show you page 2. And direct your attention to the five-word phrase, "royalty per game per day."

Do you see that?

A. Yes.

Q. And I assume in part of your expert analysis you've considered that five-word phrase; correct?

A. Yes.

Q. Let me just ask you what's your understanding of what the word "royalty" means?

A. I think you have to read royalty in the context of the entire agreement. So focusing on one word sometimes is difficult.

Q. All right. But even if you take into account the entire context of the agreement, what does royalty mean in this agreement?

A. An amount that licensee would owe the licensor.

Q. So in this case, it's the amount that Mikohn would owe Hasbro?

A. Yes.

Q. Let's go to the next one, "per." What's your understanding of what that word means?

A. Interesting exercise. Per is an article, I guess, describing game. Probably an indefinite article describing game. Game being the object.

Q. All right. What's the meaning of the word "game"?

A. Game in the context of this agreement I believe refers to Yahtzee.
Q. Now, you've given a definition of game, and you've used the predicate in the context of this agreement; correct? Is that right?
A. I believe so, if I understood the question correctly.
Q. Is the word "game" in that agreement specifically defined anywhere?
A. No. It's rather consistently used. But is there a specific definition, no.
Q. So you've defined game utilizing your understanding of what you considered to be totality of the contract?
A. That was -- that's obviously an influencing factor, yes.
Q. And we've already done "per." I assume the second per means nothing different than the first per? They're the same?
A. I think that's probably true.
Q. And what is your definition of the word "day" in this contract?
A. In the context of this contract, I believe it's an average for a day, for a particular period of time.

we are now talking about one device and not a class of devices.

MR. WHITE: Can you read my question, please.

(Record read.)

BY MR. WHITE:

Q. Is that a yes?

A. I believe that's yes.

Q. And your assessment is the word game does not refer to a slot machine; right?

MR. MAGRATTEN: Objection.

THE WITNESS: I believe what I said was wherever the singular of a game or device is used in the context of the agreement, there are specific definite or indefinite articles or adjectives that accompany the word to make it clear that we're now talking about one game versus a class of games.

MR. WHITE: Can you read my question again.

(Record read.)

BY MR. WHITE:

Q. Is that a yes again?

A. That's a yes.

Q. Do you know -- I assume you know because you read Charles McCrea's deposition that the phrase