UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC. and HASBRO INTERNATIONAL, INC., Plaintiffs | ) | C.A. No. 05-0106/S |
| v. | ) | |
| MIKOHN GAMING CORP., Defendant | ) | |

**DEFENDANT MIKOHN GAMING CORPORATION'S**
**OBJECTION TO HASBRO'S MOTION FOR RECONSIDERATION**

Defendant Mikohn Gaming Corporation ("Mikohn") hereby objects to plaintiff Hasbro, Inc./Hasbro International's ("Hasbro's") Motion for Reconsideration of plaintiff's unjust enrichment claim. Mikohn's supporting memorandum is filed herewith.

/s/ Michael J. Daly
Brooks R. Magratten, Esq., No. 3585
Gordon P. Cleary, Esq., No. 1948
Michael J. Daly, Esq., No. 6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Date: September 7, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC. and HASBRO INTERNATIONAL, INC., Plaintiffs | ) | C.A. No. 05-0106/S |
| v. | ) | |
| MIKOHN GAMING CORP., Defendant | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT MIKOHN GAMING CORPORATION'S OBJECTION TO HASBRO'S MOTION FOR RECONSIDERATION**

## I. Introduction and Facts

In this breach of contract action, Plaintiff Hasbro, Inc./Hasbro International, Inc. ("Hasbro") alleges that defendant Mikohn Gaming Corporation ("Mikohn")[1] underpaid royalties pursuant to two license agreements. In addition to its contract claim, Hasbro sought relief in equity, alleging unjust enrichment. This Court dismissed the unjust enrichment claim because it was "unavoidably a contract claim." Hasbro, 491 F.Supp. 2d 256, 264 (D.R.I. 2007).

A separate dispute exists as to whether paying Hasbro under the agreements would be illegal.[2] Hasbro insists that if such payment is deemed illegal, then Rhode

[1] Mikohn Gaming Corporation has since changed its name to Progressive Gaming International, Inc., but for purpose of this motion, shall be referred to as "Mikohn."

[2] Contrary to Hasbro's assertions, this Court's decision on Mikohn's Motion to Dismiss expressly kept the issue of illegality on the table: "This Court assumes that Mikohn will take the position that the sliding scale is a cleverly designed artifice that hides a percentage compensation scheme. Whatever merit there may be to this argument (and this Court takes no position on this issue), this is a matter better suited for trial or summary judgment." Motion to Dismiss Decision at 20 n.16.

Island law permits recovery in equity. Hasbro, thus, demands that its unjust enrichment claim be resuscitated.

Hasbro is wrong. Rhode Island law will not enforce an illegal agreement, whether in law or equity. Its unjust enrichment claim cannot stand.

## II. Discussion

### A. In Rhode Island "It is Well Settled that When a Contract is Illegal and Prohibited by Law No Action can be Maintained Upon it in Law or in Equity, Either to Enforce its Obligations or Secure its Fruits to Either Party"[3]

Well over a century ago The Rhode Island Supreme Court declared:

> "It is well settled that when a contract is illegal and prohibited by law no action can be maintained upon it in law **or equity**, either to enforce its obligations or to secure its fruits to either party; and where a party cannot maintain his action without showing an illegal act on his part he must fail in his suit."

Chambers v. Church, 14 R.I. 398, 401 (1884) (quoting Sneel v. Dwight, 120 Mass. 9 (1874)) (emphasis added).

In the intervening 123 years, Rhode Island law has not retreated from its position in Chambers. See Sheehan v. Richardson, 315 B.R. 226, 240 (D.R.I. 2004) (citing Birkett v. Chatterton, 13 R.I. 299, 303 (1881)) ("The law will not aid a person in attaining a remedy for doing what the law says shall not be done."); see also State v. R.I. Alliance of Social Services Employees, Local 580, SEIU, 747 A.2d 465, 469 (R.I. 2000)("Illegal contracts … are as unenforceable in the public employment labor-law context as they are in other settings.") Power v. City of Providence, 582 A.2d 895, 900 (R.I. 1990)("Contracts entered into in contravention to a state statute … are illegal, and no

---

[3] The quoted language appears in Chambers v. Church, 14 R.I. 398, 401-02 (1884), immediately before the "equity may compel…" language cited on page 6 of Hasbro's Motion. As is explained more fully below, Chambers was an express rejection of the principle cited by Hasbro, not an affirmation of it. Infra. at §IIB.

contract rights are created thereby."); G.W. McNear, Inc., v. American & British Mfg. Co., 42 R.I. 302, 107 A. 242, 248 (1919) ("Courts will not enforce contracts which are tainted with illegality.").

When a contract calls for performance that would violate the law, Rhode Island courts do not concern themselves with claimed equities or whether a party demonstrated "serious moral turpitude." The Rhode Island Supreme Court explained why it refuses to "lend [] aid to such a plaintiff" in Sullivan v. Horgan:

> In such cases the aid of the court is denied, not for the benefit of the defendant, but because public policy demands that it should be denied without regard to the interests of individual parties. **It is of no consequence that the present defendant company had knowledge of the alleged illegal combination and its plans or was directly or indirectly a party thereto. Its interests must be put out of view altogether when it is sought to have the assistance of the court in accomplishing ends forbidden by the law.**

17 R.I. 109, 110, 20 A. 232, 233 (1890) (emphasis added).

In Birkett v. Chatterton, an eleven-year-old boy sued his employer for non-payment of wages. 13 R.I. 299, 302 (1881) (cited in Power, 582 A.2d at 900). The employer raised an illegality defense based on a statute that prohibited under-aged employment. The Court upheld the dismissal of the boy's lawsuit, stating "[t]he contract was one which could not be executed without violating the statute, and the plaintiff therefore in suing to recover for having executed it was suing to recover for a violation of the statute. The law of course will not stultify itself by maintaining such an action. **The law will not help a man get paid for what the law says shall not be done**." Id. (emphasis added).

More recently, the Rhode Island Supreme Court in Power refused to enforce a settlement agreement in which the Providence police department had agreed to not force

any officer to retire before age 70 because it contravened a statute making retirement mandatory before 60. 582 A.2d at 900. In Power, a group of dedicated Providence police officers who were being forced into retirement sought to enforce the settlement agreement. In turning the officers away, the Power Court relied exclusively on Birkett in reaffirming the principle that "Contracts entered into in contravention to a state statute, as the settlement agreement is to the act, are illegal, and no contract rights are created thereby." Id.

The plaintiff-police officers who relied on the settlement in Power was not guilty of any "serious moral turpitude." Nor was the little boy in Birkett who worked, but wasn't paid. It made no difference, however, because enforcement of those contracts would have violated the law. It is difficult to imagine a situation where the equities would weigh more heavily in favor of a plaintiff than they did in Power and Birkett. Yet the Rhode Island Supreme Court has been unflinching in its stance: contracts that call for performance which is directly prohibited by statute cannot be enforced in equity.

Under Rhode Island law, Hasbro's alleged innocence and ignorance is irrelevant. The prohibitive statute is aimed directly at Hasbro, not Mikohn. N.R.S. 463.162 ("[I]t is unlawful for any person to … [f]urnish … property … on the basis of a contract, lease or license, pursuant to which that person receives payments based on earnings or profits from any gambling game, including any slot machine, without having first procured a state gaming license.") Hasbro's unjust enrichment claim cannot survive.

### B. Hasbro Misstated and Mischaracterized Rhode Island Law on the Enforceability of Illegal Contracts

In its Motion, Hasbro states "As the Court noted in Chambers, '[…]equity may compel the division of a fund or other products originally created by an illegal

transaction." Hasbro's Motion at 6. Evidently, Hasbro failed to read the language immediately before and after this quote.

More fully, the Chambers Court stated:

> "It is well settled that when a contract is illegal and prohibited by law **no action can be maintained upon it in law or equity, either to enforce its obligations or to secure its fruits to either party;** and where a party cannot maintain his action without showing an illegal act on his part he must fail in his suit."
>
> In view of the elementary maxim, *Ex turpi causa non oritur actio*, even this reference would seem to be unnecessary, were it not that to some extent the doctrine has been recognized [by other jurisdictions] that equity may compel the division of a fund or other products originally created by an illegal transaction. The cases cited in Massachusetts [Snell v. Dwight, 120 Mass. 9, 15 (1876)[4] and Dunham v. Presby, 120 Mass. 285, 289 (1876)[5]] discuss [and reject] this doctrine, and we consider their conclusions sound and decisive of this case. **It is difficult to see upon what logical ground courts can refuse to enforce the illegal contract itself, and yet compel the enforcement of rights which spring from it; refuse to compel a party to account for the profits of an illegal contract, and yet require him to do so when those profits have been invested and thus changed their form.**

Chambers, 14 R.I. 398, 401-02 (1884) (emphasis added).[6]

---

[4] "This is a bill founded upon the illegal contract itself, and seeks directly to enforce the provisions of that contract in regard to the distribution of the alleged profits arising out of the execution of the unlawful undertaking.... [W]hen a contract is illegal and prohibited by law, no action can be maintained upon it in law or equity, either to enforce its obligations or to secure its fruits to either party." Snell, 120 Mass. at 15.

[5] "If ... the money so received belonged to the partnership, to be accounted for ... as the profits of the joint undertaking, it is clear that it can only be reached by the plaintiff through the illegal agreement by the terms of which he is entitled to receive one quarter part of the profits coming to the partnership from the unlawful enterprise. The case falls within the rule laid down in Armstrong v. Toler, 11 Wheat. 258, and Thomson v. Thomson, 7 Ves. 470, that no action can be maintained on such a contract to enforce its obligations or secure its fruits to either party." Dunham, 120 Mass. at 289.

[6] Likewise, Hasbro mischaracterizes the law in Moncrief v. Palmer, 114 A. 181 (R.I. 1921). The Moncrief Court permitted enforcement of a usurious loan specifically

Chambers was a rejection of the very language Hasbro cited. The Chambers Court wrote those words to explain that was not the law of Rhode Island. Hasbro's attempt to recast this language as an affirmation of that principle is simply wrong.

**C. It is Improper For Hasbro to Ask This Court to Adopt Sections of the Restatement of Contracts for Rhode Island**

In its Motion, Hasbro cites repeatedly to Section 178 of the Restatement (Second) of Contracts for support as a basis for seeking relief in equity. Hasbro's Motion at 3, 4 and 7. However, Hasbro acknowledges that "The Rhode Island Supreme Court has not yet been called upon to determine whether Rhode Island will explicitly follow Section 178 of the Restatement (Second) Contracts…." Id. at 4. The Restatement's balancing multi-factor balancing approach to determine the enforceability of illegal contracts directly contradicts Rhode Island law. Hasbro asks this Court to change Rhode Island law.

Recent case law from the First Circuit addresses this issue squarely:

> [A]s a federal court considering state law claims, we must apply the state's law on substantive issues and "**we are bound by the teachings of the state's highest court.**" If the state's highest court … has not definitively addressed a question, we may consult other sources as we "make an informed prophecy" about what rule the state courts would likely follow. That said, however, **we generally make such prophecies only on interstitial questions. As a federal court, we will not create new rules or significantly expand existing rules.** We leave those tasks to the state courts.

Luc v. Wyndham Management Corp., --- F.3d --- (1st Cir. August 7, 2007) *available at* 2007 WL 2253527 at *2 (internal citations omitted).

---

because the statute did not prohibit the enforcement sought – repayment of the principal. Id. at 181-82. Here, Mikohn paid all of the money it could legally have paid; all that Hasbro seeks are illegal payments.

The Rhode Island Supreme Court has had ample opportunity to adopt the interest-weighing approach to illegal contracts that was articulated in Section 178 of the Restatement (Second) of Contracts. The Rhode Island Supreme Court has not done so. "[Hasbro] chose a federal, rather than a state forum, presumably cognizant of [the Fiorst Circuit's] statement that 'litigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed.'" See Jordan v. Hawker Dayton Corp., 62 F.3d 29, 32 (1st Cir.1995) (quoting Ryan v. Royal Ins. Co., 916 F.2d 731, 744 (1st Cir.1990).

**D. Hasbro Argument That the Contracts Are Legal is Irrelevant to the Survival of Its Unjust Enrichment Claim and is Legally Incorrect**

In its Motion for Reconsideration of its unjust enrichment claim, Hasbro surreally dedicates an entire section to rearguing whether or not the agreements are illegal. Hasbro's Motion at 8-10. This bizarre non-sequitur appears irrelevant to the motion Hasbro filed – which asks for reconsideration of its unjust enrichment claim. Whether or not the agreements are deemed illegal, Hasbro's unjust enrichment claim is improper.

To the extent that this Court decides to reconsider illegality in this context, the issue has already been amply briefed. See Mikohn's Motion to Dismiss at 13; Mikohn's Reply to Hasbro's Objection to Mikohn's Motion to Dismiss at 5-6; Mikohn's Reply to Hasbro's Objection to Mikohn's Motion for Summary Judgment at 7-8.

Without going into detail:

1. Nevada's prohibition against unlicensed participation in gambling revenue is essentially ubiquitous;[7]

---

[7] A.J. "Bud" Hicks, Common Mistakes Lawyers Make In Gaming Matters, 3-Feb. Nev. Law. 14, 15 (1995) ("Nevada's concept of pre-approval by the licensing authority… has been copied by virtually every other American jurisdiction that has legalized gambling activities."); see e.g., Indian Tribe - State of Arizona Gaming Compact § 3 (s); Cal. Bus

2. While the Nevada licensing statutes are state statutes, they protect a national interest. Central to Nevada's licensing statutes is the principle that illegal participation anywhere is illegal in Nevada;[8]

3. Nevada law does not countenance unlicensed participation in gambling in other states;[9]

4. The agreements call upon Mikohn, acting from its Nevada headquarters, to develop slot machines, obtain regulatory approval for these, place the games in casinos, collect gaming profits from those casinos, calculate and pay royalties to Hasbro and make its books and records available for audit in Nevada; and

5. The royalty provisions are essential terms of the license agreements and, under law, cannot be enforced even partially.[10]

One statement by Hasbro deserves separate attention. In error, Hasbro claimed that "There exist no technical or other problems in enforcing the contracts for royalties earned in California or Rhode Island or New York." Hasbro's Motion at 10. California prohibits such arrangements:

> Every person … who receives, directly or indirectly, any compensation or reward, or any percentage or share of the money or property played, for keeping, running, or carrying on any controlled game in the state, must have a valid state gambling license…. The burden of proving his or her qualifications to

---

& Prof. Code § 19853(a)(1) (West 2003); N.J. Stat. Ann. § 5:12-1(b)(8) (West 2005); Conn. Agencies Regs. § 12-574-E4(a)(5) (1995).

[8] See Nevada Tax Comm'n v. Hicks, 310 P.2d 852, 854 ("The [opportunity for legal gambling] is a risky one, not only for the people of this state, but for the entire nation."); see also Kent v. Mindlin, 1995 WL 236248 (9th Cir. 1995).

[9] See Nev. Rev. Stat., Section 463.720 (prohibiting a "licensee" – defined by section N.R.S. § 463.720 as one who is licensed or required to be licensed pursuant to section 463.162 – from engaging in activity in other states "that is unsuitable…because it:…(c) Is contrary to the public policy of [Nevada] concerning gaming;…").

[10] See Sheehan, 315 B.R. 226, 240 (D.R.I. 2004); Restatement (Second) of Contracts, §§ 181, 184 (1981).

> receive any license is on the applicant. No license may be assigned or transferred either in whole or in part.

35 Cal. Jur. 3d Gaming, Prize Contests, and Lotteries § 85 (citing Cal. Bus & Prof. Code § 19853(a)(1) (West 2003)).

As for Rhode Island and New York, no royalties were generated in either state, so it is irrelevant whether or not they prohibit participation agreements like the ones at issue here.

## III. Conclusion

It is abundantly clear that Rhode Island law will not enforce an illegal agreement in equity. Hasbro has misstated the law in suggesting otherwise. Finally, having chosen to litigate in a federal forum, Hasbro cannot expect this Court to change settled state law.

WHEREFORE, defendant Mikohn asks that this Court deny Hasbro's Motion for Reconsideration of its unjust enrichment claim.

Respectfully submitted,

/s/ Michael J. Daly

Brooks R. Magratten, Esq., No. 3585
Gordon P. Cleary, Esq., No. 1948
Michael J. Daly, Esq., No. 6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Date: September 4, 2007

CERTIFICATE OF SERVICE

To:

Todd D. White, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza - 8th Floor
Providence, RI 02903

I hereby certify that I electronically filed this Objection and Supporting Memorandum on September 7, 2007, both of which are available for viewing and downloading from the Court's Electronic Case Filing System. Service on the above-identified counsel has been effectuated by electronic means.

/s/ Michael J. Daly