UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC. and HASBRO INTERNATIONAL, INC., Plaintiffs | ) | C.A. No. 05-0106/S |
| v. | ) | |
| MIKOHN GAMING CORP., Defendant | ) | |

**DEFENDANT MIKOHN GAMING CORPORATION'S MOTION FOR RECONSIDERATION OF HASBRO'S BAD FAITH EVIDENCE OR IN THE ALTERNATIVE TO BIFURCATE THE ISSUE OF BAD FAITH FROM THE CONTRACT CLAIM**

Defendant Mikohn Gaming Corporation ("Mikohn") hereby objects to plaintiff Hasbro, Inc./Hasbro International's ("Hasbro's") moves for reconsideration of the Court's order denying Mikohn's motion in limine with respect to witnesses Lawrence Ruhe, Denis Van Hook, John Garner and Thomas Haas, or, in the alternative, to bifurcate the issue of bad faith from Hasbro's underlying contract claim. Mikohn's supporting memorandum is filed herewith.

_/s/ Michael J. Daly
Brooks R. Magratten, Esq., No. 3585
Gordon P. Cleary, Esq., No. 1948
Michael J. Daly, Esq., No. 6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Date: September 7, 2007

CERTIFICATE OF SERVICE

To:

Todd D. White, Esq.
Jeff Techentin, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza - 8th Floor
Providence, RI 02903

I hereby certify that the enclosed Defendant Mikohn Gaming Corporation's Motion for Reconsideration of Hasbro's Bad Faith Evidence or in the Alternative to Bifurcate the Issue of Bad Faith From the Contract Claim/Supporting Memorandum was electronically filed with the Court using the ECF system and that the above listed counsel will be electronically served through the ECF system, on September 7, 2007.

_/s/ Michael J. Daly

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC. and HASBRO INTERNATIONAL, INC., Plaintiffs | ) | C.A. No. 05-0106/S |
| v. | ) | |
| MIKOHN GAMING CORP., Defendant | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT MIKOHN GAMING CORPORATION'S MOTION FOR RECONSIDERATION OF HASBRO'S BAD FAITH EVIDENCE OR IN THE ALTERNATIVE TO BIFURCATE THE ISSUE OF BAD FAITH FROM THE CONTRACT CLAIM**

## Introduction and Facts

In this breach of contract action, plaintiff Hasbro, Inc./Hasbro International, Inc. ("Hasbro") seeks to introduce evidence on what it asserts was a breach of Mikohn's duty of good faith and fair dealing.

Specifically, Hasbro seeks to introduce the testimony of four former employees of defendant Mikohn Gaming Corporation ("Mikohn"),[1] Lawrence Ruhe, John Garner, Denis Van Hook and Thomas Haas. Mikohn moved in limine to exclude the testimony of these employees solely on the grounds that their interpretations were irrelevant to the meaning of the contract. Hasbro opposed the motion alleging that their testimony was relevant to the issue of bad faith. This Court agreed that the testimony on interpretation of the agreements was irrelevant, but would not exclude certain evidence because it found that it was relevant on the issue of bad faith.

[1] Mikohn Gaming Corporation has since changed its name to Progressive Gaming International, Inc., but for purpose of this motion, shall be referred to as "Mikohn."

Hasbro had only previously cited this testimony in support of the parties' supposed intent in executing the underlying contract.[2] Based on Hasbro's arguments and representations throughout the discovery and pretrial phase of this lawsuit, Mikohn's motion in limine did not address the issue of bad faith allegation when it sought to exclude the testimony of these former employees. Mikohn asks for the opportunity to do so now.

Because Hasbro's bad faith argument pre-supposes that its Litigation Interpretation[3] was intended by the parties and that the Gross Revenue Interpretation[4] of the agreements was not intended, it would be improper to permit Hasbro to argue such a claim without first proving that the indeed parties intended the Litigation Interpretation. However, if Hasbro can convince a jury that the parties intended the Litigation Interpretation, then there is no need to move on to the bad faith claim.

---

[2] Hasbro has stated that "[t]his is a case of contractual language interpretation – nothing more." Hasbro Obj. to Mikohn Discovery Motion at 7 (filed August 24, 2006). Hasbro's bad faith allegation was never argued and was scarcely mentioned before opposing Mikohn's motions in limine on September 7, 2007. Suddenly, it was the foundation for virtually all of Hasbro's evidence. Hasbro was asked about its bad faith allegation early in discovery and made no mention of the former Mikohn employees. Hasbro referred extensively to the former Mikohn employees in both its motion for partial summary judgment and in resisting Mikohn's motion for summary judgment, but did so only in the context of (improperly) arguing that their interpretations were relevant to the intent of the contract. In fact, Hasbro's first mention of this allegation since the complaint came in the form of a jury instruction filed with this Court on August 10, 2007. Mikohn promptly objected to the jury instruction and received no reply from Hasbro.

[3] For years Mikohn calculated Hasbro's royalties under the agreements by taking the gross revenue from all machines and averaging that figure by the number of game-days. This we refer to as the "Gross Revenue Interpretation."

[4] In 2005, Hasbro demanded a recalculation of previously paid royalties, claiming that royalties should have been calculated, not on gross revenue, but on each individual slot machine on each individual day. This we refer to as the "Litigation Interpretation."

As such, Mikohn moves for reconsideration of its Motion in Limine to Exclude the Testimony of Lawrence Ruhe, John Garner, Denis Van Hook and Thomas Haas as well as any other evidence of bad faith. In the alternative, Mikohn asks this Court to bifurcate the issue of bad faith until after Hasbro proves that the parties intended the Litigation Interpretation.

## Discussion

## I. EVIDENCE OF GOOD OR BAD FAITH IS IRRELEVANT

Hasbro's reliance on concepts of good and bad faith to support its contract claim is improper. In Hasbro's words, "This is a case of contractual language interpretation – nothing more." Hasbro Obj. to Mikohn Discovery Motion at 7 (filed August 24, 2006). The parties addressed payment obligations in the royalty provisions and their respective rights and obligations were defined at the time the contracts were entered. If, when the agreements were executed, the parties agreed to use the Litigation Interpretation, then Mikohn is in breach – regardless of its alleged motives. If, however, the parties agreed to use the Gross Revenue Interpretation, then there has been no breach of the payment provision and, thus, no breach of contract. If there has been no breach of the payment provision/contract, then "by definition," there has been no breach of the covenant of good faith and fair dealings. See Hord Corp. v. Polymer Research Corp. of America, 275 F. Supp. 2d 229, 237-38 (D.R.I. 2003).[5] Neither party's good or bad faith performance is

[5] During the hearing on Mikohn's motion to exclude the four witnesses, this Court suggested that Massachusetts law may be different, i.e., that it may be possible to recover for a breach of the covenant of good faith and fair dealings even if the express terms of the contract had not been breached. In so commenting, the Court appeared to refer to Zachar v. Lee, 363 F.3d 70 (1st Cir. 2004). There was no substantive discussion of the implied covenant in that case because the defendants did not properly preserve their objections at trial. Id. at 73-74. Regardless, to the extent that Massachusetts law may

relevant to the question of what the parties intended years earlier. Moreover, such evidence could only serve to add confusion to the case and unfair prejudice to Mikohn.

Hasbro's reliance on the implied covenant of good faith and fair dealings is a red herring. The covenant has a limited role in contract law. It helps "ensure that terms omitted from any contract's express provisions yet indispensable to performance as envisioned by the contract are taken into account." Seth William Goren, Looking for Law in All the Wrong Places: Problems in Applying the Covenant of Good Faith Performance, 37 U.S.F. L. Rev. 257, 313 (Winter 2003). "The purpose of the covenant of good faith and fair dealing is to protect the parties' objectives and reasons for entering into a contract." Hord Corp. v. Polymer Research Corp. of America, 275 F.Supp.2d 229, *238 (D.R.I. 2003). In other words, the covenant of good faith incorporates into an agreement basic assumptions that were held at the time the agreements were entered; it does not act as a springboard for imposing or acquiring unbargained-for rights or obligations.

The Rhode Island Supreme Court has explained the covenant of good faith as follows:

> "It is both elementary as well as fundamental law that where parties contract and make performance conditional upon the happening of an occurrence of a particular matter, the contract imposes upon the party required to

---

permit a litigant to recover for breach of the implied covenant of good faith and fair dealings even without demonstrating a breach of contract, Rhode Island law is different. A "party's actions … do not violate the covenant of good faith and fair dealing when they were contemplated by the parties at the time of contract formation." Hord Corp., 275 F.Supp.2d at 238. A party who acts "within the confines of the parties' contractual objectives, and thus by definition in good faith, … [does] not violate the implied covenant of good faith and fair dealing." Id. Rhode Island's only exception to this rule is in insurance bad faith actions.

> bring about the happening of that occurrence an implied promise to use good faith, diligence and best efforts to bring about that happening."

1800 Smith Street Associates, LP v. Gencarelli, 888 A.2d 46, 56 (R.I. 2005). (quoting Bradford Dyeing Association, Inc. v. J. Stog Tech, GmbH, 765 A.2d 1226, 1237 (R.I. 2001)).

Thus, under Rhode Island law, a party cannot avoid performing under a contract by pointing to "an obstacle to performance which he has created or which lies within his power to remove." Id. Breach of the implied promise of good faith, diligence and best efforts serves as a waiver of the condition, thereby requiring the party breaching the implied promise to perform fully despite the non-occurrence of the condition. Id. See also Ide Farm and Stable, Inc. v. Cardi, 297 A.2d 643, 645 (R.I. 1972) (recognizing that the covenant of good faith required land purchaser to take reasonable efforts to satisfy a mortgage contingency before performance may be avoided).

The covenant of good faith and fair dealings also limits a party's ability to exercise a discretionary contract right. Hord Corp. v. Polymer Research Corp. of America, 275 F.Supp.2d 229 (D.R.I. 2003). "The covenant of good faith and fair dealing **presupposes** that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." Zinck v. Cartus Corp., 2007 WL 2384382, *3 (D. Conn. 2007) (emphasis added) (quoting Celentano v. Oaks Condo. Ass'n, 830 A.2d 164, 188 (Conn. 2003). In Hord Corp., the plaintiff ("Hord Corp.") entered an agreement with defendant ("Polymer") under which Hord Corp. agreed to purchase rhinestones of suitable quality from Polymer. Pursuant to the agreement, if Hord Corp. were unsatisfied with the

quality, then Hord Corp. had the contractual right to terminate the contract. After receiving several unsatisfactory shipments, Hord Corp. exercised its right to terminate. During litigation, this Court (Judge Lagueux presiding), considered "whether the implied covenant of good faith and fair dealing limited [Hord Corp.'s] ability to terminate the contract." Id. at 231. After surveying Rhode Island law, the Court held that the "contractual objectives evinced from an option to terminate" required that the option be exercised in good faith. Id. at 238. Importantly, however, Rhode Island law provides that a "party's actions … do not violate the covenant of good faith and fair dealing when they were contemplated by the parties at the time of contract formation." Id. Ultimately, the Court concluded that Hord Corp.'s exercise of its right to terminate was reasonable and did not constitute a breach of contract. Id.

This Court also has had the opportunity to explore the affect of the implied covenant of good faith and fair dealings under Georgia law. In Rhode Island Charitable Trust v. Engelhard Corp. (hereafter "Englehard"), this Court held that Georgia law permitted the court to look to concepts of good faith to fill a gap in the contract in order to effectuate the parties' obvious intent at the time the agreement was entered. 109 F. Supp. 2d at 78. In doing so, the court held that the duty of good faith may justify the inclusion of an implied term that is consistent with express contract language and that is "absolutely necessary … to effectuate the intention of the parties." Id.

This case does not implicate any of the recognized uses of the covenant of good faith and fair dealings. Mikohn does not seek to avoid liability by claiming it is excused from performing because of the occurrence or non-occurrence of a condition. Cf. 1800 Smith Street Associates, 888 A.2d at 56. Mikohn does not contend that the license

agreements permitted it to exercise its discretion to select how to apply the royalty provisions. C.f. Hord Corp., 275 F. Supp. 2d at 238. There is no gap in the agreements that must be filled in order "to effectuate the intention of the parties." Cf. Engelhard Corp., 109 F. Supp. 2d at 78.

There is no basis in Rhode Island law for incorporating about the covenant of good faith and fair dealings into the trial. Rhode Island does not recognize an independent cause of action for a breach of the covenant of good faith and fair dealing. Ross-Simons of Warwick, Inc. v. Baccarat, Inc. 182 F.R.D. 386, 402 (D. R.I. 1998).

Because this case centers on whether Mikohn breached the royalty provision by paying royalties based on the Gross Revenue Interpretation, neither party's good or bad faith is relevant. Moses v. Halstead, 477 F. Supp. 2d 1119, 1126 (D. Kan. 2007) (""good or bad faith may be irrelevant to whether an insurer has breached'"); Athridge v. Aetna Cas. and Sur. Co., 2001 WL 214212, *3 (D. D.C. 2001) ("motive is irrelevant to a breach of contract action"). When, as here, the dispute is over an explicit contract provision that defines the parties rights and obligations and there is no independent tort for bad faith, motivation is irrelevant. The court in Fawaz v. Business Loan Exp., LLC, recognized this basic principle when it held:

> Michigan does *not* recognize an independent tort action for an alleged breach of a contract's implied covenant of good faith and fair dealing…. [I]n breach of contract claims, it is irrelevant whether the party acted in bad faith or dealt unfairly; the issue is whether the party breached the contract.

2006 WL 1779411, *6 (E.D. Mich. 2006).[6]

---

[6] It is also worth noting that this Court has held that "a claim for breach of the covenant will be dismissed as "redundant where the conduct allegedly violating the implied covenant is also the predicate for breach ... of an express provision of the underlying

For these reasons, Mikohn respectfully requests that this Court reconsider its previous ruling and exclude all evidence offered to prove good or bad faith.

## II. IF THIS COURT FINDS THAT EVIDENCE OF GOOD OR BAD FAITH PERFORMANCE IS PROPER, THEN IT SHOULD BIFURCATE THE TRIAL TO FIRST IDENTIFY CONTRACTUAL INTENT

Hasbro's bad faith argument pre-supposes that the parties intended the Litigation Interpretation when they entered the agreements. Thus, even if this Court finds that Hasbro's bad faith argument is proper under Rhode Island law, Hasbro must first establish that the parties intended Hasbro's Litigation Interpretation.

The Federal Rules of Civil Procedure provide that "… to avoid prejudice [the Court] … may order a separate trial … of any separate issue….." Fed. R. Civ. P. 42(b). Here, the danger of unfair prejudice compels bifurcation of the trial to first identify the parties' intent. Only if Hasbro's Litigation Interpretation was intended, may the jury determine whether Mikohn's use of the Gross Revenue Interpretation was in bad faith.

### A. Rhode Island Courts Recognize the Danger of Unfair Prejudice and Bifurcate Issues of Bad Faith from the Underlying Contract Claim

Acknowledging the inherent prejudice that bad faith evidence has on an underlying contract action, Rhode Island courts **mandate** that the two issues be tried separately. See Skaling v. Aetna Ins. Co., 799 A.2d 997, 1010 n.7 (R.I. 2002); see also Mello v. DaLomba, 798 A.2d 405, 408 (R.I. 2002) ("The purpose of [Rule 42(b)] is to preserve judicial economy, but this Court approves of bifurcation when to do otherwise may invite confusion or unfair prejudice."); Bartlett v. John Hancock Mutual Life Ins.

---

contract." PSW, Inc. v. VISA U.S.A., Inc. 2006 W.L. 519670, *14 -15 (D.R.I. 2006) (internal citation omitted) (applying New York law).

Co., 538 A.2d 997, 1002 (R.I. 1988) (abrogated on other points of law in Skaling, 799 A.2d at 1007).

The Rhode Island Supreme Court has held that "it is **inherently prejudicial** for a trial justice to decline to sever [a bad faith] claim from a breach-of-contract claim." Corrente v. Fitchburg Mutual Fire Ins. Co., 557 A.2d 859, 862 (R.I. 1989) (emphasis added).

More recently, the Rhode Island Supreme Court in Skaling stated:

> [In Rhode Island,] claims of [] bad faith are severed and tried separately from the breach of [] contract claim.... Although the question of whether every claim of bad faith in every case should be severed from the breach-of-contract claim is not now before us, in an appropriate case, a bifurcated trial may be a useful alternative approach.

Skaling, 799 A.2d at 1010 & n.7.[7] It is clear from Skaling that either severance, under Rule 21, or bifurcation, under Rule 42(b), is appropriate in these circumstances.

### B. The Intent of the Agreements Must be Established Before Mikohn Can be Said to Have Acted to Frustrate that Intent

In Hord Corp. v. Polymer Research Corp. of America, this Court stated:

> This Court has emphasized that a party's actions must be viewed against the backdrop of contractual objectives in order to determine whether those actions were done in good faith. A party's actions, however, do not violate the covenant of good faith and fair dealing when they were contemplated by the parties at the time of contract formation.

275 F. Supp. 2d 229, 238 (D.R.I. 2003); see also Zinck, 2007 WL 2384382 at *3 (D.Conn. August 20, 2007) ("'The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is

[7] This Court has previously held that Skaling stands for the proposition that bad faith claims should be severed from the underlying contract claim. See Rudman v. Life Ins. Co. of No. Am., C.A. No. 04-247/S (order of Jan. 25, 2005)(Smith, J.).

in dispute is a party's discretionary application or interpretation of a contract term.'") (quoting De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (2005).

If royalties under the contracts were intended to be calculated pursuant to the Gross Revenue Interpretation, then Mikohn's "actions … do not violate the covenant of good faith and fair dealing." See Hord Corp., 275 F. Supp. 2d at 238.

The cases on which Hasbro relied are entirely consistent with this principle. In those cases, the courts moved forward on the bad faith claim only after making a factual determination as to the intent of the agreements. See Englehard, 109 F. Supp. 2d at 76 ("Application of the implied covenant of good faith and fair dealing is appropriate…[because defendants actions] contravene the clear intent of the parties."); Ross Simons, 66 F. Supp. 2d at 325 (The Court begins its discussion stating, "Because the terms of the contract are clear and unambiguous, "the task of judicial construction is over and the Court will enforce those terms as they are written."); Dovenmuehle Mortgage, Inc. v. Antonelli, 790 A.2d 1113, 1115 (R.I. 2002) ("'[V]irtually every contract contains an implied covenant of good faith and fair dealing between the parties.' In this case Citizens breached no such duty. Pursuant to the contract, Citizens could choose whether to pay the taxes. Thus, the defendant's argument that its failure to do so is a breach of its duty of good faith did not preclude summary judgment."); Ide Farm & Stable, Inc., 297 A.2d at 645 (Before addressing the bad faith issue, the Court found "[t]he trial justice, confronted with contradictory and, at times, inconsistent testimony, adopted the view that [Defendant's] obligation was subject to his obtaining a $100,000 first mortgage…. We cannot fault him.").

In Englehard, this Court described the sequence of the analysis when presented with a bad faith argument:

> First, whether the [term of the contract] is ambiguous…. Secondly, **whether the action of defendant does violence to the intent of the parties**…. Finally, this Court will have to determine whether and to what extent a term ought to be implied … under the doctrine of good faith and fair dealing.

Id. at 76 (emphasis added).

Further, this Court explained that:

> "In deciding whether to imply promises or duties to the terms of a contract, [t]he introduction of an implied term into the contract of the parties … **can only be justified** when the implied term is not inconsistent with some express term of the contract and where there arises from the language of the contract itself, and the circumstances under which it was entered into, an inference that **it is absolutely necessary to introduce the terms to effectuate the intention of the parties**."

Id. at 78 (emphasis added).

This Court did not even begin to address the issue of bad faith until it had already established that "[defendant's] reading of the relevant provisions … cannot be supported because that would be a clear violation of the intent of the contracting parties," id. at 77 (emphasis added), and that "[defendant's] interpretation of the [provision] cannot conceivably be what the parties intended in entering the [] arrangement," id. at 78 (emphasis added).

If this Court concludes that good or bad faith is at issue, then determining the intent of the agreements before broaching that issue is an eminently sensible way to proceed. Mikohn cannot be said to have breached the duty of good faith and fair dealing unless the jury finds that its actions were designed to frustrate the intent of the agreements. If the jury finds that the parties' intent in forming the agreements was

consistent with the Gross Revenue Interpretation, then how can Mikohn be found to have frustrated that intent?

While Hasbro should certainly be permitted to establish its proffered intent by referencing "the language of the contract itself, and the circumstances under which it was entered into," Englehard, 109 F. Supp. 2d at 78, Hasbro should not be permitted to influence the jury's determination of that intent with what it claims is evidence of bad faith.

### C. It Would Confuse the Jury and Substantially Prejudice Mikohn if Hasbro's Bad Faith Argument Were Presented at the Same Time as Its Underlying Contract Claim

As is discussed more fully above, the evidence that Hasbro proffers to support its bad faith claim at trial is irrelevant to the issue of contract interpretation. What Ruhe, Garner, Van Hook, Haas or anyone else at Mikohn may have thought, but did not express to Hasbro, has no bearing on what the agreements actually meant. It is, however, confusing to the jury and highly prejudicial.

It is confusing to the jury because it distracts the jury from determining "the parties' intent at the time an agreement was made." Casco Indem. Co. v. Gonsalves, 839 A.2d 546, 549 (R.I. 2004). The law has prescribed certain types of evidence that have bearing on that intent; those include: 1) statements made during negotiations, 2) the parties' performance under the contract, and 3) trade usage. See Lanier Professional Svcs, Inc. v. Ricci, 192 F.3d 1, 4 (1st Cir. 1999); Ritter v. Mantissa In. Corp., 864 A.2d 601, 607 (R.I. 2005); DiBattista v. Butera, 244 A.2d 857, 859 (R.I. 1968) (contract negotiations); In re Dissolution of Anderson, Zangari & Bossian, 888 A.2d 973, 977 n. 3

(R.I. 2006) (subsequent course of performance); Superior Boiler Works, Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 636 (R.I. 1998) (trade usage).

Whatever Hasbro might say to the contrary, an internal disagreement as to the meaning of a contract, years after the "time the agreement was made," initiated by people who were not present is not relevant to contract interpretation. To force a jury to distinguish between what facts are relevant to the parties' intent when the agreements were executed and what facts are merely *post hoc* readings is unquestionably confusing. This is often a daunting task for courts and experienced attorneys, who are trained in the rules of evidence; it is virtually impossible for a jury of lay people.

The inclusion of Hasbro's alleged bad faith evidence before there has been a determination of the intent of the agreements would unfairly prejudice Mikohn because it invites the jury to make a determination of the meaning of the agreements based on its like or dislike of the parties. Hasbro's bad faith evidence is little more than an unpleasant characterization of an internal dispute at Mikohn written with a lawyer's unfriendly pen. It has the potential to – indeed, it appears designed to – enflame the jury to make a decision on the parties' intent based on the inaccurate perception that Mikohn is a "bad company."

Moreover, if the interpretation of these agreements is reduced to a popularity contest Mikohn is at a distinct disadvantage. Mikohn litigates this action in Hasbro's backyard. It is beyond question that Hasbro has generated significant good will in Rhode Island. It has a children's hospital with its name on it; a Mr. Potato Head statue on every corner; its own Hasbro vanity license plate. It even has its own cake at Gregg's.

Hasbro's proffered bad faith evidence has no connection to the predicate question of what the parties intended when they made the agreement. Yet a jury could easily, through confusion or prejudicial dislike, use that evidence inappropriately to determine parties' intent when the contract was formed. Even if the jury were somehow able to distinguish between the bad faith evidence and the evidence on the parties' intent, why risk it? Why risk tainting this entire trial by introducing evidence that has the real potential to result in prejudicial error?

If a jury decides that the parties intended Hasbro's Litigation Interpretation, and this Court determines that Hasbro's claims of bad faith are still relevant, then such claims will still be there. There is simply no prejudice to Hasbro.

### D. Deciding Hasbro's Bad Faith Claim Without First Deciding What the Parties Intended Turns Well Settled Contract Law on Its Head

By pressing its bad faith claim without ever even establishing the intent of the parties, Hasbro drags the established principles of contract interpretation into the turmoil of bad faith. See Seth William Goren, Looking for Law in All the Wrong Places: Problems in Applying the Implied Covenant of Good Faith Performance, 37 U.S.F.L. Rev. 257 (Winter 2003) (discussing the "considerable confusion as to the nature of the covenant of good faith and fair dealing, when the covenant is implicated, and how claims arising from the covenant are enforced."); see also Englehard, 109 F. Supp. 2d at 68, ("[T]he Court is confronted with the vexing question of whether and to what extent a term should be implied into a well negotiated contract by utilizing the implied covenant of good faith and fair dealing."); William E. Deitrick & Jeffrey C. B. Levine, Contractual Good Faith: Let the Contract, Not the Courts, Define the Bargain, 85 Ill. B.J. 120, 120

(1997) ("The law governing the doctrine of the implied covenant of good faith and fair dealing is confused, and court decisions are inconsistent.").

If Hasbro is correct, and it need not establish the intent of the parties before putting its bad faith claim in front of a jury, then there is virtually no constraint on the type of evidence that a jury may use to interpret an ambiguous contract. Hasbro's position on bad faith reduces contract interpretation to a free-for-all; a mud ball fight, where parties are permitted to introduce whatever evidence lawyers can paint in an ugly light. Indeed, the central theory of Hasbro's bad faith claim is merely that Mikohn did not tell them that there was another possible – though incorrect – interpretation.

Hasbro's approach to bad faith and contract interpretation is particularly troublesome in the context of a corporation. Here, four employees – all of whom are irrelevant to traditional contract interpretation – out of a company of approximately 800 employees had a discordant opinion on the intent of a contract – an opinion based solely on their reading of the agreements.

What do you do with Microsoft, where hundreds or thousands of eyes might pass over a contract during its performance? Plaintiff-contractors, who find an ambiguity, can simply fish for an employee who agrees with them. Or, visa-versa, as is the case here; those disgruntled employees – either themselves or through acquaintances – can simply export their interpretation to plaintiffs. Add to the equation the incentive of Finder's Fee agreements and the future of stability in contracts looks increasingly grim.

If Hasbro is correct, all of this "evidence" can then be thrown in the face of six jurors who haven't even had the opportunity to figure out what the people at the bargaining table thought, and all of it under the banner of "good faith and fair dealing."

This cannot be the law.

## Conclusion

Hasbro's bad faith argument pre-supposes that its Litigation Interpretation was intended by the parties and that the Gross Revenue Interpretation of the agreements was not intended. It would be improper to permit Hasbro to pursue such an argument without first proving that the parties intended the Litigation Interpretation. However, if Hasbro can convince a jury that the parties intended the Litigation Interpretation, then there is no need to move on to the bad faith claim.

WHEREFORE, defendant Mikohn asks that this Court exclude all evidence of bad faith or in the alternative bifurcate the trial to separate the issues of bad faith and interpretation of the underlying agreements.

_/s/ Michael J. Daly
Brooks R. Magratten, Esq., No. 3585
Gordon P. Cleary, Esq., No. 1948
Michael J. Daly, Esq., No. 6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Date: September 7, 2007

CERTIFICATE OF SERVICE

To:

Todd D. White, Esq.
Jeff Techentin, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza - 8th Floor
Providence, RI 02903

I hereby certify that the enclosed Defendant Mikohn Gaming Corporation's Motion for Reconsideration of Hasbro's Bad Faith Evidence or in the Alternative to Bifurcate the Issue of Bad Faith From the Contract Claim/Supporting Memorandum was electronically filed with the Court using the ECF system and that the above listed counsel will be electronically served through the ECF system, on September 7, 2007.

_/s/ Michael J. Daly_______________