UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC. and HASBRO INTERNATIONAL, INC., Plaintiffs | ) | C.A. No. 05-0106/S |
| v. | ) | |
| MIKOHN GAMING CORP., Defendant | ) | |

**DEFENDANT MIKOHN GAMING CORPORATION'S RENEWED MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF LLOYD MINTZ**

Defendant Mikohn Gaming Corporation ("Mikohn") hereby renews its motion in limine to preclude plaintiff Hasbro, Inc./Hasbro International ("Hasbro") from introducing the testimony of Lloyd Mintz. For the reasons stated in the memorandum of law attached herewith, Mikohn asks that this Court grant its renewed motion.

Respectfully submitted,

_/s/ Michael J. Daly__

Brooks R. Magratten, Esq., #3585
Gordon P. Cleary, Esq., #1948
Michael J. Daly, Esq., #6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Date: September 16, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC. and HASBRO INTERNATIONAL, INC., Plaintiffs | ) | C.A. No. 05-0106/S |
| v. | ) | |
| MIKOHN GAMING CORP., Defendant | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT MIKOHN GAMING CORPORATION'S RENEWED MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF LLOYD MINTZ**

## I. Introduction

On September 4, 2007, defendant Mikohn Gaming Corporation ("Mikohn") filed a motion in limine ("Motion") seeking, *inter alia*, to preclude plaintiff Hasbro, Inc./Hasbro International ("Hasbro") from presenting Mr. Lloyd Mintz to testify about his recollection of contract negotiations. The basis of the motion was that Hasbro's Rule 30(b)(6) witness on the subject of negotiations, Jane Ritson-Parsons, testified that she had no knowledge of the substance of the negotiations. At oral argument on Mikohn's Motion, Hasbro's attorney represented that he had "worked with Hasbro to try and find out where [Mintz] was," but "couldn't get ahold [sic] of him. I found a next best address and he didn't respond to any of my inquires." Transcript of September 10, 2007 p. 114: 17-20. Hasbro's attorney then stated that he ultimately spoke with Mr. Mintz only after issuing a subpoena to him in late August. The Court denied Mikohn's motion to preclude Mr. Mintz's testimony, but granted Mikohn leave to depose Mr. Mintz prior to trial. Mikohn deposed Mr. Mintz on Friday, September 14, 2007. Based on the Mr. Mintz's

testimony, Mikohn respectfully renews its motion to preclude him from testifying on Hasbro's behalf.

Hasbro should not be permitted to introduce Mr. Mintz's testimony for two reasons. First, Mr. Mintz confirms that he has been in regular contact with Hasbro (including several individuals who work under Ms. Ritson-Parsons in Hasbro's licensing department) since this lawsuit began, but that Hasbro never bothered to ask him about negotiations before presenting Ms. Ritson-Parsons to say that Hasbro knows nothing about negotiations. Therefore, exclusion is appropriate as a discovery sanction.

Secondly, on a substantive basis, Mr. Mintz has no knowledge that is helpful to the resolution of this case. Although Mr. Mintz says he agrees with Hasbro's interpretation, he concedes that his interpretation is not based on any communications he ever had with anyone from Mikohn. He does not recall telling anyone from Mikohn or Hasbro about how the royalty provisions should be applied. He admits that he has never seen a contract that calls for royalty calculations to be based on actual daily performance of an individual slot machine. He concedes that his interpretation is not based on any commonly accepted trade definitions. Because Mr. Mintz's testimony would be nothing more than an expression of his subjective and undisclosed intent, his testimony is irrelevant. Retirement Bd. of Employee's Retirement Sys v. DiPrete, 845 A.2d 270, 284 (R.I. 2004) ("The secret intent of one party to a contract is not binding on the other party.").

## II. EXCLUSION BASED ON HASBRO'S DISCOVERY VIOLATION

Hasbro incorporates herein its discussion of the governing law from its Motion. Distilled to its essence, the law abhors trial by ambush. Notwithstanding this foundation

of civil procedure, however, an ambush appears to be exactly what Hasbro sought to achieve in its approach to the testimony of Mr. Mintz.

Hasbro has had the means and ability to contact Mr. Mintz at any time during discovery to probe his knowledge of negotiations between the parties. Although Hasbro has represented that it was unable to investigate Mr. Mintz's knowledge of contract negotiations prior to it 30(b)(6) deposition and/or disclose Mr. Mintz as a witness because he could not be contacted, Mr. Mintz testified that since March 2005, when Hasbro filed its complaint, he had been in contact with at least[1] five Hasbro employees –all of whom have some connection to the Hasbro licensing department: Tom Klusaritz, Lynda Connell, Mike Provost, Sherri Lucci and Matt Zwieka. It is readily apparent that Hasbro had ample opportunity to contact Mr. Mintz regarding his knowledge relative to this case. That Hasbro failed to use any of these contacts to reach out to Mr. Mintz and instead served him with a subpoena less than three weeks prior to the scheduled commencement of trial reveals the true purpose of its claimed inability to locate Mr. Mintz: trial by ambush.[2] Hasbro's known contacts with Mr. Mintz are summarized below:

**Tom Klusaritz** – responsible for intellectual property licenses issued by Hasbro to outside companies; reports to Jayne Ritson-Parson's immediate subordinate, Brioni Boyer. Tr.[3] p. 19-20.

---

[1] Mr. Mintz admits he that he has spoken to more Hasbro employees since summer 2004. Tr. at 19:6-9.

[2] It is worth pointing out that Mr. Mintz testified that he reviewed several documents with Hasbro's outside counsel to prepare for his deposition. Tr. 11:5-12. Mikohn's counsel asked Hasbro's counsel to voluntarily identify the documents they reviewed because "if this were during discovery, we would be able to send out a document request…." Tr. at p. 100: 22-24. When Mikohn's counsel asked "are you going to tell me the documents that you showed to him?" Hasbro's counsel responded "of course not…." Tr. at p. 101: 11-13.

[3] The term "Tr." refers to the transcript of the Deposition of Lloyd Mintz, taken September 14, 2007.

◦ telephones Mr. Mintz at his office "two or three times a year." Tr. p. 21: 7, 12.

◦ has had approximately five face-to-face meetings with Mr. Mintz since 2004. Tr. p. 28:6.

◦ exchanges correspondence and e-mail with Mr. Mintz "irregularly throughout the year. Tr. p. 21: 20 .

◦ last spoke with Mr. Mintz in June 2007. Tr. p. 36: 20-23.

**Lynda Connell** - Hasbro license account manager; reports to Tom Klusaritz. Tr. p. 23: 22-23; p. 24: 3.

◦ has spoken with Mr. Mintz approximately "a dozen" times since 2004 by telephone and e-mail. Tr. p. 24: 11; p. 25: 22-2.

◦ has had two or three face-to-face meetings that lasted approximately one hour each with Mr. Mintz since 2004. Tr. p. 27: 5.

◦ last spoke with Mr. Mintz in June or July 2007. Tr. p. 37: 5.

**Mike Provost** - works on "the creative side" of Hasbro's licensing group. Tr. p. 29: 20-24.

◦ has exchanged telephone calls and e-mails with Mr. Mintz "a couple of times a year" since March 2005. Tr. p. 29-31.

◦ has lunch with Mr. Mintz once per year, most recently at Christmas in 2006. Tr. p. 29: 17-18; p. 30: 9.

◦ last spoke with Mr. Mintz in June 2007.

**Sherri Lucci** - involved in Hasbro's licensing approvals. Tr. p. 32: 10-11.

◦ has communicated with Mr. Mintz by telephone and e-mail approximately once per year since March 2005. Tr. p. 33: 3-6.

◦ has met with Mr. Mintz in person "once, probably twice a year" since March 2005. Tr. p. 34: 19.

◦ last spoke with Mr. Mintz in June 2007. Tr. p. 37: 16.

**Matt Zwieka** - an account manger in Hasbro's licensing department. Tr. p. 35: 8-11.

◦ has had approximately 10-20 telephone calls with Mr. Mintz since March 2005. Tr. p. 35: 20.

◦ occasionally e-mails Mr. Mintz. Tr. p. 36: 1-7.

◦ has met with Mr. Mintz in person approximately five times since 2005. Tr. p. 36: 8-14.

◦ last spoke with Mr. Mintz in June 2007. Tr. p. 37: 21.

The frequency and regularity of these communications between the employees in Hasbro's licensing department and Mr. Mintz during the pendency of this lawsuit underscores that Hasbro knew exactly how to contact Mr. Mintz whenever necessary. Indeed, Mr. Mintz negotiated a contract with Hasbro between summer 2006 and February 2007 and has been involved in discussions about another possible business relationship since June of this year. Tr. p. 41:20-43:8; 43:23-44:12. Since the summer of 2006, Mr. Mintz has had multiple "flurries" of communications with Hasbro. Tr. p. 41:12-16. Every indication is that Hasbro made no meaningful attempt to contact him in connection with this case until after its pretrial memo had been submitted. It is apparent that Hasbro deliberately kept Mr. Mintz's information at a distance in order to prevent Mikohn from preparing for his testimony.

Mr. Mintz testified he had not received any telephone calls or correspondence from Hasbro's lawyers[4] within two years prior to his receipt of the subpoena at the end of August 2007. Tr. p. 165: 2-18. As discussed above, however, Hasbro's employees had been in regular contact with Mr. Mintz regarding other licensing matters during that

[4] Mikohn does not question the honesty or integrity of Hasbro's outside counsel. Outside counsel indicated that he worked with Hasbro to attempt to contact Mr. Mintz, but was unsuccessful. Mikohn has no reason to believe otherwise. Based on its regular and numerous communications with Mr. Mintz for other purposes, however, there is no credible reason why outside counsel could not reach Mr. Mintz if Hasbro truly were intending to be helpful. Even if Mr. Mintz were reluctant to speak with a lawyer, any one of Hasbro's employees could have reached out to Mr. Mintz for information. Mikohn seeks preclusion of Mr. Mintz's testimony as a sanction for Hasbro's conduct, not the conduct of its outside counsel.

period. Therefore, it was entirely unnecessary for Hasbro to subpoena Mr. Mintz in order to discuss the case with him; Mr. Mintz stated that numerous Hasbro attorneys knew how to reach him, or one of those employees could simply have asked Mr. Mintz during one of their many meetings to contact Hasbro's attorneys. The fact that Hasbro did not seek to use these channels of communications demonstrates that the company intended to wait until late August before speaking with Mr. Mintz in order to avoid disclosing his knowledge to Mikohn.

## III. EXCLUSION BASED ON MR. MINTZ SUBSTANTIVE TESTIMONY

Discovery violations aside, Mr. Mintz's testimony should be excluded for substantive reasons. Rhode Island law clearly provides that the undisclosed intention of contracting a party is not helpful for purposes of interpreting a contract. In Retirement Bd. of Employee's Retirement Sys v. DiPrete, 845 A.2d 270 (R.I. 2004), the Rhode Island Supreme Court was confronted with a dispute about the meaning of a term in a criminal plea agreement. The defendant attempted to support his interpretation of the agreement by arguing what he intended the term to mean during negotiations. The defendant never communicated that intention during negotiations, however. Confirming that the interpretation of the plea agreement is subject to traditional rules of contract, the Supreme Court explained that the "secret intent of one party to a contract is not binding on the other party…. Thus, whatever significance [defendant] may have secretly intended to attribute to the word [in dispute] does not control our interpretation of that term.." Id. at 284 (citing 3 Corbin on Contracts § 538 (1960 and Supp. 1992)).

DiPrete militates in favor of exclusion of Mr. Mintz's testimony in this case. At best, his testimony would be nothing more than his subjective and undisclosed interpretation of the agreements in dispute. Mr. Mintz's deposition testimony is clear:

- He does not remember having any discussions during negotiations about how the royalty provisions would be applied. Tr. p. 136:5-22;

- He does not remember anyone at Mikohn telling him that royalties would be calculated using Hasbro's Litigation Interpretation. Tr. p. 158:6-14;

- He is not aware of any company that has received a royalty based on the actual daily performance of every individual slot machine. Tr. p. 174:2-7;

- His understanding of the agreements is not based on any accepted industry definitions. Tr. p. 176:18-177:20.

Like in DiPrete, Mr. Mintz's interpretation of the agreement is irrelevant because he never disclosed his intention (whatever it was) to Mikohn. Accordingly, Mr. Mintz's testimony should be excluded.

**Conclusion**

Mr. Mintz's deposition testimony demonstrates that Hasbro sought to shield his knowledge about negotiations (or lack thereof) from Mikohn throughout discovery. Hasbro's classic trial by ambush tactics are not permitted under the Rules of Civil Procedure. Moreover, even if Hasbro's conduct were acceptable, Mr. Mintz's testimony should be excluded because it is irrelevant to the issue of contract interpretation.

WHEREFORE, defendant Mikohn renews its motion in limine and asks that this Court exclude all testimony from Mr. Mintz.

Respectfully submitted,

_/s/ Michael J. Daly_______________
Brooks R. Magratten, Esq., #3585
Gordon P. Cleary, Esq., #1948

Michael J. Daly, Esq., #6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com
mdaly@vetterandwhite.com

Date: September 16, 2007

CERTIFICATE OF SERVICE

To:

Todd D. White, Esq.
Jeff Techentin, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza - 8th Floor
Providence, RI 02903

I hereby certify that I electronically filed this Renewed Motion to Exclude and Supporting Memorandum on September 16, 2007, both of which are available for viewing and downloading from the Court's Electronic Case Filing System. Service on the above-identified counsel has been effectuated by electronic means.

/s/ Michael J. Daly