UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., et al., Plaintiffs | ) | |
| v. | ) | C.A. No. 05-0106/S |
| MIKOHN GAMING CORP., Defendant. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MIKOHN GAMING CORPORATION'S RENEWED MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY OF LLOYD MINTZ**

In a last-ditch attempt to preclude Hasbro from presenting evidence that Mikohn's supposed "interpretation" of the phrase "per game per day" was nothing more than an after-the-fact sham designed to minimize the royalties that it would have to pay Hasbro, Mikohn has now renewed its motion, already denied, to preclude the testimony of Lloyd Mintz. *See* Docket No. 210. Despite Mikohn's outside counsel having ***actually spoken to Mr. Mintz about this case during discovery***, and despite having deposed Mr. Mintz for more than four and one-half hours, Mikohn takes the position that having Mr. Mintz testify would amount to "trial by ambush."[1] Mikohn's renewed motion offers nothing new, except for urging a novel and entirely incorrect application of well-settled governing law. For the reasons set forth below, the Court should deny the renewed motion to preclude.

---

[1] Notably, Mikohn has ***never*** suggested that the identity of Mr. Mintz as a witness was not properly disclosed, nor could it have done so. Mikohn has always been aware of Mr. Mintz's identity and role in the history of this dispute, and its outside counsel have even been able to talk with Mr. Mintz on the phone. There is no obligation for Hasbro to have conducted Mr. Mintz's deposition during discovery, and Mikohn's choice not to depose Mr. Mintz – if only to eliminate him as a possible trial witness – was the result of its own strategy. Rather than "trial by ambush," the correct maxim would appear to be "hoisted by one's own petard."

**Factual Background**

As the Court will recall, Mr. Mintz is a former Hasbro employee and was the Hasbro individual primarily responsible for negotiating the contracts at issue here. He worked for Hasbro from September 1995 until early February 2000, first as the director of licensing, and later as the vice president for licensing. Mintz Dep. at 15:3-7. (Excerpts of the deposition of Mr. Mintz are attached hereto as **Exhibit A**). Mr. Mintz left Hasbro to begin his own consulting business, which he still runs. *Id.* at 15:19-20, 16:4-5. As a consultant, Mr. Mintz has had contact with Hasbro personnel, the frequency of which has run from "almost none" to "probably dozens" of contacts over the course of a year. *Id.* at 18:12-15. Mr. Mintz clearly had no intention of involving himself in this dispute, ignoring serial contacts by Hasbro's outside counsel. *Id.* at 163:21-165:15:

> Q. Okay. At that time, I think you told him [Brooks Magratten] that other lawyers had been calling you; is that correct?
>
> A. It was probably Todd.
>
> Q. Okay.
>
> A. I didn't speak to him.
>
> […]
>
> Q. Have you been told that there are any lawyers that want to talk to you within the past two years?
>
> A. Other than the inquiries that I received that I ignored, no.

Certainly it was Mr. Mintz's right not to ignore such inquiries; Mikohn has not suggested that Mr. Mintz acted in any way inappropriately. Rather, Mikohn claims that because Hasbro did not do more to attempt to secure Mr. Mintz as a trial witness, somehow Hasbro has committed a sanctionable violation of the discovery rules. *See* Mikohn

Renewed Motion at 3 ("exclusion is appropriate as a discovery sanction"). Tellingly, Mikohn ***never*** identifies what discovery rule Hasbro might have violated.

Turning to the merits of Mr. Mintz's testimony, it is beyond dispute that he can testify to relevant, probative, and admissible facts having a bearing on this dispute. For example, Mr. Mintz will testify that the royalty payments would be applied "[p]er game per day," meaning "that every game that is out on a casino floor on a daily basis generates a certain amount of revenue for the casino operator and subsequently to the licensee – in this case Mikohn – and therefore, Mikohn would then base its royalty payment to Hasbro on a daily basis based on the stepped royalty that was negotiated with them." Mintz Dep. at 77:2-16. Every slot machine was to generate a separate royalty to Hasbro. *Id.* at 77:17-78:2. He will testify that such was his understanding during the negotiations with Mikohn. *Id.* at 79:1-3. He will testify that Hasbro agreed to the scheduled royalties because he believed it would maximize revenues to Hasbro. *Id.* at 141:20-142:2. He will testify that during the negotiations, he had thought "that it was going to be an extremely tedious calculation for Mikohn to perform, and it's equally tedious an audit for Hasbro to perform." *Id.* at 160:15-19.

Moreover, Mr. Mintz will be able to authenticate and testify to documents that unmistakably reveal that Mikohn was fully aware that its "aggregate and average" approach to revenues was completely alien to what it had promised Hasbro. For example, Exhibit 8 at the Mintz Deposition is a July 17, 1998 letter from Charles H. McCrea, Jr. to Mr. Mintz in which Mr. McCrea sets forth several tables (attached as **Exhibit B**). One is the royalty schedule, with which the Court is now very familiar:

| Lease Revenue to MIKN/SIGMA | Royalty Per Game/Day |
|---|---|
| Under $40 per day | $ 4.00 |
| $40-$49 per day | $ 7.88 |

But tellingly, Mr. McCrea's letter contains another table, this one addressed to a separate promise by Mikohn, that it would issue warrants for its common stock to Hasbro based upon the performance of the machines. Here – ***in the very same letter*** – Mr. McCrea makes clear that he is referring to "average" performance:

| Average Lease Revenue to MIKN/SIGMA | Warrants Per Game Exercisable |
|---|---|
| $60-$69 per day per Game | 20 |
| $70-$79 per day per Game | 30 |

Mikohn has refused to make Mr. McCrea available at trial, despite having secured an agreement for his cooperation. Now it seeks to preclude Mr. Mintz from testifying. Mikohn doesn't want the jury to know the facts. It is apparent that Mikohn doesn't want the evidence excluded because it's "irrelevant" (*see* Renewed Motion at 8), but rather because it's overwhelmingly relevant, but very very bad for Mikohn. Nothing in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or any principle of law warrants, let alone requires, such a result.

**Argument**

Mikohn presents two arguments in support of precluding Mr. Mintz from testifying. First, it argues that preclusion is appropriate as a "discovery sanction," without ever identifying any discovery obligation that Hasbro has not met. Second, it argues that Mr. Mintz's testimony is irrelevant. Both of Mikohn's arguments run squarely against established legal principles.

First, Hasbro has committed no discovery violation. Mikohn's only argument is that somehow Hasbro's 30(b)(6) deposition testimony was inadequate because it did not reflect the information that Mr. Mintz had. Of course, Mr. Mintz was no longer with Hasbro. Hasbro is under no obligation to secure third-parties to testify on its behalf merely because those third-parties might have better information than Hasbro does. Indeed, Rule 30 is clear that Hasbro need only produce witnesses "who consent to testify on its behalf." Rule 30(b)(6). Rule 30 is explicit that corporations are required to produce witnesses who will testify as to the "matters known or reasonably available to the organization." *Id.* That is precisely what Hasbro did.

Without actually making the argument, Mikohn appears to be urging that the Court find that all of the information in Mr. Mintz's head was "reasonably available" to the organization because Mr. Mintz was, during the same multi-year time frame, having occasional business contacts with Hasbro. To affirm that interpretation of Rule 30(b)(6) would be to stretch the rule beyond all reason. Hasbro undertook to contact Mr. Mintz about this litigation through its outside counsel. Mr. Mintz, by his own admission, ignored those contacts. Apparently, Mikohn believes that Hasbro should have been under an obligation to engage in a second line of attack on Mr. Mintz, having its business people act as agents of counsel in seeking information from Mr. Mintz relative to this case. *See* Mikohn Br. at 4. Mikohn cites no authority to support its position, likely because it is inconsistent with every federal decision on this issue. *See, e.g.*, *Cupp v. Edward D. Jones & Co.*, 2007 WL 982336, at *1-2 (N.D. Okla. Mar. 29, 2007) (corporation under no obligation to consult with terminated former employee in preparing for 30(b)(6) deposition; denying sanctions where deponent displays neither bad faith nor

willful obstruction of the discovery process).[2] Because Hasbro fulfilled its discovery obligations, there is no reason to upset this Court's earlier ruling permitting Mr. Mintz to testify in this action subject to Mikohn having an opportunity to depose him in advance, which it has done.

Second, Mikohn argues that Mr. Mintz's testimony is irrelevant, urging this Court to conclude that the parol evidence rule bars all testimony regarding the intent of the parties. That is flatly incorrect. It is settled beyond any dispute that even "[i]n interpreting ***unambiguous*** contracts, [the court is to] consider the situation of the parties and the accompanying circumstances at the time the contract was entered into, not for the purpose of modifying or enlarging or curtailing its terms, but to aid in the interpretive process and to assist in determining its meaning." *Paolella v. Radiologic Leasing Associates*, 769 A.2d 596, 599 (R.I. 2001) (quoting *W.P. Associates v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I. 1994) (emphasis added; internal quotations excluded) (finding that affidavits that directly contradicted the plain language of the contract fell within parol evidence rule). Accordingly, the jury is free to consider information such as the discussions Mr. Mintz had with Mikohn in interpreting the contracts even if they are found to be unambiguous.

---

[2] Hasbro is aware of sporadic decisions that have read into Rule 30(b)(6) an obligation to attempt to amass information from a variety of sources, including from past employees. *See, e.g.*, *Berwind Prop. Gp., Inc. v. Env't'l Mgmt. Gp., Inc.*, 233 F.R.D. 62, 65 (D. Mass. 2005). Cases like *Berwind*, however, involved 30(b)(6) deponents who had made no efforts whatsoever to learn information in the hands of relevant past employees. Here, Hasbro attempted to contact Mr. Mintz through counsel but was unsuccessful. Moreover, the court in *Berwind* noted that the failure to adduce the knowledge of a former employee at the 30(b)(6) could be overcome by either making the former employee available for deposition or producing the relevant documents. *Id*. Hasbro has done both.

Moreover, as the court in *Cupp*, *supra*, noted, "[u]pon a close reading of Berwind, it is evident that the corporation was not required to contact its former employee in preparation of the Rule 30(b)(6) deposition." 2007 WL 982336 at *1.

But Mikohn apparently contends that "per game per day" ***is*** ambiguous; its protestation against evidence of the intent of the parties is therefore even more disingenuous. *See, e.g.*, Mikohn Proposed Jury Instructions at Instruction No. 18 ("Contract Interpretation: Jury's Role in Interpreting Ambiguous Contracts"). "'Parol evidence may be admitted to complete or clarify an instrument that is ambiguous on its face.'" *Rotelli v. Catanzaro*, 686 A.2d 91, 95 (R.I. 1998) (quoting *Supreme Woodworking Co. v. Zuckerberg*, 82 R.I. 247, 252, 107 A.2d 287, 290 (1954)). *See also Cranston Teachers Association v. Cranston School Committee*, 120 R.I. 105, 386 A.2d 176 (1978) (error to exclude parol evidence where agreement was facially ambiguous).

Mikohn cannot have it both ways, arguing on the one hand that the contract is ambiguous and leaving it to the jury to discern "the parties' intent at the time an agreement was made" (Jury Instruction No. 18, *supra*) and then exclude all of Hasbro's evidence relative to the intent of the parties at the time the agreement was made. As much as Mikohn might like to have a completely one-sided trial, such is not the role of the Rules of Evidence or the Rules of Civil Procedure.

Finally, information relative to Mikohn's representations during the negotiation phase leading up to the signed contracts is also directly relevant to the question of whether, even if the contracts are found to call for royalties to be calculated based upon aggregation and averaging of revenues, Mikohn is equitably estopped from enforcing such a term. *See, e.g.*, *Providence Teachers Union v. Providence Sch. Bd.*, 689 A.2d 388, 391-92 (R.I. 1997); *East Providence Credit Union v. Geremia*, 103 R.I. 597, 601, 239 A.2d 725, 727 (1968).[3] Here, Mikohn's affirmative representations or omissions

---

[3] Equitable estoppel applies where "an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing

reasonably induced Hasbro to believe that the royalties would be calculated on a per machine, per day basis, and Hasbro in fact relied upon that in granting Mikohn the use of its intellectual property. Equity prevents entities such as Mikohn from reaping the benefits of their deceptive practices, and Mr. Mintz's testimony will be directly relevant to that issue.

**Conclusion**

For the reasons set forth above, as well as those articulated more particularly in Hasbro's Opposition to Defendant's original motion to preclude, this Court should deny Mikohn's Renewed Motion *in Limine* to Preclude the Testimony of Lloyd Mintz..

For the Plaintiffs
HASBRO, INC. and HASBRO
INTERNATIONAL, INC.
By their Attorneys,

/s/ Jeffrey K. Techentin_____
Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Date: September 16, 2007

---

the other to act or fail to act in reliance thereon; and * * *, that such representation or conduct in fact did induce the other to act or fail to act to his injury." *Southex Exhibitions, Inc. v. Rhode Island Builders Ass'n, Inc.*, 279 F.3d 94, 104 (1st Cir. 2002) (quoting *Providence Teachers Union*, *supra*).

CERTIFICATE OF SERVICE

**TO:**

Brooks R. Magratten, Esq.
Gordon Cleary, Esq.
Thomas Connolly, Esq.
Michael J. Daly, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

J. Gregory Whitehair
Gibson, Dunn & Crutcher, LLP
1801 California Street
Suite 4200
Denver, Colorado 80202

I hereby certify that I filed the within Plaintiffs' Opposition to Renewed Motion *in Limine* to Preclude the Testimony of Lloyd Mintz through the ECF system on the 16th day of September, 2007, and that notice will be sent electronically to the above-named counsel who are registered participants identified on the Mailing Information for Case No. 05-229S.

/s/ Jeffrey K. Techentin_____

*429007_1*